# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**     **2. PLEASE TYPE OR PRINT**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| YESHIVA OHR SHRAGA VERETZKY,    Plaintiff-Appellant, <br><br> -against- <br><br> TOWN OF HIGHLAND ZONING BOARD OF APPEALS and TOWN OF HIGHLAND,    Defendants-Appellees | USDC Southern District NY | Cathy Seibel, U.S.D.J. |

| District Court or Agency: | |
|---|---|
| Date the Order or Judgment Appealed from was Entered on the Docket: <br> March 7, 2026 | District Court Docket No.: <br> 7:24-cv-08477-CS |
| Date the Notice of Appeal was Filed: <br> March 11, 2026 | Is this a Cross Appeal? <br> ☐ Yes   ☑ No |

| Attorney(s) for Appellant(s): <br> ☑ Plaintiff <br> ☐ Defendant | Counsel's Name: <br> Steven Barshov <br> SBarshovLaw PLLC | Address: <br> 20 Lagoon Lane <br> Haverstraw, NY 10927 | Telephone No.: <br> 917-886-4328 | Fax No.: | E-mail: <br> sb@sbarshovlaw.com |
|---|---|---|---|---|---|
| Attorney(s) for Appellee(s): <br> ☐ Plaintiff <br> ☑ Defendant | Counsel's Name: <br> Leo Dorfman <br> Sokoloff Stern LLP | Address: <br> 179 Westbury Ave. <br> Carl Place, NY 11514 | Telephone No.: <br> 516-334-4500 | Fax No.: | E-mail: <br> ldorfman@sokoloffstern.com |

| Has Transcript Been Prepared? <br> No | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☐ Yes ☑ No <br><br> If Yes, provide the following: <br><br> Case Name: <br><br> 2d Cir. Docket No.:    Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

***ADDENDUM "A":*** **COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B":*** **COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party    ☐ Diversity <br> ☑ Federal question (U.S. not a party)    ☐ Other (specify): _____ | ☑ Final Decision    ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) <br> ☐ Interlocutory Decision Appealable As of Right    ☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

FORM C (Rev. October 2025)

## PART B: DISTRICT COURT DISPOSITION  (Check as many as apply)

**1. Stage of Proceedings**

- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [✓] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal

- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**

- [ ] Damages:
  - [ ] Sought: $ _____
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____
- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

## PART C: NATURE OF SUIT  (Check as many as apply)

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [✓] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [✓] Other (specify): RLUIPA

- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright □ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental

- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**

- [✓] Yes
- [ ] No

Will appeal raise a matter of first impression?

- [ ] Yes
- [ ] No

---

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____  [✓] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)  Arises from substantially the same case or controversy as this appeal?  [ ] Yes  [✓] No

   (B)  Involves an issue that is substantially similar or related to an issue in this appeal?  [ ] Yes  [✓] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |
| Date: **March 24, 2026** | Signature of Counsel of Record: | | |

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $605 docketing fee to the United States District Court or the $600 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

*FORM C* (Rev. October 2025)

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

---------------------------------------------------------x

YESHIVA OHR SHRAGA VERETZKY,

Plaintiff-Appellant,

-against-

TOWN OF HIGHLAND ZONING BOARD
OF APPEALS and TOWN OF HIGHLAND,

Defendants-Appellees.

---------------------------------------------------------x

**ADDENDUM A**
**FORM C - CIVIL APPEAL PRE-ARGUMENT STATEMENT**

(1)  Description of the Nature of the Action

Yeshiva Ohr Shraga Veretzky (the "Yeshiva") is a New York State religious corporation providing Orthodox Jewish religious education. For a number of years, the Yeshiva leased facilities in Sullivan County, New York, to provide a place where the Yeshiva's Rabbis and students from its schools in Brooklyn, N.Y. and Lakewood, N.J. would come together and continue their religious education in the summer months.  Through a not-for-profit religious corporate affiliate, the Yeshiva acquired property in the Town of Highland, New York (the "Town") that had been operated as a commercial hotel.  The property was acquired to provide a permanent location for the Yeshiva's summer religious educational program, as well as a site for religious retreats at other times.

The Town Zoning Code authorizes a "place of worship" in every zoning district in the Town upon the grant of a special use permit by the Town Planning Board.  The term "place of worship" is not defined in the Town Zoning Code.  A "place of worship" includes use for religious education.  *See Yeshiva Talmud Torah Ohr Moshe v. Zoning Board of Appeals of The Town of Wawarsing*, 170 A.D.3d 1488 (3d Dept. 2019).

1

In March 2023, the Planning Board acknowledged receipt of the Yeshiva's preliminary application for a special use permit.  Questions were raised by the Planning Board's consultants as to whether the proposed religious educational use is allowed as a "place of worship."  Counsel for the Yeshiva submitted a memorandum of law to the Planning Board confirming that "place of worship" includes the Yeshiva's proposed religious educational use. Thereafter, the Planning Board processed the Yeshiva's special use permit application as one for a "place of worship."

In January 2024, when the application was determined to be complete and ready for public hearing, members of the Planning Board questioned for the first time since April of 2023 whether the Yeshiva's proposed religious educational use is a "place of worship" or a children's camp, which is a use not allowed anywhere in the Town under the Town Zoning Code.  Instead of conducting a public hearing, the Planning Board sought a legal interpretation of the Town Zoning Code from the Town of Highland Zoning Board of Appeals (the "ZBA"), the body vested with final authority to issue Zoning Code interpretations.

The ZBA conducted and closed a public hearing, and then adjourned the ZBA meeting without the ZBA members discussing the issue before it in any way, or directing the ZBA's counsel to prepare a written interpretation.  At its next meeting, the ZBA counsel presented and read aloud a proposed written interpretation. Without any discussion by or among ZBA members, the ZBA unanimously voted to adopt the interpretation that the proposed religious educational use is not a permitted use, but instead is a children's camp that "is expressly prohibited in the Town of Highland."  Since the ZBA interpretation is final and since the Planning Board is bound by law to accept and follow a ZBA Zoning Code interpretation, the Planning Board could not possibly grant the Yeshiva's special use permit application.  Accordingly, the Yeshiva commenced this litigation challenging the ZBA determination that its proposed religious educational use is, as a matter of

law, not a "place of worship" and instead is a prohibited "children's camp." The Yeshiva asserted that the ZBA ruling that provision of religious education is not a religious use violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc ("RLUIPA"), as well as the Yeshiva's constitutionally protected rights under the First and Fourteenth Amendments to provide religious education as part of its exercise of religion.

The Town Defendants moved to dismiss alleging that the District Court lacked subject matter jurisdiction because the Yeshiva had not applied to the ZBA for a use variance and been denied. The Town Defendants asserted that until a use variance was sought and denied, that the Town will not have taken action that is "final" for purposes of establishing subject matter jurisdiction. The Yeshiva argued that the legal interpretation issued by the ZBA is a final determination that presents a justiciable case and controversy because the ZBA interpretation determined as a matter of law that the proposed religious educational use is not a permitted use under the Town Zoning Code.

The Yeshiva relied on three Third Circuit District Court decisions that adjudicated the identical question both factually and legally. In each case, the District Court held that finality for purposes of subject matter jurisdiction does not require an application for a use variance when a zoning board of appeals determines that a proposed religious use of property is not a permitted use. The District Courts held that a use variance proceeding would not generate any facts or information probative of whether the proposed religious use is a permitted use for which no use variance would be required at all. Stated differently, the cited decisions all held that the facts and circumstances considered by a zoning board of appeals when deciding whether to grant a use variance to authorize a prohibited use of land to be undertaken is in no way relevant to whether such a use of land is a permitted use in the first instance.

3

(2)  The Result Below

The District Court did not hear oral argument on the motion to dismiss and granted the motion dismissing this litigation for lack of subject matter jurisdiction pursuant to Rule 12(b)1. The District Court held that it lacked subject matter jurisdiction because the Yeshiva had not applied for and been denied a use variance.  The District Court declined to follow the decisional law from the District Courts in the Third Circuit.  The District Court affirmatively held that as a prerequisite to subject matter jurisdiction, the Yeshiva must first apply for and be denied the precise use variance that the Yeshiva contends it cannot ever be legally forced to obtain because its religious educational use is a permitted use under the Town Zoning Code.

Because the District Court's ruling requires a <u>denial</u> of a use variance as a prerequisite to subject matter jurisdiction, the District Court ruling forces the Yeshiva to apply for and, if granted, accept the very use variance that the Yeshiva contends it cannot be required to either apply for or accept.  Thus, the lower court ruling precludes the Yeshiva from litigating: (1) that its religious educational use is a permitted use under the Town Zoning Code <u>which requires no use variance as a matter of law</u>; and (2) that the ZBA interpretation to the contrary is a violation of both RLUIPA and the Yeshiva's constitutionally protected right to free religious exercise.

4

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

---------------------------------------------------------x

YESHIVA OHR SHRAGA VERETZKY,

                    Plaintiff-Appellant,

     -against-

TOWN OF HIGHLAND ZONING BOARD
OF APPEALS and TOWN OF HIGHLAND,

                 Defendants-Appellees.

---------------------------------------------------------x

**ADDENDUM B**
**FORM C - CIVIL APPEAL PRE-ARGUMENT STATEMENT**

    On appeal the Yeshiva will argue that the facts and information generated from a use variance application would inherently not be probative of the antecedent legal question as to whether the Yeshiva's proposed religious educational use is a permitted use under the Town Zoning Code. The Yeshiva will argue that a use variance application is by definition seeking permission to violate the applicable zoning law and that such an application has nothing to do with whether the religious educational use in question is a permitted use under the Town Zoning Code and would not require a use variance at all. Thus, on appeal the Yeshiva will contend that the ZBA's interpretation that the Yeshiva's religious educational use is not a permitted use constitutes a final action that confers subject matter jurisdiction on the District Court to determine whether that ZBA interpretation violated RLUIPA and the Yeshiva's First Amendment rights.

    In addition, the Yeshiva will argue that as a "finality" prerequisite to the District Court's subject matter jurisdiction, the Yeshiva cannot be forced to apply for and be denied the very use variance that the Yeshiva asserts, as a matter of law under both RLUIPA and the First Amendment, that it is not required to apply for at all. The Yeshiva will argue that imposing such a "finality"

1

prerequisite to federal court subject matter jurisdiction forces the Yeshiva to abandon its claim that the ZBA violated both RLUIPA and the First Amendment when the ZBA determined that the Yeshiva's proposed religious educational use is a prohibited use under the Town Zoning Code and that such religious educational use can only be undertaken if a use variance is granted. This Court will be requested to confirm that the interpretation issued by the ZBA that the proposed religious educational use is prohibited under the Town Zoning Code is a final determination for purposes of conferring subject matter jurisdiction over litigation that challenges such a determination as a matter of law.

Because the issue on appeal is one of law, this Court's standard of review is *de novo*.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

YESHIVA OHR SHRAGA VERETZKY

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

TOWN OF HIGHLAND ZONING BOARD OF

APPEALS and TOWN OF HIGHLAND

(List the full name(s) of the defendant(s)/respondent(s).)

7:24-CV-08477 (CS)

**NOTICE OF APPEAL**

Notice is hereby given that the following parties:   YESHIVA OHR SHRAGA VERETZKY

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the   ☒ judgment   ☒ order   entered on:   March 7, 2026

(date that judgment or order was entered on docket)

that:   granted motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)1

(If the appeal is from an order, provide a brief description above of the decision in the order.)

March 11, 2026

Dated

Signature*

Barshov,  Steven, as Attorney for Yeshiva Ohr Shraga Veretzky

Name (Last, First, MI)

| 20 Lagoon Lane | Haverstraw | New York | 10927 |
|---|---|---|---|
| Address | City | State | Zip Code |

917-886-4328

Telephone Number

sb@sbarshovlaw.com

E-mail Address (if available)

*Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

# U.S. District Court
## Southern District of New York (White Plains)
## CIVIL DOCKET FOR CASE #: 7:24−cv−08477−CS

Shraga Veretzky v. Town of Highland Zoning Board of Appeals et al
Assigned to: Judge Cathy Seibel
Cause: 28:1331cv Fed. Question: Other Civil Rights

Date Filed: 11/07/2024
Date Terminated: 03/07/2026
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Yeshiva Ohr Shraga Veretzky**

represented by **Steven Barshov**
Sbarshovlaw PLLC
20 Lagoon Lane
Haverstraw, NY 10927
917−886−4328
Email: sb@sbarshovlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Town of Highland Zoning Board of Appeals**

represented by **Leo Dorfman**
Sokoloff Stern LLP
179 Westbury Avenue,
Carle Place, NY 11514
(516) 334−4500
Fax: (516) 334−4501
Email: ldorfman@sokoloffstern.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Town of Highland Planning Board**
*TERMINATED: 04/01/2025*

represented by **Leo Dorfman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Town Board of the Town of Highland**
*TERMINATED: 04/01/2025*

represented by **Leo Dorfman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Town of Highland**

represented by **Leo Dorfman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**UNITED STATES OF AMERICA**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/07/2024 | 1 | COMPLAINT against Town Board of the Town of Highland, Town of Highland, Town of Highland Planning Board, Town of Highland Zoning Board of Appeals. (Filing Fee $ 405.00, Receipt Number ANYSDC−30153197)Document filed by Yeshiva Ohr Shraga Veretzky. (Attachments: # 1 Exhibit District Schedule of Use Regulations, # 2 Exhibit Cover Letter, Preliminary Application, EAF − 2−10−2023, # 3 Exhibit Site Plan − 2−10−2023, # 4 Exhibit Minutes Excerpts − Planning Board − 3−22−2023, # 5 Exhibit Religious Memo of Law − 04−27−2023, # 6 Exhibit Minutes |

| | | |
|---|---|---|
| | | Excerpts – Planning Board – 06–28–2023, # 7 Exhibit Minutes Excerpts – Planning Board – 08–23–2023, # 8 Exhibit Minutes Excerpts – Planning Board –10–25–2023, # 9 Exhibit Religious Use Memo 11–17–2023, # 10 Exhibit Fuller Letter to Planning Board – 11–17–23, # 11 Exhibit Site Plan – 11–17–2023, # 12 Exhibit Minutes Excerpts – Planning Board – 11–29–2023, # 13 Exhibit Minutes Excerpts – Planning Board – 12–20–2024, # 14 Exhibit Town Board Minutes – 01–02–2024, # 15 Exhibit Town Board Minutes – 01–04–2024, # 16 Exhibit SB Letter to Planning Board 01–12–2024, # 17 Exhibit Planning Board Minutes –01–24–2024, # 18 Exhibit Barshov Letter to Planning Board and ZBA – 03–05–2024, # 19 Exhibit Barshov Letter to Planning Board and ZBA 03–20–2024, # 20 Exhibit Mogel Letter to Barshov 03–20–2024, # 21 Exhibit ZBA Minutes – 04–16–2024, # 22 Exhibit ZBA Minutes – 05–21–2024, # 23 Exhibit ZBA Minutes – 06–20–2024, # 24 Exhibit ZBA Minutes –07–18–2024, # 25 Exhibit Officially Filed ZBA Interpretation).(Barshov, Steven) (Entered: 11/07/2024) |
| 11/08/2024 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above–entitled action is assigned to Judge Cathy Seibel. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district–judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf–related–instructions..(pc) (Entered: 11/08/2024) |
| 11/08/2024 | | Magistrate Judge Judith C. McCarthy is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018–06/AO–3.pdf. (pc) (Entered: 11/08/2024) |
| 11/08/2024 | | Case Designated ECF. (pc) (Entered: 11/08/2024) |
| 11/08/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Steven Barshov. The party information for the following party/parties has been modified: Yeshiva Ohr Shraga Veretzky. The information for the party/parties has been modified for the following reason/reasons: party text was removed;. (pc)** (Entered: 11/08/2024) |
| 11/08/2024 | | **\*\*\*NOTICE TO ATTORNEY TO ELECTRONICALLY FILE CIVIL COVER SHEET. Notice to Attorney Steven Barshov. Attorney must electronically file the Civil Cover Sheet. Use the event type Civil Cover Sheet found under the event list Other Documents. (pc)** (Entered: 11/08/2024) |
| 11/08/2024 | 2 | CIVIL COVER SHEET filed..(Barshov, Steven) (Entered: 11/08/2024) |
| 11/08/2024 | 3 | **FILING ERROR – CORPORATE PARENT/OTHER AFFILIATE NOT ADDED –** RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Yeshiva Ohr Shraga Veretzky..(Barshov, Steven) Modified on 11/12/2024 (lb). (Entered: 11/08/2024) |
| 11/08/2024 | 4 | REQUEST FOR ISSUANCE OF SUMMONS as to Town of Highland Zoning Board of Appeals, Town of Highland Planning Board, Town Board of the Town of Highland, Town of Highland, re: 1 Complaint,,,,,,. Document filed by Yeshiva Ohr Shraga Veretzky..(Barshov, Steven) (Entered: 11/08/2024) |
| 11/12/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Notice to Attorney Steven Barshov to RE–FILE Document No. 3 Rule 7.1 Corporate Disclosure Statement,. The filing is deficient for the following reason(s): the corporate parent/other affiliate was not added;. Re–file the document using the event type Rule 7.1 Corporate Disclosure Statement found under the event list Other Documents – select the correct filer/filers – attach the correct signed PDF – when prompted with the message "Are there any corporate parents or other affiliates?", select the Yes or No radio button – If Yes – enter the corporate parent/other affiliate, click the Search button – select the correct corporate parent/other affiliate name from the search results list or if no person found, create a new corporate parent/other affiliate – select the party to whom the corporate parent/other affiliate should be** |

| | | |
|---|---|---|
| | | **linked – add corporate parent/other affiliate names one at a time. (lb)** (Entered: 11/12/2024) |
| 11/12/2024 | 5 | ELECTRONIC SUMMONS ISSUED as to Town Board of the Town of Highland, Town of Highland, Town of Highland Planning Board, Town of Highland Zoning Board of Appeals. (sj) (Entered: 11/12/2024) |
| 12/20/2024 | 6 | NOTICE OF APPEARANCE by Leo Dorfman on behalf of Town of Highland Zoning Board of Appeals, Town of Highland Planning Board, Town Board of the Town of Highland, Town of Highland..(Dorfman, Leo) (Entered: 12/20/2024) |
| 12/20/2024 | 7 | LETTER MOTION for Extension of Time *to respond to the Complaint* addressed to Judge Cathy Seibel from Leo Dorfman dated 12/20/2024. Document filed by Town of Highland Zoning Board of Appeals, Town of Highland Planning Board, Town Board of the Town of Highland, Town of Highland..(Dorfman, Leo) (Entered: 12/20/2024) |
| 12/20/2024 | 8 | ORDER granting 7 Letter Motion for Extension of Time: Defendants may have until 1/30/25 to respond to the Complaint. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 12/20/2024) |
| 01/30/2025 | 9 | LETTER MOTION for Conference – *Pre−Motion Conference in Anticipation of Defendants' Motion to Dismiss* addressed to Judge Cathy Seibel from Leo Dorfman dated January 30, 2025. Document filed by Town of Highland Zoning Board of Appeals, Town of Highland Planning Board, Town Board of the Town of Highland, Town of Highland..(Dorfman, Leo) (Entered: 01/30/2025) |
| 01/31/2025 | 10 | ORDER granting 9 Letter Motion for Pre−Motion Conference: Telephonic pre−motion conference set for 2/27/25 at 10:45 am. The Webex call−in number is 855−244−8681 and the access code is 1809850784#. Plaintiff shall respond to Defendants' letter, by letter of no more than 3 pages, no later than 2/20/25. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (sm) (Entered: 01/31/2025) |
| 02/20/2025 | 11 | LETTER RESPONSE in Opposition to Motion addressed to Judge Cathy Seibel from Steven Barshov dated February 20, 2025 re: 9 LETTER MOTION for Conference − *Pre−Motion Conference in Anticipation of Defendants' Motion to Dismiss* addressed to Judge Cathy Seibel from Leo Dorfman dated January 30, 2025. . Document filed by Yeshiva Ohr Shraga Veretzky..(Barshov, Steven) (Entered: 02/20/2025) |
| 02/27/2025 | | Minute Entry for proceedings held before Judge Cathy Seibel: Pre−Motion Conference held on 2/27/2025. Plaintiff's counsel Steven Barshov, Esq. appears telephonically. Defendants' counsel Leo Dorfman, Esq. appears telephonically. Law Clerk Samantha Mitchell appears telephonically. The Court grants Plaintiff leave to amend Complaint. Plaintiff's Amended Complaint to be submitted by March 31, 2025. Defendants' Motion to Dismiss to be submitted by May 15, 2025; Plaintiff's opposition due June 16, 2025; Defendants' reply due July 10, 2025. This proceeding was recorded via the Cisco Webex platform. (wc) (Entered: 02/27/2025) |
| 03/31/2025 | 12 | FIRST AMENDED COMPLAINT amending 1 Complaint,,,,,, against Town of Highland, Town of Highland Zoning Board of Appeals.Document filed by Yeshiva Ohr Shraga Veretzky. Related document: 1 Complaint,,,,,,.. (Attachments: # 1 Exhibit District Schedule of Use Regulations, # 2 Exhibit Cover Letter, Preliminary Application, EAF − 2−10−2023, # 3 Exhibit Site Plan − 2−10−2023, # 4 Exhibit Minutes Excerpts − Planning Board − 3−22−2023, # 5 Exhibit Religious Memo of Law − 04−27−2023, # 6 Exhibit Minutes Excerpts − Planning Board − 06−28−2023, # 7 Exhibit Minutes Excerpts − Planning Board − 08−23−2023, # 8 Exhibit Minutes Excerpts − Planning Board −10−25−2023, # 9 Exhibit Religious Use Memo 11−17−2023, # 10 Exhibit Fuller Letter to Planning Board − 11−17−23, # 11 Exhibit Site Plan − 11−17−2023, # 12 Exhibit Minutes Excerpts − Planning Board − 11−29−2023, # 13 Exhibit Minutes Excerpts − Planning Board − 12−20−2024, # 14 Exhibit Town Board Minutes − 01−02−2024, # 15 Exhibit Town Board Minutes − 01−04−2024, # 16 Exhibit SB Letter to Planning Board 01−12−2024, # 17 Exhibit Planning Board Minutes −01−24−2024, # 18 Exhibit SB Letter to Planning Board, # 19 Exhibit Barshov Letter to Planning Board, # 20 Exhibit Mogel Letter to Barshov, # 21 Exhibit ZBA Minutes − 04−16−2024, # 22 Exhibit ZBA Minutes − 05−21−2024, # 23 Exhibit ZBA Minutes − 06−20−2024, # 24 Exhibit ZBA Minutes − 07−18−2024, # 25 Exhibit Officially Filed ZBA Interpretation).(Barshov, Steven) (Entered: 03/31/2025) |

| 05/13/2025 | 13 | FIRST LETTER MOTION for Extension of Time to File Answer re: 12 Amended Complaint,,,,,, addressed to Judge Cathy Seibel from Leo Dorfman dated 5/13/2025. Document filed by Town of Highland, Town of Highland Zoning Board of Appeals..(Dorfman, Leo) (Entered: 05/13/2025) |
|---|---|---|
| 05/14/2025 | 14 | ORDER granting 13 Letter Motion for Extension of Time to Answer: All Defendants may have until 5/29/25 to respond to the Amended Complaint. No further extensions. Assuming a motion to dismiss is made, Plaintiff's opposition will be due June 30, 2025, and Defendants' reply will be due July 24, 2025. Counsel for Defendants are again encouraged, unless their clients refuse, to discuss possible settlement with Plaintiff. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 05/14/2025) |
| 05/14/2025 | 15 | LETTER addressed to Judge Cathy Seibel from Steven Barshov dated May 14, 2025 re: Defendants' Request for Extension. Document filed by Yeshiva Ohr Shraga Veretzky..(Barshov, Steven) (Entered: 05/14/2025) |
| 05/29/2025 | 16 | LETTER addressed to Judge Cathy Seibel from Brian S. Sokoloff dated May 29, 2025 re: service of Motion to Dismiss on Plaintiff. Document filed by Town of Highland, Town of Highland Zoning Board of Appeals..(Sokoloff, Brian) (Entered: 05/29/2025) |
| 06/30/2025 | 17 | LETTER addressed to Judge Cathy Seibel from Steven Barshov dated June 30, 2025 re: Request for Extension of Time. Document filed by Yeshiva Ohr Shraga Veretzky..(Barshov, Steven) (Entered: 06/30/2025) |
| 06/30/2025 | 18 | ORDER re: 17 Letter filed by Yeshiva Ohr Shraga Veretzky; Plaintiff's opposition to motion to be served by 7/7/25. Defendants' reply to be served, and all papers to be filed, by 7/31/25. (HEREBY ORDERED by Judge Cathy Seibel) (Text Only Order) (Seibel, Cathy) (Entered: 06/30/2025) |
| 07/29/2025 | 19 | MEMORANDUM OF LAW *(Statement of Interest of the United States of America)*. Document filed by UNITED STATES OF AMERICA..(Onozawa, Tomoko) (Entered: 07/29/2025) |
| 07/31/2025 | 20 | FIRST LETTER MOTION for Extension of Time to File Response/Reply *in support of Defendants' Motion to Dismiss* addressed to Judge Cathy Seibel from Leo Dorfman dated July 31, 2025. Document filed by Town of Highland, Town of Highland Zoning Board of Appeals..(Dorfman, Leo) (Entered: 07/31/2025) |
| 07/31/2025 | 21 | ORDER granting 20 Letter Motion for Extension of Time to File Response/Reply: Defendants' reply to be served, and all papers to be filed, no later than 8/7/25. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 07/31/2025) |
| 08/07/2025 | 22 | MOTION to Dismiss *Plaintiff's Amended Complaint*. Document filed by Town of Highland, Town of Highland Zoning Board of Appeals..(Dorfman, Leo) (Entered: 08/07/2025) |
| 08/07/2025 | 23 | MEMORANDUM OF LAW in Support re: 22 MOTION to Dismiss *Plaintiff's Amended Complaint*. . Document filed by Town of Highland, Town of Highland Zoning Board of Appeals..(Dorfman, Leo) (Entered: 08/07/2025) |
| 08/07/2025 | 24 | MEMORANDUM OF LAW in Opposition re: 22 MOTION to Dismiss *Plaintiff's Amended Complaint. (submitted for Plaintiff)*. Document filed by Town of Highland, Town of Highland Zoning Board of Appeals..(Dorfman, Leo) (Entered: 08/07/2025) |
| 08/07/2025 | 25 | REPLY MEMORANDUM OF LAW in Support re: 22 MOTION to Dismiss *Plaintiff's Amended Complaint*. . Document filed by Town of Highland, Town of Highland Zoning Board of Appeals..(Dorfman, Leo) (Entered: 08/07/2025) |
| 03/05/2026 | 26 | OPINION & ORDER ON MOTION TO DISMISS re: 22 MOTION to Dismiss *Plaintiff's Amended Complaint*. filed by Town of Highland, Town of Highland Zoning Board of Appeals.For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 22), and close the case. SO ORDERED. (Signed by Judge Cathy Seibel on 3/5/2026) (jjc) Transmission to Orders and Judgments Clerk for processing. (Entered: 03/05/2026) |

| 03/07/2026 | 27 | CLERK'S JUDGMENT re: 26 Memorandum & Opinion in favor of Town of Highland, Town of Highland Zoning Board of Appeals against Yeshiva Ohr Shraga Veretzky. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion & Order dated March 5, 2026, Defendants' motion to dismiss is GRANTED and Plaintiff's claims are dismissed without prejudice; accordingly, the case is closed. (Signed by Clerk of Court Tammi M Hellwig on 3/7/2026) (Attachments: # 1 Appeal Package) (km) (Entered: 03/07/2026) |
| --- | --- | --- |
| 03/11/2026 | 28 | NOTICE OF APPEAL from 26 Memorandum & Opinion,, 27 Clerk's Judgment,,. Document filed by Yeshiva Ohr Shraga Veretzky. Filing fee $ 605.00, receipt number ANYSDC−32530912. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Barshov, Steven) Modified on 3/12/2026 (nd). (Entered: 03/11/2026) |
| 03/12/2026 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 28 Notice of Appeal,..(nd) (Entered: 03/12/2026) |
| 03/12/2026 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 28 Notice of Appeal, filed by Yeshiva Ohr Shraga Veretzky were transmitted to the U.S. Court of Appeals..(nd) (Entered: 03/12/2026) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
YESHIVA OHR SHRAGA VERETZKY,

                                  Plaintiff,

      - against -

TOWN OF HIGHLAND ZONING BOARD OF
APPEALS and TOWN OF HIGHLAND,

                                Defendants.
------------------------------------------------------------x

**OPINION & ORDER
ON MOTION TO DISMISS**

No. 24-CV-8477 (CS)

Appearances:

Steven Barshov
SBarshovLaw PLLC
Haverstraw, New York
*Counsel for Plaintiff*

Brian S. Sokoloff
Leo Dorfman
Sokoloff Stern LLP
Carle Place, New York
*Counsel for Defendants*

Seibel, J.

Before the Court is Defendants' motion to dismiss.  (ECF No. 22.)  For the foregoing

reasons, the motion is GRANTED.

I.      **BACKGROUND**

For the purposes of the motion, I accept as true the facts, but not the conclusions, set forth

in Plaintiff's Amended Complaint.  (ECF No. 12 ("AC").)[1]

---

[1] As noted below, for a motion under Federal Rule of Civil Procedure 12(b)(6), I accept
the facts in the AC as true, and for a motion under Rule 12(b)(1), I accept the facts in the AC as
true to the extent they are uncontroverted.

A.    **Facts**

The parties to this dispute differ as to the application of the Town of Highland (the "Town") Zoning Code, under which a "place of worship" – a term the Code does not define – is a use that requires a special use permit in any zone, (*id.* ¶¶ 20-21), but a "children's camp" is not permitted anywhere in the Town, (*id.* ¶ 91).

Plaintiff Yeshiva Ohr Shraga Veretzky ("Plaintiff" or the "Yeshiva") is a New York religious corporation that provides Hasidic Orthodox Jewish religious education through its schools and facilities in Brooklyn, New York and Lakewood, New Jersey.  (*Id.* ¶¶ 8, 14, 113.) Religious education is one of the most important elements of Orthodox Judaism, and there is no separation between religion and education for its adherents.  (*Id.* ¶¶ 27-28.)  As such, the Yeshiva leased facilities in Sullivan County to provide a place where its Rabbis and students could come together and continue their religious education in the summer.  (*Id.* ¶ 14.)  During the non-summer months, the Yeshiva rented property for religious retreats and other activities.  (*Id.* ¶ 15.)  At some point, the Yeshiva purchased property in the Town formerly owned by 211 Mail Road LLC (the "Property"), which had been operating in a Residential Agricultural R-2 Zoning District as a commercial hotel pursuant to a special use permit issued by the Town Planning Board (the "Planning Board").  (*Id.* ¶¶ 2, 17, 19.)

In February 2023, the Yeshiva filed an application with the Planning Board for a special use permit, seeking to use the Property's existing buildings and construct new buildings for religious education during the summer and religious retreats in the non-summer months.  (*Id.* ¶¶ 18, 23.)  Specifically, the application sought to construct four new single-story buildings containing:  (1) a Shul (synagogue) area for prayer and conducting religious services for those at the Property; (2) a Mikva (ritual bath); (3) spaces for religious lectures and study, prayer, and

meetings and gatherings; and (4) sleeping accommodations for thirty-two students.  (*Id.* ¶ 24.)  In the summer, teenagers and young adults would reside at the Property and study Talmud, communicate and study with their Rabbis, deepen their religious faith, and connect on a religious level with others in the community.  (*Id.* ¶ 25.)  The same Rabbis who teach the students during the non-summer months would provide the religious education to them and the younger children of the Rabbis and the staff.  (*Id.* ¶ 26.)

At its meeting on March 22, 2023, the Planning Board acknowledged receipt of the Yeshiva's application.  (*Id.* ¶ 34.)  Before the meeting, the Yeshiva received a memorandum dated March 20, 2023 addressed to the Planning Board's counsel, Michael Davidoff, from Kevin Schwensfeier, Senior Planner at the Laberge Group, an environmental and planning consultant to the Planning Board.  (*Id.* ¶¶ 34-35.)  The memo stated that:  (1) religious retreat is not specifically listed in the Town Zoning Code's Schedule of Use Regulations and is therefore a prohibited use; (2) dormitory is not specifically listed in the Schedule of Use Regulations and is therefore a prohibited use; (3) Mikvah is not specifically listed in the Schedule of Use Regulations but is a common element of a "place of worship," which is listed as a Special Use Permit; and (4) multi-purpose building is not specifically listed but is a common element of a "place of worship," which is listed as a Special Use Permit.  (*Id.* ¶ 35.)  Counsel for the Yeshiva requested permission to respond to the memo and submitted its own Memorandum of Law to the Planning Board on April 27, 2023.  (*Id.* ¶¶ 36, 38.)  That memo explained that religious education is part of religious use under New York law; noted that the Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits units of local government from applying zoning and land use laws to unduly burden the exercise of religion; and provided case law, including *Yeshiva Talmud Torah Ohr Moshe v. Zoning Board of Appeals*, 97 N.Y.S.3d 737 (App.

Div. 3d Dep't 2019).  (*Id.* ¶¶ 37, 39.)[2]  The memo further explained why the Yeshiva's proposed uses amounted to religious uses authorized for a place of worship.  (*Id.* ¶ 39.)

The matter was placed on the agenda for the Planning Board's June 28, 2023 meeting. (*Id.* ¶ 40.)  Before the meeting, the Laberge Group and the Town Engineer submitted additional comments, in which they confirmed that religious education and religious retreat were encompassed within the special use permit for a place of worship.  (*Id.* ¶¶ 40-41.)  Specifically, the letter from the Town Engineer stated that "Hotel/Motel is listed as Special Use Permit and is required"; "Multi-Purpose building is not specifically listed in R2 but is part of Hotel/Motel and part of Special Use Permit"; and "Place of Worship is listed in R2 and require[s] a Special Use Permit from the Planning Board [which] would also include the Mikvah, Religious Retreat, and religious education."  (ECF No. 12-6 at 4; *see* AC ¶ 41.1.)  The Town Engineer explained that the project could be considered by the Planning Board as a combination of Special Use Permits. (AC ¶ 41.2.)  The Laberge Group also submitted a comment, in which it acknowledged that "Religious Retreat may be included in the generic class of 'Place of Worship' with additional information for the Planning Board to determine."  (ECF No. 12-6 at 8; *see* AC ¶ 42.)

At a Planning Board meeting on August 23, 2023, the Town Engineer again confirmed that religious education was a use included within "place of worship."  (AC ¶ 43.)  Neither the Planning Board nor its counsel contradicted or questioned this statement.  (*Id.*)  Fuller Engineering then prepared and submitted revised plans on behalf of the Yeshiva, which did not change the proposed religious educational use of the Property.  (*Id.* ¶ 44.)

---

[2] *Yeshiva Talmud Torah*, which was brought under Article 78, involved a proposal for similar live-in summer religious studies for students, and the Court concluded that the proposed facilities fell within the definition of "place of worship."  *See* 97 N.Y.S.3d at 739-40.

4

At the October 25, 2023 Planning Board meeting, the Town Engineer submitted another comment letter, repeating the same language regarding the proposed uses of the Property. (ECF No. 12-8 at 3-5; *see* AC ¶¶ 45- 46.) The minutes state that one Planning Board member received clarification that the application was looking to change the existing special use of hotel/motel/restaurant to a religious place of worship. (AC ¶ 47; ECF No. 12-8 at 2.) At that meeting, alternate Planning Board member and candidate for Town Board, Laura Burrell, sat in for an absent Planning Board member. (AC ¶ 45.) She was later elected to the Town Board, along with two other new members. (*Id.* ¶ 49.)

On November 17, 2023, the Yeshiva submitted revised documents to the Planning Board, including another memo explaining the proposed religious use of the Property during the summer and non-summer months. (*Id.* ¶ 50.) The memo provided details about how each of the buildings on the Property would be utilized and how each use would contribute to the religious use of the Property. (*Id.* ¶ 52.) It reiterated that groups would come to the Property in the summer for religious programs, remain on site along with staff, and sleep at accommodations on site. (*Id.*) The Yeshiva's engineer, Mr. Fuller, also submitted a Stormwater Pollution Prevention Plan and a letter responding to comments from the Town Engineer. (*Id.* ¶¶ 53-54.)

On November 29, 2023, the Planning Board held another meeting, at which it stated that it hoped to schedule a public hearing at its December meeting. (*Id.* ¶ 56.) Before the December meeting, Mr. Fuller successfully worked with the Town Engineer to address any open technical issues. (*Id.* ¶ 57.) At the December 20, 2023 meeting, Mr. Fuller confirmed that the technical issues had been resolved and requested that the Planning Board schedule a public hearing. (*Id.* ¶ 58.) At least one Planning Board member expressed hostility to Mr. Fuller about the Yeshiva,

5

including by accusing its Rabbi of being prejudiced, although this exchange is not included in the Planning Board minutes.  (*Id.* ¶ 60.)

On January 2, 2024, the new members of the Town Board and the Town Supervisor were sworn in, and stated that they were interviewing candidates for Town Attorney.  (*Id.* ¶ 61.)  On January 4, 2024, the Town Board held a special meeting to appoint an attorney for the Town.  (*Id.* ¶ 62.)  The Town Board Supervisor stated that the Board was looking for an at-will attorney so that the Board members could change out the attorney if they "d[id] not like the way that it's going," including if they felt like the attorney did not have the skill set, was biased, or was not representing the Town the way the Board wanted.  (*Id.* ¶ 64.)  The Town Board voted to retain Steven Mogel, with whom members of the Town Board had previously worked, as counsel for the Town, including the Planning Board and the Zoning Board of Appeals ("ZBA").  (*Id.* ¶¶ 62-63, 65.)

On January 12, 2024, the Yeshiva's counsel wrote to the Planning Board in response to reports that Board members had questioned whether the application was for religious use.  (*Id.* ¶ 66.)  The Yeshiva's counsel reminded the Planning Board that these matters had been addressed in a memo from April 2023 and resubmitted that memo.  (*Id.*)  Counsel also responded to the allegations that the Yeshiva's Rabbi was prejudiced, warning the Planning Board that such negative comments suggested impermissible prejudgment of the application.  (*Id.* ¶ 68.)

Another meeting was held on January 24, 2024, at which time Planning Board members asked the Yeshiva's counsel questions about the proposed religious use of the Property.  (*Id.* ¶¶ 70, 72.)  Counsel restated that the Property would be used for religious education of the Yeshiva's students and the children of the Yeshiva's staff during the summer and as a religious retreat during the rest of the year.  (*Id.* ¶ 72.)  Nevertheless, the minutes from this meeting

6

incorrectly state that the application had not specifically stated the use intended. (*Id.* ¶ 73.) The Town Attorney, Mr. Mogel, who was present at the meeting, suggested that the Planning Board refer the application to the ZBA for an interpretation as to whether the Yeshiva's proposed use was religious. (*Id.* ¶ 74.) Plaintiff alleges that this was prearranged because the Planning Board immediately voted to refer the matter to the ZBA without discussion. (*Id.*) The meeting minutes again incorrectly summarized this exchange, as they state that Mr. Mogel said that the applicant (that is, the Yeshiva) could apply to the ZBA for a hearing, when he actually said that the Planning Board could ask the ZBA for an interpretation (which it did). (*Id.* ¶ 75.)

In light of the error in the meeting minutes, on March 5, 2024 the Yeshiva's counsel wrote to the Planning Board and ZBA to explain that the Planning Board voted to refer the Yeshiva's special permit application to the ZBA for interpretation of the Town Code and that the ZBA was required to take up the referral without an application from the Yeshiva. (*Id.* ¶ 76.) Despite this letter, the ZBA Secretary refused to place the matter on the ZBA agenda without such an application. (*Id.* ¶ 77.) Counsel wrote again to the Planning Board and ZBA on March 20, 2024, stating that, "My client will not be forced to create an administrative record that it is seeking a use interpretation when its position has consistently been that there is no ambiguity about its proposed religious use." (*Id.* ¶ 78.) That same day, Mr. Mogel confirmed that the Planning Board referred the matter to the ZBA for a use interpretation. (*Id.* ¶ 79.) The ZBA then took up the referral. (*Id.*)

On April 16, 2024, the Yeshiva appeared before the ZBA and counsel reiterated what had been stated in its April and November 2023 memos: that the law was clear that the Yeshiva's proposed uses were religious uses. (*Id.* ¶ 80.) The ZBA also received a statement from the United States Department of Justice ("DOJ") that discussed the elements of religious use as it

7

relates to RLUIPA, and was informed (although it is not clear by whom) that the Yeshiva's proposed summer religious educational use met the DOJ's criteria for religious use. (*Id.*) The ZBA scheduled a public hearing for May. (*Id.*)

At the May 21, 2024 ZBA meeting, the Yeshiva's counsel reiterated that its proposed uses were religious in nature and authorized as a place of worship. (*Id.* ¶ 81.) The minutes state that counsel defined "place of worship" as a place where religious uses are undertaken and as including "a full complex of religious uses," and Mr. Mogel confirmed that the cases that counsel cited defined "place of worship" in such broad terms. (*Id.* ¶ 82.) The minutes do not, however, accurately reflect the Yeshiva's counsel's answer regarding how the proposed use in the summer would be distinguished from a summer camp. (*Id.* ¶ 83.) The minutes state that counsel responded that the proposed uses "are not camps, retreats, or schools but are religious uses," (ECF No. 12-22 at 4), but Plaintiff alleges counsel had actually stated that the use would be religious education, and that is what defines the use rather than the fact that students reside there for the summer, (AC ¶ 83). The ZBA then opened the public hearing and instructed that comments should be confined to the issue of the proper interpretation of the use of the Property. (*Id.* ¶ 84.) Despite this instruction, the comments from the public did not address the interpretation issue and instead raised concerns regarding traffic and other similar matters. (*Id.*) Some members of the public also spoke out "forcefully" against the Yeshiva receiving the special use permit. (*Id.*) The Yeshiva's counsel argued that the concerns raised by the public would be addressed by the Planning Board and had nothing to do with the question of interpretation before the ZBA. (*Id.*) The ZBA did not engage in further discussion as to whether the proposed summer educational use would be a religious use that could be approved as a specially permitted place of worship. (*Id.* ¶ 85.)

8

At the June 20, 2024 meeting, the ZBA heard from the Yeshiva's Rabbi, who discussed in detail how the Property would be configured and used, including which groups of students would come to the Property, how many and what kind of staff would be present, and the physical arrangement of the Shul and other facilities.  (*Id.* ¶¶ 86-87.)  The ZBA tabled the matter of interpretation until its next meeting without making a motion directing the Town Attorney to prepare a resolution.  (*Id.* ¶ 88.)  On July 18, 2024, the ZBA's counsel handed the ZBA chair and members a previously prepared resolution, which was read aloud by the ZBA chair.  (*Id.* ¶ 89.)  The resolution stated that the proposed use of the Property in the summer was not religious, but was a children's camp, and therefore prohibited, under the Town Code.  (*Id.* ¶ 91.)  Immediately following the reading of the resolution, without giving the Yeshiva an opportunity to respond, the ZBA made a motion to adopt the resolution.  (*Id.* ¶ 90.)  Without discussion on the motion, the ZBA unanimously voted to adopt the resolution.  (*Id.*)  The ZBA interpretation was officially filed with the Town Clerk on August 9, 2024.  (*Id.* ¶ 92.)

Plaintiff contends, without citation, that the Planning Board is required by law to follow the ZBA interpretation, and cannot issue a special use permit for a prohibited use.  (*Id.* ¶ 93.)  Thus, Plaintiff alleges that it is impossible for the Planning Board to grant the Yeshiva's application for a special use permit.  (*Id.* ¶¶ 93-94.)  Plaintiff also alleges that the ZBA's interpretation prevents the Yeshiva from providing religious education to its students at the Property during the summer.  (*Id.* ¶ 104.)  It has also forced the Yeshiva to expend funds to find an alternate location for religious educational facilities, pay carrying costs for the Property including real property taxes, and pay for expenses associated with the proceedings before the Planning Board and ZBA.  (*Id.* ¶ 125.)

**B.      Procedural History**

On November 7, 2024, Plaintiff filed its initial complaint, bringing claims for violations

of RLUIPA, the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal

Protection Clause, the New York State Constitution, and 42 U.S.C. § 1985.  (ECF No. 1.)

Defendants filed their pre-motion letter in anticipation of their motion to dismiss on January 30,

2025.  (ECF No. 9.)  On February 27, 2025, the Court held a pre-motion conference, at which it

granted Plaintiff leave to amend its complaint.  (*See* Minute Entry dated Feb. 27, 2025.)  On

March 31, 2025, Plaintiff filed its AC, dropping the § 1985 claim.  (*See generally* AC.)  On July

29, 2025, the United States filed a statement of interest.  (ECF No. 19.)  The instant motion

followed.

**II.      LEGAL STANDARDS**

**A.      12(b)(1)**

"A federal court has subject matter jurisdiction over a cause of action only when it has

authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168

(2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d

Cir. 2009).[3]  "A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see*

*Seljak v. Pervine Foods, LLC*, No. 21-CV-9561, 2023 WL 2354976, at *4 (S.D.N.Y. Mar. 3,

2023).  "The party invoking federal jurisdiction bears the burden of establishing" that it exists.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "In resolving a motion to dismiss under

---

[3] Unless otherwise noted, case quotations omit internal quotation marks, citations, alterations and footnotes.

10

Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," *Fountain v. Karim,* 838 F.3d 129, 134 (2d Cir. 2016), and "may refer to evidence outside the pleadings," *Makarova*, 201 F.3d at 113.

**B.     12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

11

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    DISCUSSION

### A.    Ripeness

Defendants argue the Court lacks subject matter jurisdiction over Plaintiff's claims because the claims are not ripe for adjudication, in that Plaintiff has not received a final decision on its special use permit application from the Planning Board and has not applied for a variance. (*See* ECF No. 23 ("Ds' Mem.") at 8-12.)  Plaintiff argues that going back to the Planning Board would be futile because the Planning Board cannot deviate from the ZBA interpretation, and that Plaintiff is not required to seek a variance in this case to have a final decision.  (*See* ECF No. 24 ("P's Opp.") at 9-12.)

Ripeness has both a constitutional and prudential dimension.  *See 835 Hinesburg Rd., LLC v. City of S. Burlington*, No. 22-CV-58, 2023 WL 2169306, at *6 (D. Vt. Jan. 27, 2023), *aff'd*, No. 23-218, 2023 WL 7383146 (2d Cir. Nov. 8, 2023) (summary order), *cert denied*, 145 S. Ct. 138 (2024).  Thus, in the land-use context, some courts in this Circuit frame the ripeness inquiry as jurisdictional, *see Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293 (2d Cir. 2022) (reviewing whether court lacked subject matter jurisdiction on ripeness grounds); *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 121 (2d Cir. 2014) (describing ripeness as a jurisdictional inquiry and reviewing dismissal under 12(b)(1)); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) ("Ripeness is a jurisdictional inquiry."); *Londregan v. Town of E. Lyme*, 666 F. Supp. 3d 192, 198 (D. Conn. 2023) (reviewing for lack of subject matter jurisdiction and referring to ripeness as a jurisdictional inquiry), while

12

others frame it as prudential, *see BMG Monroe I, LLC v. Vill. of Monroe*, 93 F.4th 595, 600-01 (2d Cir. 2024) (describing question of ripeness of land-use claims as one of justiciability and noting that the prudential ripeness doctrine is "not, strictly speaking, jurisdictional"); *Martin v. Town of Simsbury*, 735 F. App'x 750, 751-52 (2d Cir. 2018) (summary order) (describing ripeness test set forth in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), *overruled in part on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019), as one of prudential ripeness); *Lubavitch of Old Westbury, Inc. v. Incorporated Vill. of Old Westbury*, No. 08-CV-5081, 2023 WL 9058143, at *6 (E.D.N.Y. Dec. 18, 2023) ("[T]he Court sees the ripeness issue as a prudential rather than a pure jurisdictional rule . . . ."), *report and recommendation adopted in part*, 2024 WL 656516 (E.D.N.Y. Feb. 16, 2024).

"'Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the judiciary. It prevents courts from declaring the meaning of law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003)). Prudential ripeness, on the other hand, asks whether "the case will be better decided later and [whether] the parties will . . . have constitutional rights undermined by the delay. It does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III." *Id.* But both doctrines are "concerned with whether a case has been brought prematurely," *id.* at 687, and prevent courts from entangling themselves in either abstract disagreements, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002), *abrogated on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019), or "'adjudications that may later

13

turn out to be unnecessary,'" *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 (quoting *Simmonds*, 326 F.3d at 357).  Further, prudential ripeness is a justiciability doctrine, and thus, like questions of jurisdiction, may be addressed at the threshold.  *See BMG Monroe I, LLC*, 93 F.4th at 600-01.

"Before any land-use dispute – whether brought as a takings, due process, [RLUIPA, free exercise,] or equal protection claim – is ripe for review, plaintiffs must satisfy a finality requirement."  *Ferncliff Cemetery Ass'n v. Town of Greenburgh*, No. 18-CV-6411, 2019 WL 6878560, at *6 (S.D.N.Y. Dec. 17, 2019), *aff'd*, 834 F. App'x 665 (2d Cir. 2021) (summary order); *see Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 444 (2d Cir. 2008) (summary order); *Murphy*, 402 F.3d at 348.  The finality requirement demands that the "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  *Williamson Cnty. Reg'l Plan. Comm'n*, 473 U.S. at 186.  Although initially developed in the context of takings, the *Williamson County* finality requirement has been extended to First Amendment, equal protection, due process, RLUIPA, and discrimination claims in the land-use context.  *See Vill. Green at Sayville, LLC*, 43 F.4th at 294 ("[T]he final-decision requirement not only remains good law but has been expanded . . . to zoning challenges based on substantive due process; First Amendment rights of assembly and free exercise; the Religious Land Use Institutionalized Persons Act of 2000; a state law analogue to RLUIPA, as well as to zoning challenges under the [ADA] based on allegations of intentional discrimination."); *Sunrise Detox V, LLC*, 769 F.3d at 123 (applying finality requirement to discrimination claims); *Dougherty*, 282 F.3d at 88-89 (applying requirement to equal protection and substantive due process); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013) ("[T]he Second Circuit has applied this test to as-applied challenges to land use laws under RLUIPA, the First Amendment, the

14

Equal Protection Clause, and the Due Process Clause."), *aff'd*, 945 F.3d 83 (2d Cir. 2019).  This

requirement applies "regardless of whether ripeness is described as jurisdictional or prudential."

*835 Hinesburg Rd., LLC*, 2023 WL 2169306, at *6.  Thus, I need not decide whether the issue

here is one of jurisdictional or prudential ripeness.  *Cf. Simmonds*, 326 F.3d at 357 ("Usually it

does not matter . . . whether a case is dismissed for lack of constitutional or prudential ripeness.")

Plaintiff must satisfy a "high burden" of proving that the court can look to a "final,

definitive position from a local authority to assess precisely how they can use their property."

*Murphy*, 402 F.3d at 347.  "'[F]ederal courts do not sit as zoning boards of review and should be

most circumspect in determining that constitutional rights are violated in quarrels over zoning

decisions.'"  *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 599 (quoting

*Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989)).

### 1.    Permit Application

The Planning Board never denied (or approved) Plaintiff's application for a special use

permit.  Nevertheless, Plaintiff argues it should be excused from having to wait for the Planning

Board's final decision because it would be futile to do so, as the Planning Board is bound by the

ZBA's interpretation of the Town Code and cannot issue a special permit for a prohibited use.

(P's Opp. at 8-9.)

Although a Plaintiff typically must plausibly allege it has received a final decision on its

application, "exceptions to the finality requirement include futility, *i.e.*, when a zoning agency

lacks discretion to grant variances or has dug in its heels and made clear that all such

applications will be denied."  *61 E. Main St. Assocs., LLC v. Vill. of Washingtonville*, No. 24-

CV-2647, 2025 WL 2709124, at *7 (S.D.N.Y. Sept. 23, 2025).  This futility exception may also

apply not just in the variance context but also when the relevant agency lacks discretion to

approve a plaintiff's application. *See Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 604 (explaining, in evaluating futility exception, that it was undisputed that agency lacked discretion to approve special permit); *Country View Ests. @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 151 (E.D.N.Y. 2006) (futility argument failed where planning board had power under town code to review application to reclassify property).

Here, Plaintiff alleges that the Planning Board lacks the authority to disregard the ZBA's interpretation of the Town Code or to issue a permit for a prohibited use. The Town Code vests the power to interpret the Code in the ZBA. *See* Town of Highland Town Code § 190-65(B) ("The [Zoning] Board shall, upon request, decide any questions involving the interpretation of any provision of this chapter."); *id.* § 190-66(A) (explaining procedure for applications for interpretations to ZBA); *id.* § 190-66(C) ("The Town Board, Code Enforcement Officer or Planning Board of the Town of Highland may request the Zoning Board of Appeals to decide any question involving the interpretation of any provision of this chapter . . . ."). Additionally, although Plaintiff did not cite, and the Court could not find, a specific provision in the Town Code that prevents the Planning Board from deviating from such an interpretation, Defendants have not argued that the Board has such discretion or that it may issue a permit when the ZBA has declared a proposed use to be prohibited. Indeed, Defendants seem to concede that the Planning Board may not do so, such that the only possible outcome would be denial of Plaintiff's application. (*See* ECF No. 25 ("Ds' Reply") at 3 ("[W]hile Plaintiff argues the only possible outcome is a denial by the Planning Board, it cannot allege that further review by Village agencies, including a use variance, would not potentially relieve any alleged injuries.").) This position is consistent with the case law in New York. *See Smith v. Town of Thompson Plan. Bd.*, 223 N.Y.S.3d 356, 359 (App. Div. 3d Dep't 2024) ("Planning boards are without power to

16

interpret the local zoning law, as that power is vested exclusively in local code enforcement officials and the zoning board of appeals."); *id.* ("A special use permit may only be granted when the applicant seeks to use the property in a manner that is expressly allowed in the zoning district.") (collecting cases).  Thus, because the Planning Board lacks discretion to challenge the ZBA's interpretation that the proposed use is a prohibited use, and because it also lacks discretion to grant a permit where the proposed use is prohibited by the Town Code, Plaintiff has plausibly alleged that it would be futile to await the Planning Board's decision on the special use permit application, as that body's only option would be to deny it.

### 2. Variance

But Defendants also argue that Plaintiff's claims are not ripe because Plaintiff has not applied for a variance.  (Ds' Mem. at 11; Ds' Reply at 2-3.)  In land-use claims, the finality requirement is generally only satisfied once a property owner has submitted "at least one meaningful application for a variance."  *Murphy*, 402 F.3d at 348; *see Rivendell Winery, LLC v. Town of New Paltz*, 725 F. Supp. 2d 311, 318 (N.D.N.Y. 2010) ("Generally, a final decision of how property may be used has not been made unless the property owner requests a variance from the local zoning laws."); *Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*, No. 19-CV-443, 2021 WL 1226930, at *9 (S.D.N.Y. Mar. 31, 2021) ("A final decision exists when a development plan has been submitted, considered and rejected by the governmental entity with the power to implement zoning regulations," and "the property owner submits at least one meaningful application for a variance."), *on reconsideration*, 2021 WL 3605041 (S.D.N.Y. Aug. 13, 2021).  For example, in *MacDonald, Sommer & Frates v. Yolo County*, Plaintiff's takings claim was not ripe for review where the plaintiff-developer had failed to apply for variances and there was still a "possibility that some development" might be permitted.  477 U.S. 340, 351-352

17

(1986); *see Hennelly v. Town of Middletown*, No. 10-CV-966, 2010 WL 4366917, at \*3 (N.D.N.Y. Oct. 28, 2010) (dismissing Plaintiff's due process land-use challenge where he failed to apply for variances which could have allowed him to build on property).

But Plaintiff argues that it need not apply for a variance because the ZBA's interpretation was a final decision as to the interpretation of the Town Code. (P's Opp. at 9 ("The simple truth is that the ZBA interpretation is the final and definitive action . . . .").) In the Second Circuit, to determine when a decision is final, a court should consider: "(1) whether the [Plaintiff] experienced an immediate injury as a result of [Defendants'] actions and (2) whether requiring the [Plaintiff] to pursue additional administrative remedies would further define [its] alleged injuries." *Murphy*, 402 F.3d at 351; *see Congregation Kollel, Inc. v. Twp. of Howell*, No. 16-CV-2457, 2017 WL 637689, at \*8 (D.N.J. Feb. 16, 2017) ("[T]he Second Circuit . . . employed a two-step inquiry to determine whether a land use decision is final. At the first step, the circuit court examined whether the town's action had inflicted an immediate injury on the plaintiffs. . . . In the next step, the court analyzed whether the existing record clearly defined the plaintiffs' injury. ").

Plaintiff argues that a variance application would not provide any additional factual information about whether the proposed religious educational use is permitted under the Town Code. (P's Opp. at 10-12.) Plaintiff relies on factually similar cases from the District of New Jersey in which the courts rejected the argument that a variance application was necessary for the ripeness of plaintiffs' claims that the ZBA's interpretation of the Code was erroneous and discriminatory. (*See id.* (first citing *Congregation Kollel, Inc.*, 2017 WL 637689, at \*9-10; then citing *Khal Anshei Tallymawr, Inc. v. Twp. of Toms River*, No. 21-CV-2716, 2021 WL 5757404, at \*7 (D.N.J. Dec. 3, 2021); and then citing *Bais Brucha Inc. v. Twp. of Toms River*, No. 21-CV-

18

3239, 2024 WL 863698, at *6 (D.N.J. Feb. 29, 2024)).)  But these cases are not binding on this

Court.  And, although the Third Circuit has indicated that "a variance application is [not] always

necessary to satisfy the finality requirement," *Bais Brucha Inc.*, 2024 WL 863698, at *6, the

Second Circuit has held that it is, *see BMG Monroe I, LLC*, 93 F.4th at 601 ("We have made

clear that appealing to the Zoning Board of Appeals *and* requesting variance relief are both

necessary prerequisites to ripeness.") (emphasis in original); *Lost Lake Holdings LLC v. Town of

Forestburgh*, No. 22-CV-10656, 2025 WL 1899026, at *6 (S.D.N.Y. July 9, 2025) (same);

*Bulson v. Town of Brunswick*, No. 24-CV-503, 2025 WL 743950, at *4 (N.D.N.Y. Mar. 7, 2025)

("The Second Circuit has held that *Williamson County*'s 'final decision' requirement conditions

federal review on a property owner submitting at least one meaningful application for a

variance."), *appeal withdrawn*, No. 25-734, 2025 WL 2319842 (2d Cir. June 23, 2025). [4]

      And at least one court in this Circuit dealing with a similar issue found the plaintiff's

claim to be unripe because the plaintiff had not yet applied for a use variance.  *See Rehabilitation

Support Servs., Inc.*, 226 F. Supp. 3d at 127.  There, the plaintiff brought claims under the Fair

Housing Act, alleging that the defendants had deviated from the Town Code, their usual

practices, and the law when the ZBA determined that the plaintiff's proposed sober living

---

[4] The Government argues that cases dealing with area variances, rather than use variances, are distinguishable, as only a use variance could permit Plaintiff's proposed use of the property and the granting of a use variance here "would only permit the Yeshiva to operate a type of facility that it does not intend to operate."  (ECF No. 19 at 18.)  But there are several cases in this Circuit that – like those involving area variances – require a plaintiff to apply for a use variance before the claim could be considered ripe.  *See, e.g.*, *Ferncliff Cemetery Ass'n*, 2019 WL 6878560, at *7 (claim not ripe where ZBA invited plaintiff to apply for use variance but plaintiff failed to do so); *Rehabilitation Support Servs., Inc. v. Town of Esopus*, 226 F. Supp. 3d 113, 126-27 (N.D.N.Y. 2016) (claim was not ripe where plaintiff had not yet applied for a use variance despite being able to do so).  Further, the idea that "if a developer does not follow the procedures for obtaining a variance from the appropriate government entity, the developer has not yet obtained a final decision regarding how it will be allowed to develop its property," *Lost Lake Holdings LLC*, 2025 WL 1899026, at *6, applies with equal force to use variance cases.

19

residence was not a single-family dwelling but rather a convalescent home, which was prohibited by the Code. *See id.* at 118-19. The Court explained that, although it was skeptical as to how the plaintiff's proposed use could be deemed to be a convalescent home, and although plaintiff could not apply for a special use permit because the ZBA's interpretation was that the use was not permitted, the ZBA's classification was not a final decision because plaintiff had not applied for a use variance or other forms of relief. *See id.* at 125-27. The instant case is therefore in line with Second Circuit precedent and suggests that Plaintiff's claims are similarly unripe in the absence of a variance application.[5]

Further, Plaintiff does not plausibly allege that the ZBA's interpretation inflicted an immediate injury. *See Donovan Realty, LLC v. Davis*, No. 07-CV-905, 2009 WL 1473479, at \*3 (N.D.N.Y. May 27, 2009) ("A final decision is a definitive position on the issue that inflicts an actual, concrete injury."). Plaintiff does not even address any alleged injuries in its opposition. In the AC, however, Plaintiff alleged that the ZBA's interpretation prevents the Yeshiva from providing religious education to its students at the Property during the summer and has forced the Yeshiva to expend funds to find an alternate location for religious educational facilities. (*Id.* ¶¶ 104, 125.) But these injuries are speculative, because Plaintiff would not have to find and pay for an alternate location if the ZBA were to grant a use variance. *See Ferncliff Cemetery Ass'n*, 2019 WL 6878560, at \*7 (because plaintiff could use property as it wished if granted a variance, there was a "potential for administrative solutions" which "confirm[ed] the conclusion that the issues [were] not yet ripe and plaintiff's injuries [were] speculative"); *St. Vincent De Paul Place,*

---

[5] Just as the court in *Rehabilitation Support Services, Inc.* was skeptical of the ZBA's determination, I am skeptical of the ZBA decision here, in light of *Yeshiva Talmud Torah*, 97 N.Y.S.3d 737. I therefore hope that the parties, through the variance process or otherwise, will be able to come to a mutually acceptable accommodation, a path to which they have suggested they are open. (*See* P's Opp. at 2; Ds' Reply at 1 n.1.)

*Norwich, Inc. v. City of Norwich*, No. 13-CV-17, 2013 WL 997076, at *3 (D. Conn. Mar. 13, 2013) ("[A] variance application is necessary to determine whether a plaintiff will be granted an administrative exception to the normal land use requirements. Absent such determination, plaintiffs' injury is merely speculative and may never occur."), *vacated on other grounds*, 535 F. App'x 57 (2d Cir. 2013) (summary order).

For the same reason, the variance application process would also further develop the factual record on the scope of Plaintiff's injuries, as a decision on such application would determine "how [Plaintiff] will be allowed to [use] its property," *Lost Lake Holdings LLC*, 2025 WL 1899026, at *6, and whether the interpretation was the product of a discriminatory motivation, *see Sunrise Detox V, LLC*, 769 F.3d at 123. Thus, it cannot be said that "there is no practical or logical reason to require [the] plaintiff to apply for a variance." *Bulson v. Town of Brunswick*, No. 24-CV-503, 2025 WL 743950, at *4 (N.D.N.Y. Mar. 7, 2025), *appeal withdrawn*, No. 25-734, 2025 WL 2319842 (2d Cir. June 23, 2025).[6] Accordingly, the ZBA's interpretation was not a final decision in the absence of a meaningful application for a use variance. *See Sunrise Detox V, LLC*, 769 F.3d at 124 (Second Circuit "condition[s] federal

---

[6] Plaintiff argues that "a variance application does not provide any additional factual information about whether the proposed religious educational use is permitted under the Highland Zoning Code." (P's Opp. at 10.) But it would provide factual information as to, for example, whether or not Plaintiff was allowed to open its institution, and if not, whether that decision resulted from discrimination. If all Plaintiff wanted was to challenge the ZBA's determination as to the meaning of the Town Code, it could have done so via an Article 78 proceeding in state court, as was done in *Yeshiva Talmud Torah,* 97 N.Y.S.3d 737, which Plaintiff cites. (*See* P's Opp. at 8.) Having eschewed that route in favor of RLUIPA and constitutional claims, it cannot recast this litigation as simply about the correctness, or not, of the ZBA's interpretation of the Code. While *Yeshiva Talmud Torah*, which granted a synagogue's Article 78 petition overruling a ZBA's determination on a similar proposed summer religious educational use, is helpful to Plaintiff on the issue of the proper interpretation of the Code, it does little to support its position on finality. That a ZBA decision is final enough to be reviewed via Article 78 does not necessarily mean it is final enough to be reviewed in federal court.

review on a property owner submitting at least one meaningful application for a variance");

*Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 602 (final decision rule

conditions federal review on property owner submitting "one meaningful application for a

variance").[7]

Nevertheless, as discussed, a plaintiff may be excused from the final decision

requirement if applying for a variance would be futile. *See Murphy*, 402 F.3d at 349. As

explained, to demonstrate futility, a plaintiff must show either that the zoning agency lacks

discretion to grant a variance, or "that Defendants have dug in their heels and made clear that all

applications will be denied." *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *6

(S.D.N.Y. Mar. 31, 2009), *aff'd*, 414 F. App'x 350 (2d Cir. 2011) (summary order); *see 61 E.

Main St. Assocs., LLC*, 2025 WL 2709124, at *8. "[M]ere doubt" that variance applications will

be granted, however, is insufficient to invoke the futility exception. *Rivendell Winery*, 725 F.

Supp. 2d at 319. Futility is "quite narrowly" construed, *Tri-State Video Corp. v. Town of

Stephentown*, No. 97-CV-965, 1998 WL 72331, at *4 (N.D.N.Y. Feb. 13, 1998), and "does not

exist merely because of hostility to the developer's plans," *S&R Dev. Ests., LLC v. Bass*, 588 F.

Supp. 2d 452, 463 (S.D.N.Y. 2008).

First, the ZBA has discretion to grant variances pursuant to Town Code § 190-66(B). *See

E. End Eruv Ass'n, Inc. v. Vill. of Westhampton Beach*, 828 F. Supp. 2d 526, 537 (E.D.N.Y.

---

[7] Plaintiff contends that "[b]y definition, a variance cannot yield what the Yeshiva sought and is entitled to, to wit: the right to undertake its summer religious educational use as a permitted use." (P's Opp. at 3.) But what the Yeshiva sought was authorization to run its summer religious educational program at the Property. It did not seek a finding of religious use for its own sake, but in order to be able to use the property as it wanted. While Plaintiff states that it seeks "validation and confirmation that its religious summer educational use is a fully permitted use, not one that requires a variance," (*id.* at 4), the Court sees no reason why, if the result is the same, it should "entangl[e itself] in [an] abstract disagreement[]." *Murphy*, 402 F.3d at 347.

2011) (action not ripe where ZBA had authority to grant variances and decide appeals under town code and New York State Town Law); *Missere v. Gross*, 826 F. Supp. 2d 542, 555 (S.D.N.Y. 2011) (futility exception inapplicable where ZBA had discretion to grant variances under village code). Second, Plaintiff has not plausibly alleged that Defendants have dug in their heels and made clear that all applications will be denied. Plaintiff's mild allegations of hostility and bad faith by the Planning Board and the public, (*see* AC ¶¶ 60, 84), do not excuse its failure to obtain a final decision, *see Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 408 (E.D.N.Y. 2008) (collecting cases). "Evidence of hostility by local officials is . . . not alone enough to satisfy the futility exception, especially where a plaintiff fails to connect that evidence to the body charged with deciding variance applications." *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at \*12 (S.D.N.Y. Mar. 26, 2019); *see S&R Dev. Ests.*, 588 F. Supp. 2d at 463 ("Although [plaintiff] has faced opposition to its development plan from Town officials and influential Town groups, it has not shown that the prospect of refusal from the ZBA would be certain."); *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 160-61 (S.D.N.Y. 2000) (allegations of open hostility by or conspiracy among defendants insufficient to show that refusal was certain). Here, Plaintiff alleged some unidentified member of the Planning Board made negative remarks about the Yeshiva's Rabbi, (AC ¶ 60), and that members of the public spoke out forcefully against the Yeshiva at the ZBA public hearing, (*id.* ¶ 84). But Plaintiff does not allege that anyone on the ZBA, the body charged with deciding a variance application, made any similar remarks. Plaintiff also has not alleged that the ZBA made

23

any other comments or decisions that indicated that it would not grant a variance. Thus, Plaintiff has not plausibly alleged the ZBA had made clear that all applications would be denied.[8]

Third, a Plaintiff may also demonstrate futility "where local authorities are manipulating a zoning process out of discriminatory animus to avoid a final decision." *61 E. Main St. Assocs., LLC*, 2025 WL 2709124, at *8. "While there is no precise cut-off, cases in this Circuit have found that delays as long as eight years are insufficient to surmount the finality requirement." *Id.* Here, Plaintiff submitted its special use permit application in February 2023, (AC ¶ 23), and filed this action in November 2024, (ECF No. 1), after receiving the ZBA's interpretation. Thus, to the extent that Plaintiff might argue the Town manipulated or delayed the process out of discriminatory animus, that argument is not plausible, as not even two years passed before Plaintiff filed its complaint.

---

[8] The Government contends that seeking a variance would be futile because Plaintiff could not meet the necessary criteria. (ECF No. 19 at 16-17.) Plaintiff makes no such argument. In any event, "without applying for a variance even once, the Plaintiff [is] estopped from arguing that there was no possibility that a variance would be granted." *Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11-CV-5608, 2013 WL 135216, at *9 (S.D.N.Y. Jan. 10, 2013) (citing *Westhab, Inc. v. City of New Rochelle,* No. 03-CV-8377, 2004 WL 1171400, at *11 (S.D.N.Y. May 3, 2004)); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 525 (6th Cir. 2004) ("[Although] a plaintiff need not seek a variance from a regulation where it would be an idle and futile act[,] the exception only applies where a landowner has submitted at least one meaningful application for a variance."), *overruled on other grounds by San Remo Hotel, L.P. v. City & County of San Fransico*, 545 U.S. 323 (2005); *see also Smalis v. City of Pittsburgh*, No. 19-CV-1609, 2024 WL 1076108, at *2 (W.D. Pa. Mar. 12, 2024) ("[Plaintiff] has not pled finality for Count 2 against the City because he has not alleged any facts showing that he applied for and was denied a variance."), *reconsideration denied*, 2024 WL 2319508 (W.D. Pa. May 22, 2024), *appeal dismissed*, No. 24-2144, 2024 WL 5261488 (3d Cir. Oct. 3, 2024); *cf. Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 286 (S.D.N.Y. 2009) (where variance denied for not meeting criteria, property owner not required to appeal). "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." *MacDonald, Sommer & Frates*, 477 U.S. at 350.

Finally, there is another exception to the final decision rule that applies to discrimination claims. *See Lost Lake Holdings LLC*, 2025 WL 1899026, at *11. "[A] plaintiff alleging discrimination in the context of a land-use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision." *Sunrise Detox V, LLC*, 769 F.3d at 123. Plaintiff cannot make such a showing here. As discussed, Plaintiff alleges its rights were violated when the ZBA interpreted Plaintiff's proposed use as a children's camp rather than a place of worship under the Town Code. This decision, Plaintiff argues, caused financial damages, including the carrying costs of the Property and the expenses Plaintiff incurred in finding another property for its religious activities. But those injuries "derive from defendants' allegedly discriminatory efforts," including the ZBA interpretation. *Lost Lake Holdings LLC*, 2025 WL 1899026, at *11 (plaintiffs failed to allege injury independent of building inspector's permit denial where plaintiffs alleged denial prevented plaintiffs from building homes for religious community members, caused financial damages including the loss of home sales, and prohibited plaintiffs from taking further action because such injuries were derivative of defendants' alleged discrimination); *see Sunrise Detox V, LLC*, 769 F.3d at 124 (commissioner's determination that facility did not qualify as a "community residence" did not cause injury independent of city's ultimate land-use decision "in light of administrative avenues for relief").[9] Thus, this exception does not apply either.

---

[9] *Sunrise Detox V* added that "a plaintiff need not await a final decision to challenge a zoning policy that is discriminatory on its face, or the manipulation of a zoning process out of discriminatory animus to avoid a final decision," 769 F.3d at 123, neither of which is alleged here. Because Plaintiff in that case sought only an injunction, the court did not need to reach

> whether a property owner who claimed that a local official vetoed his or her development project out of hostility based on the owner's race, gender, disability, or the like, in violation of federal statutory or constitutional law, could seek immediate recompense in federal court from that official for the dignitary or

Accordingly, Plaintiff has failed to show that a variance application would be futile, and thus Plaintiff's claims are not ripe. This analysis applies to all of Plaintiff's federal land-use claims – RLUIPA, free exercise, and equal protection. *See Lost Trail*, 289 F. App'x at 444 ("Land use challenges, whether pursued as a takings claim under the Fifth Amendment or as violations of equal protection or due process, are subject to the ripeness requirement articulated in [*Williamson County*]."); *Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78 (E.D.N.Y. 2016) (applying same ripeness test to as-applied takings, due process, and equal protection claims because they all arose out of same facts including applications for permit); *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 596-607 (applying same ripeness analysis to claims under Equal Protection Clause, Free Exercise Clause, and RLUIPA); *Grossi v. City of N.Y.*, No. 08-CV-1083, 2009 WL 4456307, at *5 (E.D.N.Y. Nov. 30, 2009) ("[W]hen takings, due process and equal protection claims arise out of the same factual events, the Court will apply the same ripeness inquiry to plaintiff's takings, due process, and equal protection claims."). Accordingly, all of Plaintiff's federal claims are unripe and therefore dismissed without prejudice. *See Murphy*, 402 F.3d at 347 (ripeness is a question of timing and controversy may later become ready for adjudication); *see also Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 122 (2d Cir. 1999) ("[W]here federal subject matter jurisdiction does not exist, federal courts do not have the power to dismiss with prejudice, even as a procedural sanction."); *Mtume v. Sony Music Ent.*, No. 18-CV-11747, 2020 WL 832814, at *6 (S.D.N.Y. Feb. 20, 2020) (dismissing

---

emotional harm inflicted by the official even in the absence of a final decision on the development proposal or without pursuing an administrative appeal of that action.

*Id.* Here Plaintiff seeks compensatory damages in addition to an injunction, but only for financial damages, not emotional or dignitary harm, and only against the municipality, not any officer of it.

case without prejudice where case was ripe for purposes of Article III but was not prudentially ripe); *Johnson v. Warden*, No. 08-CV-1377, 2009 WL 1625711, at *3 (D. Conn. June 9, 2009) (dismissing petition without prejudice because it was not prudentially ripe).

Plaintiff's claim under the New York State Constitution is also unripe.  In the land-use context, courts apply to state law claims the same ripeness analysis applied to federal claims. *See Islamic Cmty. Ctr. v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 416 (S.D.N.Y. 2017) ("The first prong of the *Williamson County* analysis applies to land use challenges under RLUIPA, the United States Constitution, and state law."), *aff'd*, 742 F. App'x 521 (2d Cir. 2018) (summary order); *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 596-607 (applying same ripeness analysis to claim under New York Constitution as to federal land-use claims).  Accordingly, for the reasons set forth above, Plaintiff's state law claim is also dismissed without prejudice.

## IV.   <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended its complaint once, (ECF No. 12), after having the benefit of Defendants' pre-motion letter, (ECF No. 9), and the discussion at the pre-motion conference, (*see* Minute Entry dated Feb. 27, 2025).  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave

27

to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty (NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion in denying leave to amend where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 n.2 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that it is in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave

28

to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendants'] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 22), and close the case.

**SO ORDERED.**

Dated:  March 5, 2026
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J

29

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
 YESHIVA OHR SHRAGA VERETZKY,

                             Plaintiff,

      -against-

TOWN OF HIGHLAND ZONING BOARD OF
APPEALS and TOWN OF HIGHLAND,

                           Defendants.
----------------------------------------------------------------X

24 **CIVIL** 8477 (CS)

# JUDGMENT

     It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion & Order dated March 5, 2026, Defendants' motion to dismiss is GRANTED and Plaintiff's claims are dismissed without prejudice; accordingly, the case is closed.

**Dated:** New York, New York

      March 7, 2026

                                 **TAMMI M. HELLWIG**
                                _____
                                  **Clerk of Court**

               **BY:**         K. mango

                                  _____
                                  **Deputy Clerk**