# 26-638

# United States Court of Appeals
# for the Second Circuit

YESHIVA OHR SHRAGA VERETZKY,

*Plaintiff-Appellant,*

-against-

TOWN OF HIGHLAND ZONING BOARD OF APPEALS,
TOWN OF HIGHLAND,

*Defendants-Appellees,*

TOWN OF HIGHLAND PLANNING BOARD,
TOWN BOARD OF THE TOWN OF HIGHLAND,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
Volume II of II (Pages JA-155 - JA-310)

SBARSHOVLAW PLLC
*Attorneys for Plaintiff-Appellant*
20 Lagoon Lane
Haverstraw, New York 10927
(917) 886-4326
sb@sbarshovlaw.com

SOKOLOFF STERN LLP
*Attorneys for Defendants-Appellees*
179 Westbury Avenue, Suite 201
Carle Place, New York 11514
(516) 334-4500
ldorfman@sokoloffstern.com

**4908**



ELECTRONIC PARALEGAL

i

## TABLE OF CONTENTS

Docket Entries ...................................................................................JA-1

Summons in Civil Action, Dated November 12, 2024 (ECF No. 5).............JA-9

First Amended Verified Complaint for Declaratory Judgment and
Injunctive Relief, Dated March 31, 2025 (ECF No. 12) .............................JA-11

    Exhibit A to First Amended Verified Complaint -
    District Schedule of Use Regulations Town of Highland
    (ECF No. 12-1) .....................................................................JA-52

    Exhibit B to First Amended Verified Complaint -
    Letter from John D. Fuller, P.E. to Norman Sutherland,
    Dated February 10, 2023, with Special Use Permit Application and
    Environmental Assessment Form (ECF No. 12-2) ...........................JA-55

    Exhibit C to First Amended Verified Complaint -
    Sketch Site Plan (ECF No. 12-3).......................................................JA-64

    Exhibit D to First Amended Verified Complaint -
    Town of Highland Planning Board Meeting Minutes,
    Dated March 22, 2023 (ECF No. 12-4)...............................................JA-65

    Exhibit E to First Amended Verified Complaint -
    Memorandum of Law, Dated April 27, 2023 (ECF No. 12-5)...........JA-84

    Exhibit F to First Amended Verified Complaint -
    Excerpts of Town of Highland Planning Board Meeting Minutes,
    Dated June 28, 2023 (ECF No. 12-6) .................................................JA-98

    Exhibit G to First Amended Verified Complaint -
    Excerpts of Town of Highland Planning Board Meeting Minutes,
    Dated August 23, 2023 (ECF No. 12-7) ...........................................JA-106

    Exhibit H to First Amended Verified Complaint -
    Excerpts of Town of Highland Planning Board Meeting Minutes,
    Dated October 25, 2023 (ECF No. 12-8) ..........................................JA-112

Exhibit I to First Amended Verified Complaint -
Memorandum from Steven Barshov to Town of Highland
Planning Board, Dated November 17, 2023 (ECF No. 12-9)..........JA-117

Exhibit J to First Amended Verified Complaint -
Letter from John D. Fuller, P.E. to Norman Sutherland,
Dated November 17, 2023 (ECF No. 12-10) ....................................JA-119

Exhibit K to First Amended Verified Complaint -
Site Plan for Yeshiva OHR Shraga Veretzky (ECF No. 12-11)......JA-121

Exhibit L to First Amended Verified Complaint -
Excerpts of Town of Highland Planning Board Meeting Minutes,
Dated November 29, 2023 (ECF No. 12-12) ....................................JA-139

Exhibit M to First Amended Verified Complaint -
Excerpts of Town of Highland Planning Board Meeting Minutes,
Dated December 20, 2023 (ECF No. 12-13)....................................JA-141

Exhibit N to First Amended Verified Complaint -
Town of Highland Planning Board Re-Organization Meeting
Minutes, Dated January 2, 2024 (ECF No. 12-14).........................JA-147

Exhibit O to First Amended Verified Complaint -
Town of Highland Special Town Board Meeting Minutes,
Dated January 4, 2024 (ECF No. 12-15) ........................................JA-150

Exhibit P to First Amended Verified Complaint -
Letter from Steven Barshov to Town of Highland Planning
Board, Dated January 12, 2023 (ECF No. 12-16) ...........................JA-152

Exhibit Q to First Amended Verified Complaint -
Town of Highland Planning Board Meeting Minutes,
Dated January 24, 2024 (ECF No. 12-17) ......................................JA-154

Exhibit R to First Amended Verified Complaint -
Letter from Steven Barshov to Town of Highland Planning Board,
Dated March 5, 2024 (ECF No. 12-18).............................................JA-161

Exhibit S to First Amended Verified Complaint -
Letter from Steven Barshov to Town of Highland Planning Board,
Dated March 20, 2024 (ECF No. 12-19)...........................................JA-162

iii

Exhibit T to First Amended Verified Complaint -
Letter from Steven N. Mogel to SBarshovLaw PLLC,
Dated March 20, 2024 (ECF No. 12-20)..............................................JA-164

Exhibit U to First Amended Verified Complaint -
Town of Highland Zoning Board of Appeals Meeting Minutes,
Dated April 16, 2024 (ECF No. 12-21)..............................................JA-165

Exhibit V to First Amended Verified Complaint -
Town of Highland Zoning Board of Appeals Meeting Minutes,
Dated May 20, 2024 (ECF No. 12-22)..............................................JA-168

Exhibit W to First Amended Verified Complaint -
Town of Highland Zoning Board of Appeals Meeting Minutes,
Dated June 20, 2024 (ECF No. 12-23)..............................................JA-175

Exhibit X to First Amended Verified Complaint -
Town of Highland Zoning Board of Appeals Meeting Minutes,
Dated July 18, 2024 (ECF No. 12-24)..............................................JA-183

Exhibit Y to First Amended Verified Complaint -
Town of Highland Zoning Board of Appeals Meeting Minutes,
Dated July 18, 2024 (ECF No. 12-25)..............................................JA-188

Statement of Interest of the United States of America,
Dated July 29, 2025 (ECF No. 19) .........................................................JA-193

Defendants' Notice of Motion to Dismiss, Dated May 29, 2025
(ECF No. 22)..............................................................................JA-219

Defendants' Supporting Memorandum of Law,
Dated May 29, 2024 (ECF No. 23) .........................................................JA-220

Plaintiff's Opposing Memorandum of Law, Dated July 7, 2025
(ECF No. 24)..............................................................................JA-243

Defendants' Reply Memorandum of Law, Dated August 7, 2025
(ECF No. 25)..............................................................................JA-256

Opinion and Order of Hon. Cathy Seibel, Dated March 5, 2026
(ECF No. 26)..............................................................................JA-270

iv

Judgment of United States District Court Southern District of
New York, Dated March 7, 2026, Appealed From (ECF No. 27) .............JA-299

Notice of Appeal, Dated March 11, 2026 (ECF No. 28) ...........................JA-310

Motion: Jeff Spitz          Second: Steve Bott          All in favor
Fire inspection completed and passed.


### Application #48-2023 Ger Flood  Short Term Rental Public Hearing:
Motion to open the public hearing on application #48-2023:
Motion: Steve Bott          Second: Tim McKenna          All in favor
Secretary reads the public notice posted in the local newspapers.
There were (16) letters mailed to the surrounding neighbors and (14) returned.
Correspondence: None
Public Comment: None
Board Comment: None
Motion to close the public hearing on application #48-2023:
Motion: Jeff Spitz          Second: Tim McKenna          All in favor
Motion to approve Application #48-2023 with the condition of quiet hours 10PM to 7AM:
Motion: Tim McKenna          Second: Jeff Spitz          All in favor
Fire inspection completed and passed.


### Application #45-2023 Andrew Kinsey Short Term Rental
Mr. Kinsey owns a three-bedroom home at 89 Split Rock Drive. He resides on the property fifty percent of the year, and rents when the property is not in use. Mr. Kinsey states that when his daughter graduates' high school he will be moving to the property full time.
The board has reviewed the application and ask that Mr. Kinsey provide the declaration page of his insurance policy.
Mr. Kinsey will need to schedule a fire inspection with the code office.
Motion to schedule a public hearing on application #45-2023 to be held on February 28, 2024 @ 6PM:
Motion: Tim McKenna          Second: Steve Bott          All in favor


### Application #7-2023 211 Mail Road – Site Plan Review/Special Use Permit

Attending on behalf of the applicant:
Attorney Steven Barshov and Architect John Fuller
Correspondence: Report from Fusco Engineering (not read into record) see attached.

Attorney Steve Mogel states for the record that he does not have to recuse himself from this application. He was involved with previous applications submitted by the previous owners. Mr. Mogel and Mr. Barshov will schedule a meeting to discuss further.

The application has not stated specifically the use intended. The board at the December 20, 2023 meeting requested the applicant come back with a more clear and defined use for the property. The application submitted for this meeting has defined the use as a religious retreat.
The board asked if the property will only hold religious retreats in the summer or year-round? Will the property be available to all religious groups? What activities will be taking place? Will the occupants be adults, children, or both?

Steven Barshov addresses the questions by stating that the property will be used mainly during the summer months and periodically during the remainder of the year. The property will be available to other religious groups, but states he is not sure those groups would be comfortable using the facility. The activities will vary, and the facility will be used by children as well as adults.

Mr. Barshov feels at this point the applicant has supplied all the necessary information to schedule a public hearing. All technical issues have been addressed. Mr. Barshov also reminds the Board that the approvals he seeks are protected by federal law, i.e., RLUIPA (Religious Land Use and Institutionalized Persons Act), and alleges that RLUIPA dictates that the Board has no discretion with regard to this application, but rather must approve it in its current form.

The board feels that there are still too many gray areas and that the public has the right to all information prior to a public hearing being scheduled. As per Steve Mogel if the board cannot determine the use , the applicant can apply to the ZBA (Zoning Board of Appeals) for a hearing. Once the Zoning Board reviews and makes their decision the applicant can return to the Planning Board.

Motion to have the applicant submit a hearing application to the Zoning Board:
Motion: Jeff Spitz          Second: Tim McKenna          All in favor

Motion to adjourn the meeting:
Motion: JT Vogt          Second: Steve Bott
Meeting adjourned

Motion to close the meeting:
Motion:          Second:          Meeting adjourned

Case 7:24-cv-08477-CS     Document 12-17     Filed 03/31/25     Page 4 of 7

## Code

**From:** Norm Sutherland <ngs_construction@yahoo.com>
**Sent:** Wednesday, January 24, 2024 5:41 PM
**To:** Code
**Subject:** Fwd: Meeting before the Meeting

Norm Sutherland
NGS CONSTRUCTION

Begin forwarded message:

> **From:** Supervisor <supervisor@townofhighlandny.com>
> **Date:** January 15, 2024 at 11:59:27 AM EST
> **To:** Steven Mogel <smogel@sullivancountylawyers.com>
> **Cc:** ngs_construction@yahoo.com
> **Subject: Re: Meeting before the Meeting**
>
> Norm, can you get back here? You wanted input and have requested to be part of the process, but have yet to respond to a meeting set up for the benefit of the board? Is the town your priority or is this part of some political agenda?
>
> I'd like to give you the benefit of the doubt but you're making it very difficult. I've requested meetings with you personally, Laura and Tom requested you reach out and set up a meeting to no avail. Like it or not, I was elected by a landslide and Steve is the attorney for the town and the ZBA and the planning board. You were an appointment. The people didn't elect you nor should they be held in contempt of your aggression.

Case 7:24-cv-08477-CS    Document 12-17    Filed 03/31/25    Page 5 of 7



# FUSCO

### ENGINEERING &
### LAND SURVEYING, D.P.C.

233 East Main Street    Phone: (845)344-5863
Middletown, NY 10940    Fax: (845)956-5865

*Consulting Engineers*

*Alfred A. Fusco, Jr.*    *Alfred A. Fusco, III*
*P.E. Principal*    *General Manager*

January 23, 2024

Norman Sutherland, Planning Board Chairman
Town of Highland
4 Proctor Road
Eldred, New York 12732

RE:  211 Mail Road
     Preliminary Review
     Town of Highland
     SBL 15-1-70.1 and 70.2
     Our file #HL-004

Dear Chairman Sutherland,

We have reviewed the material submitted to us by John Fuller, P.E., and are providing this review as the Town of Highland Planning Board Consultant.

| | |
|---|---|
| Project: | Applicant – John D. Fuller, P.E. for Yeshiva Ohr Shraga Veretzky |
| Address: | 211 Mail Road |
| SBL: | 15-1-70.1 and 70.32 |
| Zone: | Agricultural – Residential – R2 |
| Request: | Special Use Permit – Change of Use |
| Material reviewed: | Site Plan prepared by John Fuller dated 1/11/24, cover letter prepared by John Fuller dated 1/10/24, Traffic Assessment Report prepared by Stephan Maffia dated 11/29/23 |
| Project Info: | Religious Retreat with two (2) 6,800 square foot dormitories, one 1,200 square foot Mikvah, a 9,500 square foot multi-purpose building and additional use as a place of worship. It is our understanding that the existing hotel/motel will be used for religious and educational purposes for the congregation and will not be open to the public. |

## *Comments - SEAF*:

1. Applicant has prepared a list of involved and interested parties. Town was to mail to the interested parties.

## *Comments – Zoning for Bond Information:*

1. Under Chapter 190, Schedule 2, District Schedule of Use Regulations R2 District:
   a. Hotel/Motel is listed as a Special Use Permit and is required for the intended use.
   b. Multi-Purpose building is not specifically listed in R2 but is part of the Special Use Permit (SUP).
   c. Place of Worship is listed in R2 and requires a Special Use Permit from the Planning Board. This would also include the Mikvah, Religious Retreat, and religious education.

233 East Main Street
Middletown, NY 10940
(845)344-5863



Applicant says all existing and proposed buildings shall be utilized for proposed use as outlined in the narrative.

2. The above shows that this project can be considered by the Planning Board as a combination of Special Use Permits; mainly due to the Place of Worship designation and the New York State and Federal RLUIPA 2000 legislature. The Planning Board must determine carefully if the Place of Worship and religious education are the basis of the application. A narrative has been created by the project attorney clarifying how existing and proposed buildings will be used.

The attorney has sent a recent letter to the Board along with the previous memorandum of law for review by the Board and new attorney after preliminary approval.

## Comments – Site Plan:

1. Soils testing to be witnessed by NYSDOH.

2. Our office witnessed percolation and deep soil testing on November 16, 2023. The testing indicated that the soils would support septic disposal systems and are now on plan.

3. The shallow trench systems have been eliminated; a conventional Eljen to be installed.

4. The plan indicates that the mikvah would only discharge 640 gallons per day. The pool is emptied once per month – 400 gpd is for 40 people. The mikvah treated as bath house – 10 gpd per person.

5. Pump chamber provided due to the length of laterals exceeding 500 LF.

6. Previous items 6-10 have been adequately addressed.

7. NYSDOH approval is required for water and sanitary systems.

8. NYSDEC SPEDES permit is required for sanitary systems.

9. Revised plans shall be submitted by the applicants engineer to the local fire department.

10. The Highway Superintendent should review the revised plans for the proposed driveway locations prior to approval; the driveways will need to be staked.

11. Previous items 15 and 16 have been adequately addressed.

12. Applicant provided a Stormwater Pollution Prevention Plan that demonstrates adherence to code 164-7, this should be a separate document from the site plan that is to be approved by the Planning Board and are under review by our office.

13. Provided drainage calculations on the sizing of the stormwater infrastructure and are under review.

14. Rain garden changed to bioretention and is under review.

15. Finalization of the SWPPP must also include SWPPP Acceptance Form for Town signature and submission of a completed eNOI. Prior to any land disturbance acknowledgement of SPDES Coverage by the NYSDEC shall be demonstrated to the Town has been forwarded.

233 East Main Street
Middletown, NY 10940
(845)344-5863



16. Escrow account required for inspections of public improvements.

17. Please revised the site plan pages of the plan to clarify the use of each building, the motel in particular should be labeled as "Sleeping Quarters".

18. Board comments.

Action:
Consider setting a public hearing.

Please advise if you have any questions.

Very truly yours,

Alfred A. Fusco, Jr., P.E.
Fusco Engineering &
Land Surveying, D.P.C.

Cc:    Town Clerk
       Building Department
       Michael Davidoff
       John Fuller, P.E. Alfred
       A. Fusco, Jr., P.E.
       Todd Maurizzio

Case 7:24-cv-08477-CS     Document 12-18     Filed 03/31/25     Page 1 of 1

# Steven Barshov
# SBarshovLaw PLLC

20 Lagoon Lane                                          917-886-4328
Haverstraw, New York 10927                   sb@sbarshovlaw.com

March 5, 2024

Town of Highland Planning Board
Town of Highland Zoning Board of Appeals
Town Hall
4 Proctor Road
Eldred, NY 12732

Re:     Yeshiva Ohr Shraga Veretzky; 211 Mail Road

Chair Fishman and ZBA Members,

Submitted along with this letter is a copy of the minutes of the Highland Planning Board of January 24, 2024.  At that meeting, the Planning Board referred the above-referenced application to the ZBA for an interpretation as to whether the use of the property would be religious.  I spoke with Mr. Mogel, and he has the same recollection as I do.  However, the Planning Board minutes make it appear as if the Applicant must file an application with the ZBA, which is not correct.

So, based on my conversation with Mr. Mogel and our common understanding that the Planning Board referred the application to the ZBA for an interpretation, please:

(1) place the matter on the next ZBA agenda based on the Planning Board's referral; and

(2) please correct the January 24, 2024 meeting minutes to confirm that the Planning Board referred the application to the ZBA for an interpretation.

Finally, attached for the convenience of the ZBA is Memorandum of Law addressing the religious use issue that was submitted to the Planning Board in April of 2023.

Yours truly,

*Steven Barshov*

Steven Barshov

cc:  Steven Mogel, Esq.

# STEVEN BARSHOV
# SBARSHOVLAW PLLC

**www.sbarshovlaw.com**

20 Lagoon Lane                                            917-886-4328
Haverstraw, NY 10927                          sb@sbarshovlaw.com

___

March 20, 2024

By email

Town of Highland Planning Board
Town of Highland Zoning Board of Appeals
Town Hall
4 Proctor Road
Eldred, NY 12732

Re:     Yeshiva Ohr Shraga Veretzky; 211 Mail Road

Planning Board and Zoning Board of Appeals Members,

Re-submitted with this letter is a copy of my letter of March 5, 2024. In that letter, I stated that the Planning Board minutes of January 24, 2024 were erroneous. At that meeting, the Planning Board referred the above-referenced application to the ZBA for an interpretation as to whether the use of the property would be religious. In that letter, I also stated that I had spoken with Mr. Mogel, counsel to the Planning Board, and he had the same recollection as I did. I further stated that the Planning Board January 24, 2024 minutes erroneously make it appear as if the Applicant must file an application with the ZBA.

Since March 5, 2024, I have received no communication from anyone at the Town, including Mr. Mogel, that any of the contents of the March 5, 2024 letter were incorrect or inaccurate in any way.

Based on the facts as stated in my March 5, 2024 letter, I communicated to the ZBA to have it place the matter on its agenda based on the Planning Board's referral. I also communicated to the Planning Board that its January 24, 2024 meeting minutes need to be corrected to confirm that the Planning Board referred the application to the ZBA for an interpretation.

This morning, I received a letter from Monica McGill in her capacity as ZBA Secretary. A copy is attached. In that letter, Ms. McGill states as follows:

> Upon review your client will need to submit an application requesting an interpretation of Use. You will then be placed on the April 16, 2024 agenda.

> All documents and paperwork will need to be submitted by April 5, 2024 along with the application payment of $150.00.

As quoted above, the ZBA has made it crystal clear that it will not place this matter on its April agenda unless the Applicant files an application "requesting an interpretation of Use." <u>My client will not be forced to file any such application with the ZBA.</u> My client will not be forced to create an administrative record that it is seeking a use interpretation when its position has consistently been that there is no ambiguity about its proposed religious use. That was the position clearly communicated to the Planning Board in the Memorandum of Law I submitted to the Planning Board just shy of 11 months ago, in April 2023.

Since the ZBA will not take up the use interpretation referral from the Planning Board, my client's application must be on the next Planning Board meeting agenda on March 27th. At that meeting, I will need to confirm that the Planning Board has corrected its January 24, 2024 meeting minutes. I will then also discuss with the Planning Board moving the pending application, including setting a public hearing.

Since my client's application will not be on any ZBA agenda, then, if my client's application is not on the Planning Board's March 27th agenda, it will be clear that my client's application is being unduly burdened in violation of RLUIPA. My client would prefer that its application be processed by the Planning Board at the upcoming meeting, and that it not be forced into Federal Court to seek redress under RLUIPA. The ball is now in the Planning Board's court. Please confirm that this application will be on the Planning Board's March 27th agenda.

Yours truly,

*Steven Barshov*

Steven Barshov

cc: Steven Mogel, Esq.

Case 7:24-cv-08477-CS     Document 12-20     Filed 03/31/25     Page 1 of 1

# STEVEN N. MOGEL
### ATTORNEY AT LAW
457 BROADWAY, SUITE 1
MONTICELLO, NY 12701
WWW.SULLIVANCOUNTYLAWYERS.COM
E-MAIL:SMOGEL@SULLIVANCOUNTYLAWYERS.COM

(845) 791-4303 (OFFICE)                    ADMITTED IN NEW YORK
(845) 791-4304 (OFFICE)                    FAX: (845) 796-3223
                                           (SERVICE BY FACSIMILE NOT ACCEPTED)

**BY ELECTRONIC MAIL ONLY:**

March 20, 2024

SBarshovLaw PLLC
20 Lagoon Lane
Haverstraw, NY 10927
**Attn: Steven Barshov, Esq.**

Re:     Yeshiva Ohr Shraga Veretzky
        211 Mail Road

Dear Mr. Barshov:

I am in receipt of your letter. As I stated to you quite plainly, the Planning Board referred this matter to the ZBA for an interpretation of use, the verbiage of the minutes and recent correspondence from the ZBA Chairman notwithstanding.

The record is, and shall be, clear. Your client is not requesting that this matter be put before the ZBA. Rather, your client was referred to the ZBA by the Planning Board. The ZBA will take up the Planning Board's referral at its April 16, 2024 meeting. You may submit whatever materials you deem appropriate in advance of that meeting by April 5, 2024.

Of course, your client is welcome to attend the Planning Board's March 27, 2024 meeting, as it is public. Your threats to bring suit in federal court notwithstanding, however, your client is not on the agenda and will not be heard at that time. Thank you.

Yours very truly,

STEVEN N. MOGEL
SNM/snm
Cc:     Town Board
        Planning Board
        Zoning Board of Appeals

• LITIGATION AND APPEALS • CORPORATE AND BUSINESS LAW
• PROBATE AND ADMINISTRATION PROCEEDINGS
• COMMERCIAL AND RESIDENTIAL REAL ESTATE
• TRUSTS AND WILLS • LAND USE AND DEVELOPMENT
• ZONING AND PLANNING • CRIMINAL DEFENSE

**[JA-165]**

Town of Highland
Zoning Board of Appeals
Meeting Minutes Tuesday, April 16, 2024

**Chairman states the minutes are being recorded with a new program Otter AI**

**Pledge of Allegiance**

**Attendance**
**Larry Fishman          Present on Zoom**
**Jim Donnelly           Absent**
**Gerald Finn            Present**
**Matthew Sallusto       Present**
**John Marciano Sr       Absent**
**Steven Solte           Present**
**Board Secretary        Helene Hoffmann**
**Town Attorney          Steven Mogul**
**                       Javid Afzali – Special Counsel for Steven Mogel (Morales Subdivision)**

Meeting opens at 6:00 PM

Chairman asks if there are any questions or comments regarding February 15, 2024 meeting minutes. No comments or questions.

Motion to accept February 15, 2024 meeting minutes as they are.
Motion: Gerald Finn                Second: Steve Solte
All in favor

**Correspondence:**
None

**Old Business:**
Chairman states there is no old business.

**New Business:**
**Application #1-2024 – Guillermo Morales Sub Division-**
**Section 11  Block 1  Lot 35.1**
**Represented by Caroline Akt – Requested Variance**
The applicant is requesting to sell electronic gate and lot.  Gate is 50' wide but should be 150' wide.  Lot is .7 acres but should be 2 acres.  Applicant is requesting subdivision.  Two of the requests meet the standards but one does not.  Applicant asked if new owner is going to maintain this and needs to be put in writing.  Applicant states that owner will maintain this and that a maintenance agreement is already in place.  Buyer owns all lots.  Applicant wants a subdivision.

1

Case 7:24-cv-08477-CS    Document 12-21    Filed 03/31/25    Page 2 of 3

Motion to schedule a public hearing on application #1-2024 (changed to #6-2024) on Tuesday, May 21st at 7:00 PM
Motion: Matthew Sallusto                    Second: Steve Solte
All in favor


**Application #2-2024 – Yeshiva Ohr Shraga Veretzy, 211 Mail Road**
Represented by Steven Barshov
Applicants were referred by planning board to explain their interpretation of use for the property. Applicant explains they are not there because they want to be, but they were asked to be here. States they are here because the planning board referred this matter to the zoning board and have asked for an interpretation as to whether the proposed use of this property is religious in nature and other intended uses.  The applicant states they have submitted a memorandum of law to the planning board and also to be forwarded to the zoning board the memorandum of law. The applicant states that the property is for religious use but made it clear that religious use is not defined by the zoning board or a town board. It's defined by the courts, not just with respect to Jewish religious views, but with respect to Christian, Muslim, Buddhist, whatever it is.  It's all defined the same way by the courts, religious education, prayer, you treat many other things for the number of religious views. It's a religious use because they have different religious purposes.  Applicant states that there have been many cases sited by the court.  Mr. Barshov stated that a memorandum of law was submitted to the planning board almost a year ago and they have come to ask for a public hearing.  They agreed to work with the board and share information regarding memorandum of law. Chairman asked that all information be submitted to the zoning board as well as cases sited to be submitted.

Motion to schedule a public hearing on application #2-2024 (changed to #7-2024) on Tuesday, May 21st at 7:15 PM
Motion: Steve Solte                    Second: Gerald Finn
All in favor.

**Application #3-2024 - Thomas and Ruth Henri**
**Section 23  Block 1  Lot 21.4**
Represented by Dave Preston – Section 23 Block 1 Lot 21.4 – Requested Variance
Applicant is asking for reduction of setbacks – 32 x 42 – 2 feet.  Property can be seen by the road. Applicant is asking to change from a 50' front setback and 30' side setback to a 23' front setback and a 20' side setback to build a garage.  When questioned why this is being requested, Dave Preston explained that the topography elsewhere on the property is not suited for this.  The location where they want to build the garage is a slab of a basketball court, the land is flat and has clear access to the house.  The zoning for this area is for 3 acres, so it is determined that it is a substandard lot at 1.9 acres.  Questions were asked from the board regarding surrounding properties.  Owner has agreed access to the property to anyone from the board who wants to view the property in person.

Motion to schedule a public hearing on application #2-2024 (changed to #7-2024) on Tuesday, May 21st at 7:30 PM
Motion: Gerald Finn                    Second: Steve Solte
All in favor.

Motion to close meeting at 6:31 PM

2

Transcribed by https://otter.ai

Motion: Steve Solte          Second: Matt Sallusto

Transcribed by https://otter.ai

Town of Highland
Zoning Board of Appeals
Meeting Minutes Tuesday, May 20, 2024

Meeting opens at 7:00 PM

Chairman states the minutes are being recorded.

Pledge of Allegiance

Attendance

| | | |
|---|---|---|
| | Larry Fishman | Present |
| | Gerard Finn | Present |
| | Steven Solte | Present |
| | George Billard | Present |
| | Joe Consiglio | Absent |
| Alternate | John Marciano Sr | Present |
| Alternate | Dawn Thompson | Present |
| Board Secretary | Helene Hoffmann | |
| Town Attorney | Steve Mogul | |

Motion to approve the meeting minutes from April 16. 2024 as they are.
Motion: Steve Solte                Second: John Marciano Sr.
All in favor - All Ayes

**New Business:**
Application #4-2024–Gjelosh & Lena Nikac – 5 Bodine Lake Road - Section 16.-4-22
Represented by Dave Preston
The applicant is requesting an area variance.  Mr. and Mrs. Nikac wish to put a garage on the side of their building.  They need to get an area variance for the rear of the lot.  The existing house is 40' from the rear property line and it requires a 10 foot easement on the back setback which is 50'.  It is an odd shaped lot which comes to almost a point at one end.  Pictures of this are in the packet provided.  Their house is very small and they need storage space.  Dave was asked by the board to clarify the easement and it was stated that yes he needs an area variance not an easement.  They want just the one setback in the rear yard from 50' to 40'.  The chairman asked if the board has any questions regarding the requested area variance.  Dawn asked if there was anything that would be impeding them and Dave Preston responded that the house was already within the setback and there was nothing to impede this.

Motion to schedule a public hearing on application #4-2024 for 7:15 PM on June 20. 2024.
Motion: John Marciano Sr                Second: Steve Solte
All in favor.  All Ayes

1

Transcribed by https://otter.ai

Case 7:24-cv-08477-CS    Document 12-22    Filed 03/31/25    Page 2 of 7

**Old Business:**

**Public Hearings:**

**Application #1-2024– Guillermo Morales Sub Division-Section 11  Block 1  Lot 35.1**
Presented by James Irwin

Attorney Steve Mogel states he has to recuse himself from this application.

Mr. Morales wants to take a portion of the rightaway that he owns and make a separate lot which is an undersized lot and he wants to transfer ownership to the resident in the back who uses the gate and the rightaway.  The chairman asks the board if they have any questions regarding this.  A question is posed if the lot will be attached and Mr. Irwin explains that he just wants to change ownership.  It is attached to Mr. Morales' lot.  It would be a separate parcel but the owner in the back would own part of the rightaway.  They want to subdivide it and make it into a substandard lot.  It would not be used for anything but to drive through it and is contained within the existing rightaway that is already there.

Motion to open public hearing
Motion: George Billard                        Second Gerard Finn
All in Favor. All Ayes

Chairman states the public hearing for Application #1-2024 is open.

The secretary reads the Public Hearing Notice that was published in the newspaper.
*Please note the meeting date and time has changed to Tuesday May 21st at 7:00PM in Town Hall, Eldred NY.*
  * *Please take notice that the Zoning Board of Appeals of the Town of Highland will hold a Public Hearing pursuant to Section 190 of the Town of Highland Code on the application #1-2024 of Guillermo Morales seeking the Subdivision of certain property identified as Town of Highland Section 11 Block 1 Lot 35.1.*
*Said hearing will be held on the 21st day of May 2024 at the Eldred Town Hall, 2 Proctor Road, Eldred, NY at 7:00 PM, at which time all interested parties will be given an opportunity to be heard.*

Secretary states that 18 letters went out and 1 was returned.  There was no correspondence received regarding this public hearing.

Motion to close Public Hearing on Application #1-2024.
Motion: Steve Solte                        Second: George Billard
All in Favor.  All Ayes

Chairman states that he has no problems with the requested variance.  It is not getting any closer to the property line than the house already is.  It is reiterated that the rightaway and maintenance of the gate is only switching to the new ownership.  The chairman asks Steve Mogul if he is going to write the determination for this.  Mr. Mogul explains he had to recuse himself from this application and will have Javid Afzali – Special Counsel for Steven Mogel write the determination.  The chairman states that he will make a motion to allow this with the assurance that nothing will ever be built on this lot, the lot will

2

Case 7:24-cv-08477-CS    Document 12-22    Filed 03/31/25    Page 3 of 7

be maintained for the thoroughfare by the new owner and there will never be a lock on that gate that will prevent the other owners from access to this road.

Motion to accept the variance
Motion: Steve Solte                          Second: George Billard
All in Favor.  All Ayes


**Application #3-2024 - Thomas and Ruth Henri  -Section 23  Block 1  Lot 21.4**
Represented by Dave Preston – Section 23 Block 1 Lot 21.4 – Requested Variance

Mr. Preston explains that there was a basketball court constructed when they first bought the house and now they would like to build a garage where the basketball court is currently.  They need a variance since they are asking for reduction of setbacks.  Applicant is asking to change from a 50' front setback and 30' side setback to a 23' front setback and a 20' side setback to build a garage.  When questioned why this is being requested, Dave Preston explained that the topography elsewhere on the property is not suited for this.  The location where they want to build the garage is a slab of a basketball court, the land is flat and has clear access to the house.

Motion to open public hearing
Motion: Gerard Finn                          Second John Marciano Sr
All in Favor. All Ayes


The secretary reads the Public Hearing Notice that was published in the newspaper.
*Please note the meeting date and time has changed to Tuesday May 21st at 7:00PM in Town Hall, Eldred NY.*
  • *Please take notice that the Zoning Board of Appeals of the Town of Highland will hold a Public Hearing pursuant to Section 190 of the Town of Highland Code on the application #1-2024 of Guillermo Morales seeking the Subdivision of certain property identified as Town of Highland Section 11 Block 1 Lot 35.1.*
*Said hearing will be held on the 21st day of May 2024 at the Eldred Town Hall, 2 Proctor Road, Eldred, NY at 7:00 PM, at which time all interested parties will be given an opportunity to be heard.*
Secretary states that 6 letters went out and 5 was returned.

Chairman asks if there is any correspondence.  Secretary states that two e mails were received and reads the correspondence.

The first e mail is from Mark Hook, executor of Mendes property and stated he had no issue with this request.
The second e mail was from Heather Jacksy and she has no objections to the garage but hopes that there is no proposed new outdoor lighting but she asks that if there is, that it adheres to dark skies best practice.  Dave Preston states that yes they will respect that code. Correspondence will be available with the minutes on the website.

Motion to close Public Hearing on Application #3-2024.
Motion: Steve John Marciano Sr                Second: Steve Solte

3

All in Favor. All Ayes

Chairman asks if there are any questions from the board.  There are none.  Chairman makes a motion to accept this variance.

Motion to accept the variance
Motion: Steve Solte                              Second: Gerard Finn
All in Favor.  All Ayes

**Application #2-2024 – Yeshiva Ohr Shraga Veretzy, 211 Mail Road –**
Represented by Steven Barshov -  To finalize their interpretation of use for the property.

Mr. Barshov is here to present the position of the property owner. He makes it clear this is not a typical application because they are not here to apply for anything. This is a referral from the planning board asking for an interpretation.  He states this request was a surprise because when they presented to the planning board, there was material submitted to the planning board by one of the town's consultants raising questions whether or not the uses that were proposed were in fact religious uses.  Mr. Barshov prepared a memorandum of law that was submitted to the planning board last year and this package was sent to the zoning board prior to this meeting.  Mr. Barshov is now front of the zoning board of appeals to give the facts and the law to explain the interpretation of the use of his property.  He reiterates that this is for Religious Use and states examples of this from other cases where there are many activities under this umbrella.  He states that they want to use this property in the summertime to come en masse to continue religious education that was taught during the year.  The rest of the year it would be used for religious retreats that would come up to the property and have whatever activities they need to provide during that time i.e. holiday, education, etc.  Chairman asks Mr. Barshov to define "Place of Worship".  Mr.  Barshov explains that a Place of Worship is a place that religious uses is undertaken and is a full complex of religious uses.  Chairman asks Mr. Barshov if this definition is in other court cases and Mr. Barshov states that he has cited these cases.  This is confirmed with Steve Mogul that we have these cases to review.  Mr. Mogul confirms that these cases does give these broad terms.   Chairman asks Mr. Barshov if this project will provide full time education which Mr. Barshov states that it will be full time during the summer.  Chairman asks if this education will follow with the New York State Education Law which Mr. Barshov states that it may or may not be following these laws. Chairman asks if the property will be used for kids and the families.   Mr. Barshov states that there are two categories here.  One is children whose parents are not there and are educated and they stay there and the second category are families with their children . While the children are being educated, there are things the parents will do with the rabbis.  Mr. Barshov is asked the age range of the kids and this is answered as there are different age groups.  Chairman asked if the Yeshiva owns the property yet which Mr. Barshov states he is not sure and will check if the deed has passed to the Yeshiva at this time  Mr. Barshov is asked by the board if there are other religious denominations that will use this property which Mr. Barshov states that probably not due to the Kosher kitchen and laws.  The board asked if children will be transported there during the day as a day camp and Mr. Barshov responds it will only be for the groups of people staying there.  The Town Attorney asked how this would distinguish from a summer camp that is just a camp and Mr. Barshov stated he submitted to Fallsburg that these are not camps, retreats or schools but are religious uses.  The board asked if these groups pay to come up here. Mr. Barshov stated that the groups will pay a fee to offset the expenses and the students and fees will pay something but is not sure of the details but will find out if we need to know.   The board

4

asked if anyone pays a fee to the town and Mr. Barshov stated that if there is a fee required I am sure they would pay.

Motion to open public hearing for application #2-2024
Motion: Gerard Finn                          Second John Marciano Sr.
All in Favor. All Ayes

The secretary reads the Public Hearing Notice that was published in the newspaper.

*Please note the meeting date and time has changed to Tuesday May 21st at 7:00PM in Town Hall, Eldred NY.*

  • *Please take notice that the Zoning Board of Appeals of the Town of Highland will hold a Public Hearing pursuant to Section 190 of the Town of Highland Code on the application #2-2024 of Yeshiva Ohr Shraga Veretzy, 211 Mail Road for an interpretation as to the proposed use of property identified as Town of Highland Section 15 Block 1 Lots 70.1 and 70.2.*

*Said hearing will be held on the 21st day of May 2024 at the Eldred Town Hall, 2 Proctor Road, Eldred, NY at 7:15 PM, at which time all interested parties will be given an opportunity to be heard.*

Secretary states that 29 letters went out and 15 was returned.

Correspondence – Secretary reads Correspondence from Linda Gunther Anderson opposing this application.  Correspondence will be available on the website with the minutes.

Steve Mogul reads a statement on rules that he would like followed for these public comments and asked to limit their questions to the issue of the interpretation of the use of the property and stated that that the zoning board will not tolerate any anti-semitism, racism, sexism or any other hateful comments and if this is violated, their time will be forfeited.

**Public Comments:**

Chere Krist – 793 State Route 55 – Mrs. Krist asks that if this town does not allow camps, why are we changing the use of the property from a hotel to a camp.  She does not feel that camps are good neighbors.  She wants to ensure the safety for pedestrians and health safety.

Joseph Krist – 793 State Route 55 – Mr. Krist – He comments that we as a town have questions that they have asked of an applicant who constantly reminds us that they have been dealing with this for a year and yet has not provided us with straightforward respectful answers to our questions.  He is also concerned about the traffic problems and risks for pedestrians as well as respect for their neighbors and traditions.  He feels they by not providing clear cut answers it is disrespectful to the board and the town.

5

Margaret Blaut – 131 Mail Road – Ms. Blaut concern is for traffic safety and feels that there is a risk to the people on Mail Road. She feels we cannot handle the increase in traffic.

Doreen Hanson – 17 Hansons Lane – Ms. Hanson states that back in 2014 another organization had an application to have students there up to 18 years old . The community came out and asked that this be voted down and it was voted down. This was not a religious group that requested this.

Trynka Stoyanova – 89 Beaver Brook Rd – Ms. Stoyanova asked how many students there will be. She is concerned what will be built. She talked about taxes and that other religious groups do pay taxes but the Yeshivas are exempt.

Shirlee Taylor – 128 Mail Road -Ms. Taylor is concerned about safety to a rural country road and the effect on the community.

Ruth Ellen LaRuffa– 200 Yulan-Eldred Road – She comments that this as a religious worship is new and will take time to get the parameters of what this will entail. She had looked up the Yeshiva website and she said that there was good information on the website but was concerned that there is a picture showing a proposed camp in Barryville and she will be investigating this further. The copy of this picture will be available on the website with the minutes.   She questions the number of dormitories and the number of people that will be there at one time.

Richard Neuberger – Richard states that he is not hearing a lot of information and wants to know the plan about the number of people and the maximum number of people that will be that at one given time. He also asked how many people will be using this as a permanent address and wants to know if they have a right to vote.  Steven Mogul stated that this is not a question to be answered by the town as to where people have a right to vote and is not for the town to decide.

Georgiana Neller – 188 State Route 21 – Ms. Neller shared her experiences that the prior owners pressured her to allow a road to be built through to Route 21.  She continued to say that she would like to keep the way of life that we have had and not to change.  She questioned how many people are there not only during the summer but year round.

Mr. Barshov addresses the matters that were brought up during the public hearing and stated that most of the comments will be addressed at the planning board.  He understands the frustration and asked that any questions, comments, etc. be sent to him via e mail.  He gave his e mail address – sb@sbarshov.com.

He addressed the issue of being good neighbors he would be happy to arrange a meeting between the people of the Yeshiva and the town and understands that the community would like to keep  the town as it is.  He stated that the kids coming up will be studying all day, staying at the property and will not be coming and going.  He stated he would be happy to answer all questions at the planning board and came to this meeting to address the interpretation of the use.  He agreed to give anyone the memorandums if they requested them.

The chairman then stated that since this is a complicated issue, we will address this issue over the next month, get as much information as possible, absorb the comments made today, though assured that these comments will not influence the board on what was addressed here.  The record will be left open

6

for the next two weeks and can submitted during that time period.  After two weeks, public comment will be closed.

We will address the matter at our next meeting, June 20, 2024.

Steven Mogul suggested and Mr. Barshov agreed that we can set up a chain of e mails for everyone to see questions and answers that may be asked.

Trynka Stoyanova then asked if there are multiple uses on the property, does that count as multiple primary uses of the property. Mr. Mogul states that Mr. Barshov has stated this is a Religious Retreat, that is the proposed use and that everything else falls under that general umbrella.

Motion to close the meeting:
Motion: John Marciano Sr                    Second: Steve Stolte
All in favor.  All Ayes

The meeting is closed at 8:15.

Transcribed by https://otter.ai

Town of Highland
Zoning Board of Appeals
Meeting Minutes Thursday June 20, 2024

Motion to open meeting: Steve Solte          Second: George Billard

Meeting opens at 7:10 PM

Chairman states the minutes are being recorded.

Pledge of Allegiance

The secretary takes attendance:
Attendance:

|  |  |  |
|---|---|---|
|  | Larry Fishman | Present |
|  | Gerard Finn | Absent |
|  | Steven Solte | Present |
|  | George Billard | Present |
|  | Joe Consiglio | Present |
| Alternate | John Marciano Sr | Present |
| Alternate | Dawn Thompson | Present |
| Board Secretary | Helene Hoffmann |  |
| Town Attorney | Steve Mogul |  |

Motion to approve the meeting minutes from May 21, 2024 as they are.
Motion: Steve Solte                Second: George Billard
All in favor - Ai

The chairman inquires if there is any new business.  The secretary responds that there is none.

**Public Hearing:**

**Application #4-2024–Gjelosh & Lena Nikac – 5 Bodine Lake Road  - Section 16.-4-22**
Represented by Dave Preston

Motion to open public hearing
Motion: Steve Solte                Second: George Billard
All in favor - Ai

Dave Preston explains that Mr. Nikac wants to build a storage garage on the side of his house on Bodine Lake Road.  The house is small and originally did have a garage but the floor of the garage was lower than the road so the grading was changed and filled it in and so now it is very small.  He now would like to build a garage for storage purposes.  The property is located in the Hamlet Commercial District.  The front and side setbacks conform to code but the rear setback needs an area variance

1

Case 7:24-cv-08477-CS    Document 12-23    Filed 03/31/25    Page 2 of 8

because it is only 40 feet from the property line and in the Hamlet Commercial District the setback is 50 feet.  The house is already 40 feet from the line.  The reason they would like to build it on that side of the house is because that is more the service side of the house and where the garage was.  The garage will be a single story structure, halfway in the ground and halfway out.  It is not going to stick out of the ground too much, will not be a large structure and will not be intrusive.  The chairman inquires that if the garage is built on the other side of the house, a variance will be needed for the rear setbacks also.  The chairman asks the board if they have any questions.  There are none.  The chairman then asks if there are any comments from the public.  Again, there are none.

- The public notice is read by the secretary.  *Please take notice that the Zoning Board of Appeals of the Town of Highland will hold a Public Hearing pursuant to Section 190 of the Town of Highland Code on the application #4-2024 of Gjelosh and Lena Nikac, 5 Bodine Lake Road, Yulan, for an area variance for the rear yard setback of 50' to a rear yard setback of 40' for property identified as Town of Highland Section 16 Block 4 Lot 22.  Said hearing will be held on the 20th day of June 2024 at the Eldred Town Hall, 2 Proctor Road, Eldred, NY at 7:00 PM, at which time all interested parties will be given an opportunity to be heard.*

Secretary states that 42 letters went out and 13 were sent back return mail.  There was no correspondence received regarding this public hearing.

Number of Letters Sent                          Number of Return Mail Received

Motion to close public hearing:
Motion: Steve Solte                    Second: George Billard

The  chairman inquires about determining if this is a Type 2 SEQAR.  Steven Mogul, the Town Attorney confirms that this is a Type 2 SEQAR.

Chairman makes a motion to allow this variance for Application #4-2024.  Mr. Mogul states that before making this motion, there are criteria set forth in the statute to review which is found on the Town Log 267D. before making a decision to approve or disapprove this variance.   He states that he likes to go through the criteria and take a vote on each point.  The attorney proceeds to read this document and then reviews the criteria and a vote is taken on each of the five criteria points.  A vote of no is made for the first four criteria points and a vote of yes on the last criteria.  The chairman then asks the board to vote.  A vote is then taken to grant the variance and all board members vote yes, all in favor of granting the variance.  The chairman lets Mr. Preston know that a resolution of the variance will be sent to him in a couple of days.

**Application #2-2024 – Yeshiva Ohr Shraga Veretzy, 211 Mail Road –**
Represented by Rabbi Sholom Landau  -  To finalize their interpretation of use for the property.

The chairman explains that the Rabbi had arranged a meet and greet a couple of weeks ago at the 211 Mail Road Property for community members and had given a presentation.  Both ZBA and Planning Board chairmen were in attendance.  The chairman had now asked the Rabbi to give that presentation today in front of the board and the public.  The Rabbi shows the architectural plans (plot plan) outlining

2

the layout of the facility.  He points out the plans for the dormitories and the Synagogue.  They want to construct two dormitory buildings, each one story.  In each dormitory there is a center area that will house students' luggage, equipment and other items so not to clutter the main dormitory area. There will be six rooms on each side and within each room there will be six beds with a short wall dividing the beds. With 6 rooms of 6 beds there would be 36 beds on each side housing 72 children in each dormitory. One dormitory would house 9th and 10th graders and the other would house 11th and 12th graders. There will also be an indoor recreational room to congregate if it is raining.  There will be washing machines, showers and whatever else is needed for dormitory living. **The chairman states that he was under the impression from the meet and greet presentation that they were totally open rooms but the Rabbi explains that this is not so.**

The Rabbi goes on to explain that he has several locations where they have their schools-in Brooklyn they have 3 facilities and in Lakewood New Jersey they have 2.  From those facilities, which is the high school, some students may come there.  This is the high school with the age range being 14-19, 9th to 12 grades. Brooklyn has an enrollment on an average of 24-26 students in a class and New Jersey has 28-30.  New Jersey runs school in July in New Jersey.  In August, a chunk of them do not want to go to camp.  They want to take the month off for August. He estimates that approximately 10-15 of those children would want to come up for this month.  The way the Brooklyn school is set up, they run 11 months also but 10 months are in the city and one is upstate.  For July, they must come up since it is considered part of their school year.  The parents would like their children in a structured setting, and they want their children to stay in camp or in school, whatever we want to call it, for the duration of the summer.  They are estimating approximately 36 children from each grade will be coming but it may be lower, though the Rabbi states it will not be more than 36.  So the maximum will be 144 high school students.  The board asks if it will only be the students, not the parents, and the Rabbi states it will only be the students and staff.  The chairman asks where the staff will be staying and the Rabbi states they will be housed in the existing location.  There are 20 rooms.  The staff comes up with their family so they will give them three rooms each so one room would be for the parents to sleep, one room for their children and a third to be used as sitting room.  There will be 8 staff members and include the custodian, lifeguard, nurse, EMT, some of the Rabbis stay there and some of the counselors look after them.  The chairman asks if there are any other questions regarding the info so far and a question is posed that they are planning to have a nurse and an EMT there and the Rabbi states that one of their teachers were trained as an EMT.  Steven Mogel, the ZBA attorney, reiterates what the Rabbi had said previously to confirm that one of the Yeshivas is required to be Upstate at school whereas the other Yeshiva in New Jersey does not need to be upstate going to school since New Jersey has them in school at their New Jersey Location and they may come up in August.  He states that one school would be up here in July and the other in August but there may be an overlap. It is the same umbrella organization but since it is different states, requirements are different.  Next, the Rabbi reviews the plan for the synagogue/study hall. There will be two wings – one is the Shul and the other wing is 4 classrooms, bathrooms, coffee room, teachers lounge and 2 offices.  The cafeteria will be in the basement. The Rabbi does want the design of the buildings to be esthetically appealing.  They are situating the dormitories in such a way that the staff members can watch them.  The cafeterias will be for the students also and the families would be eating on the other side.  The chairman asks to clarify "the families" and the Rabbi states these are the staff members and families which the Rabbi confirms. The chairman then asks if the parents come up at any time and the Rabbi states they may come up from time to time but insures that they will not be staying overnight.  The chairman asks if there are any other buildings to review and the Rabbi shows the plans for the Mikvah.  The Mikvah will be built on the other side of Mail Road, across the street from the facility.  The Mikvah will be used mostly for the staff

3

members.  Friday is the day it is used the most due to the Sabbath.  The Rabbi states it will mainly be used for an hour in the morning and then it is locked the rest of the day.  The chairman then asks what the facility will be used for the other ten months.  The Rabbi states they will use it a half dozen to a dozen weeks outside of July and August.  It has not been rented out in the coldest part of the winter.  They state that up to now they have had other organizations come up for retreats.  The chairman asks if they are the ultra orthodox and the Rabbi confirms that they are.  He goes on to state that their entire school comes up approximately two weekends over the course of 10 months.  Then they come up sporadically with individual classes.  The chairman asks the Rabbi if they will be renting it out to other organizations during the time they are not using it and the Rabbi does confirm that they will be using the facility as a weekend retreat to enhance education.  The chairman asks who oversees the property when the other organizations are there and the Rabbi states it has only been the custodian.  He says that the custodian has been with them for over 20 years.  The chairman asks if anyone from management has been there during this time and the Rabbi states that no management has been supervising the facility at the time other organizations are there.  The chairman asks how they will oversee the property once the dormitories are built and there is a larger amount of people coming at one time.  The Rabbi then states that there will then have to be someone from management there.  The board asks what number they consider the amount they would send management there to oversee the facility and the Rabbi states it would be necessary if the dormitories are filled up.  They had another Yeshiva rent it out last May but due now to the limited capacity of the rooms, they have not continued to rent it out for other facilities to educate their students.  So currently they are renting it to adults but that may change when they have the dormitories.  The Rabbi states he is not comfortable renting it out to other students that are not his students.  He does admit that he is not comfortable with other Yeshivas there but it will probably be done in the future.  The chairman asked if the Rabbi makes the ultimate decision and the Rabbi states that there is a board, administrators and himself that cohesively make that decision. The Rabbi then outlines their plans for the trash.  He states they designed a fully enclosed area. A 10-foot fence and doors in the front so the garbage trucks can back in and take it.  They will be using a local business for trash pick-up.  The chairman then goes on to tell the Rabbi that although the board thought they would be able to make a decision at today's meeting, he feels that they have gotten much more information and that they would like to review this additional info as well as having 62 days from the public hearing to make that decision.  The chairman makes a motion to the board to table it today and that they will give our interpretation at our next meeting on July 19, 2024.  One of the people from the town wanted to ask a question.  He was told that the public hearing was closed and he stated he did not know that.  The attorney explained that two additional weeks after the public hearing last month, comments, or questions could be reviewed.  The attorney does have an issue to reopen the public hearing but felt that the Rabbi may answer any questions during this time.  The attorney states that from a legal standpoint, until the board makes a decision, if someone wants to write into the board and asks questions, that the record is still open and inquiries from the town can be addressed.  The law states that when the public hearing is closed, the clock starts ticking for 62 days.  He states that it would be unfair to the applicant that if additional issues were raised now and the applicant would then have to address these issues.  The attorney does state that he has a problem taking additional public comments.  The town person goes on to say that he does not feel this is fair since we did not have a clear idea of what the project was and that we are not getting straight answers and getting different stories.  The attorney explains that it is not the zoning board's role to make decisions on the project, their role is to determine the interpretation of what the applicants would like to use the property for.  The attorney explains that there is a legal issue here but it is the zoning board who can decide if they want to reopen the public hearing.  The chairman then goes on to state that the town will have the opportunity to ask all their questions at the planning board meeting and it is not

4

Transcribed by https://otter.ai

something the Zoning Board will be addressing at all. The town person wants a clarification that this meeting was to determine whether the board agrees that this will be used for religious use. The attorney responds that the planning board referred this applicant to the zoning board for the determination of use. He states that since Mr. Barshov has argued that our town code allows places of worship that this use falls under that general umbrella of religious use. The board, nonetheless, will ultimately make the determination. It is confirmed that this will be done in July. The chairman explains to the town that they have one week if there is any other input the town would like to voice. Mr. Mogel asks that these inquiries be copied to Mr. Barshov since he had provided his e mail at the last meeting and stated that anyone from the town can e mail him any questions or concerns to give him the opportunity to respond to any e mails. Someone from the town asks about the correspondence and the secretary confirms that it is posted on the website for anyone to view. The rabbi then states that nothing has changed since it was presented a year ago but maybe was not explained well.

The chairman then asks if there are any other questions from the board. There were none.

Motion to close the meeting at 7:55 PM.

Motion: George Billard                                    Seconded:

Transcribed by https://otter.ai




211 Mail Rd.mikvha fl...



SCALE: 1/4" =1'-0"



1 FIRST FLOOR PLAN
SCALE 3/16"=1'-0"

PROPOSED RESIDENCE FOR:
**CATSKILL WOODS RESORT**
311 MAIL RD



**TOWN OF HIGHLAND**
**ZONING BOARD OF APPEALS (ZBA)**

INTERPRETATION

| | |
|---|---|
| Applicant(s): | Yeshiva Ohr Shraga Veretzky |
| Subject Property: | 211 Mail Road |
| | SBL 15-1-70.1 and 70.2 |
| Date: | July 18, 2024 |

*Statement of Facts*:

Applicant has a pending application for site plan approval and special use permit for operation of the Subject Property, currently approved for use as a "hotel," as a "summer religious educational retreat"[1] ("Project"). Said conversion would include the construction of two (2) single story 6,800 sq ft dormitories with 72 beds each, an 800 sq ft mikva, and a 9,000 sq ft multi-purpose building.[2]

Applicant first appeared before the Planning Board on March 22, 2023. In advance of this appearance, the Planning Board requested that the Laberge Group commence a "special use review," which was dated March 20, 2023 ("3/20/23 Laberge Review") and was submitted to the Planning Board. On January 24, 2024, the Planning Board voted to refer the Applicant to the ZBA for a determination of use.

Applicant first appeared before the ZBA on April 16, 2024 and a public hearing thereupon was had and concluded on May 21, 2024. At the public hearing, concern was raised by members of the community, both by in-person speakers and in correspondence submitted to the ZBA, as to many issues more properly within the purview of the Planning Board in its site plan/special use permit review, including traffic safety, garbage, acreage of the site, the number of people to be utilizing the property, noise, the illegal use of fireworks and the risk of fire, and the effect of the proposed use upon the surrounding rural community.

Some members of the public complained that the true anticipated usage of the Subject Property had been obfuscated by the Applicant. One member of the public noted that the proposed use was already being openly and publicly advertised by the Applicant as a "camp." The ZBA voted to close the public hearing, but keep the record open for a period of two (2) weeks for the submission of any further written comments. No further written

---

[1] Memorandum of Law dated April 27, 2023 ("4/27/03 Barshov MOL"), 1.
[2] See Site Plan by John D. Fuller, P.E., P.C. last revised January 11, 2024 (Drawing S-2; General Notes [6]).

Case 7:24-cv-08477-CS    Document 12-24    Filed 03/31/25    Page 2 of 5

FRIDAY, JULY 19, 2024
P A G E | 2

comments were received. The Applicant appeared again before the ZBA on June 20, 2024 to present more detailed plans for the Subject Property including, but not limited to, sketch plans of the proposed construction, and to answer additional inquiries from the ZBA and its counsel.

### *Analysis*

**The record demonstrates that the best and most accurate description of the proposed use of the Subject Property would be as a "children's camp" which use, whether religious or secular in nature, is explicitly prohibited in the Town of Highland.**

Children's camps are defined in the Code as follows:

> "**CAMP, CHILDREN'S**
> An establishment, either publicly or privately owned, complete with buildings, structures, sanitary facilities and ancillary services designated for the recreation and education of youth. The definition shall not include motels/hotels, campgrounds, or short-term rentals as defined herein."

Town of Highland Code ("Code"), §190-7.

Children's camps are, and have been for many years, explicitly prohibited in all zones throughout the Town, regardless of whether they are secular or religious in nature. *See Code at §190-41(H), Prohibited Uses in All Districts.*

The Applicant, through counsel, has taken care to describe use of the Subject Property as a "summer religious educational retreat,"[3] which is neither referenced or defined in the Code, stating:

> "In the summer months Hasidic young adults, children, and families will come to the [Subject Property] to study Torah, communicate and study with their Rabbi, deepen their religious faith, and connect on a religious level with others of their religious community."[4]

The Code at §190-12(B) provides, in relevant part:

---

[3] 4/27/23 Barshov MOL, 1.
[4] Memorandum of Law by Steven Barshov, Esq. dated November 17, 2023 ("11/17/23 Barshov Memo"), 1.

FRIDAY, JULY 19, 2024
PAGE | 3

> "Any use not listed specifically within the District Schedule of Use
> Regulations shall be considered a prohibited use in all districts under this
> chapter."

Applicant argues that, notwithstanding §190-12(B), the proposed use of the Subject
Property as a "summer religious educational retreat" must be permitted as same
constitutes a "place of worship," [5] which is permitted in all zones in the Town as a special
use under the Code.[6] Because "places of worship" are not defined in the Code, and the
Courts consistently require that a municipality be "more flexible" in seeking to
accommodate religious uses and expansive in defining what constitutes religious uses,
Applicant argues that the ZBA has no alternative but to define the proposed use as
Applicant urges.[7]

However, on June 20, 2024, Applicant made clear that the dormitories would house only
children between the ninth and twelfth grades, would only house them for the summer
months,[8] the Project would provide recreational and educational facilities for said
children, and that parents will not be permitted to stay on-site.[9]

The Project is clearly designed and intended for the "recreation and education of youth,"
i.e., a summer children's camp, after or near the conclusion of the official school year to
the exclusion of any other primary use. This logical conclusion is further bolstered by the
Applicant's identification on its own website of the Subject Property as "Mesivta Camp –
Barryville." https://ohrshraga.org/.[10]

---

[5] See, generally, 4/27/23 Barshov MOL, 5-14.

[6] Code at Chapter 190 Schedule 2.

[7] See, generally, 4/27/23 Barshov MOL, 5-14.

[8] Said dormitories are best described as housing for the summer children's camp, i.e., "bunks" and, as such,
should not be deemed a separate use upon the Subject Property, but rather as a necessary component of any
summer children's camp offering temporary lodging.

[9] This directly contradicts with Applicant's attorney's statement that "Some of the students that would be
given religious education at the Site are the children of the families that will reside on Site during the
summer months." 4/27/23 Barshov MOL, 4.

[10] It is worthy of note that the Applicant stated that the Subject Property would consist of the Yeshiva's
students from their Brooklyn and Lakewood New Jersey locations. Applicant stated that the Brooklyn
schools regard the month of July as part of the school year and the students are mandated to stay "upstate"
for that month. For these students at least, the Subject Property is their school for the month of July, not an
"religious retreat." In the R-2 zone in which the Subject Property sits, Educational Institutions are not
permitted. *District Schedule of Use Regulations, 190 Attachment 3.*

FRIDAY, JULY 19, 2024
PAGE | 4

**That the summer children's camp proposed upon the Subject Property caters exclusively to a religious community and includes structures and uses that are undoubtedly religious in nature does not mandate interpreting use in the manner urged by Applicant.**

The Project includes structures and uses that are undoubtedly religious in nature, such as the mikva, shul, and related uses, and said uses would be permitted upon the Subject Property as the primary use of the Subject Property or perhaps as accessory uses to a permissible and related primary use. It is clear, however, that the mikva, shul, and related uses are ancillary to the primary use of the Subject Property as a summer children's camp, which primary use is explicitly prohibited. The presence of such clearly religious structures and uses do not render the primary, explicitly prohibited use permissible.

None of the cases cited by Applicant require or even reference any finding or decision that a summer children's camp run by and catering to a religious group be defined, described, or encompassed within the definition of a "place of worship." To do so would be to render the definitions codified in the Code meaningless and allow a use (i.e., a children's camp) to all religious groups while simultaneously denying same to all non-religious groups.

**The accessory usage of the Subject Property during the non-summer months is moot as the primary use is prohibited.**

As set forth above, the record clearly shows that the Project is designed and was presented to the ZBA as a summer children's camp in all but name and the sporadic use of the Subject Property by either the campers/students or other groups for short periods of time over the remaining ten (10) months of the year may constitute accessory uses to the primary use of the Subject Property. As the primary use of the Subject Property is not permitted, whether these additional uses could be considered accessory uses to the primary use is moot.

Therefore, the ZBA makes the following findings regarding the interpretation sought:

*Findings*

(1) The proposed use of the Subject Property is most properly characterized as a "Children's Camp" under the Town of Highland Zoning Code;

(2) While the use of property as a "Children's Camp" is expressly prohibited in the Town of Highland, the final determination upon this application shall be made by the Planning Board;

FRIDAY, JULY 19, 2024
PAGE | 5

(3) Whether the other uses of the Subject Property during the remaining months of the year can be deemed proper accessory uses to a "Children's Camp," in the absence of a permissible primary use, is moot.

**Thereafter, the following interpretation was issued:**

**The proposed use of the Subject Property is most properly characterized as a "Children's Camp" under the Town of Highland Zoning Code. While the use of property as a "Children's Camp" is expressly prohibited in the Town of Highland, the final determination upon this application shall be made by the Planning Board. Whether the other uses of the Subject Property during the remaining months of the year can be deemed proper accessory uses to a "Children's Camp," in the absence of a permissible primary use, is moot.**

In FAVOR:

L. Fishman; G. Finn; S. Stolte; J. Consiglio; G. Billard

OPPOSED:

NONE

Motion is carried.

DATED:    July___18___, 2024
          Highland, NY


_____
Larry Fishman, Chairman
Town of Highland Zoning Board of Appeals



### TOWN OF HIGHLAND
### ZONING BOARD OF APPEALS (ZBA)

### INTERPRETATION

| | |
|---|---|
| Applicant(s): | Yeshiva Ohr Shraga Veretzky |
| Subject Property: | 211 Mail Road |
| | SBL 15-1-70.1 and 70.2 |
| Date: | July 18, 2024 |

*Statement of Facts*:

Applicant has a pending application for site plan approval and special use permit for operation of the Subject Property, currently approved for use as a "hotel," as a "summer religious educational retreat"[1] ("Project"). Said conversion would include the construction of two (2) single story 6,800 sq ft dormitories with 72 beds each, an 800 sq ft mikva, and a 9,000 sq ft multi-purpose building.[2]

Applicant first appeared before the Planning Board on March 22, 2023. In advance of this appearance, the Planning Board requested that the Laberge Group commence a "special use review," which was dated March 20, 2023 ("3/20/23 Laberge Review") and was submitted to the Planning Board. On January 24, 2024, the Planning Board voted to refer the Applicant to the ZBA for a determination of use.

Applicant first appeared before the ZBA on April 16, 2024 and a public hearing thereupon was had and concluded on May 21, 2024. At the public hearing, concern was raised by members of the community, both by in-person speakers and in correspondence submitted to the ZBA, as to many issues more properly within the purview of the Planning Board in its site plan/special use permit review, including traffic safety, garbage, acreage of the site, the number of people to be utilizing the property, noise, the illegal use of fireworks and the risk of fire, and the effect of the proposed use upon the surrounding rural community.

Some members of the public complained that the true anticipated usage of the Subject Property had been obfuscated by the Applicant. One member of the public noted that the proposed use was already being openly and publicly advertised by the Applicant as a "camp." The ZBA voted to close the public hearing, but keep the record open for a period of two (2) weeks for the submission of any further written comments. No further written

---

[1] Memorandum of Law dated April 27, 2023 ("4/27/03 Barshov MOL"), 1.
[2] See Site Plan by John D. Fuller, P.E., P.C. last revised January 11, 2024 (Drawing S-2; General Notes [6]).

FRIDAY, JULY 19, 2024
PAGE | 2

comments were received. The Applicant appeared again before the ZBA on June 20, 2024 to present more detailed plans for the Subject Property including, but not limited to, sketch plans of the proposed construction, and to answer additional inquiries from the ZBA and its counsel.

### *Analysis*

**The record demonstrates that the best and most accurate description of the proposed use of the Subject Property would be as a "children's camp" which use, whether religious or secular in nature, is explicitly prohibited in the Town of Highland.**

Children's camps are defined in the Code as follows:

> **"CAMP, CHILDREN'S**
> An establishment, either publicly or privately owned, complete with buildings, structures, sanitary facilities and ancillary services designated for the recreation and education of youth. The definition shall not include motels/hotels, campgrounds, or short-term rentals as defined herein."

Town of Highland Code ("Code"), §190-7.

Children's camps are, and have been for many years, explicitly prohibited in all zones throughout the Town, regardless of whether they are secular or religious in nature. *See Code at §190-41(H), Prohibited Uses in All Districts.*

The Applicant, through counsel, has taken care to describe use of the Subject Property as a "summer religious educational retreat,"[3] which is neither referenced or defined in the Code, stating:

> "In the summer months Hasidic young adults, children, and families will come to the [Subject Property] to study Torah, communicate and study with their Rabbi, deepen their religious faith, and connect on a religious level with others of their religious community."[4]

The Code at §190-12(B) provides, in relevant part:

---

[3] 4/27/23 Barshov MOL, 1.
[4] Memorandum of Law by Steven Barshov, Esq. dated November 17, 2023 ("11/17/23 Barshov Memo"), 1.

Case 7:24-cv-08477-CS    Document 12-25    Filed 03/31/25    Page 3 of 5

FRIDAY, JULY 19, 2024
PAGE | 3

> "Any use not listed specifically within the District Schedule of Use
> Regulations shall be considered a prohibited use in all districts under this
> chapter."

Applicant argues that, notwithstanding §190-12(B), the proposed use of the Subject
Property as a "summer religious educational retreat" must be permitted as same
constitutes a "place of worship,"[5] which is permitted in all zones in the Town as a special
use under the Code.[6] Because "places of worship" are not defined in the Code, and the
Courts consistently require that a municipality be "more flexible" in seeking to
accommodate religious uses and expansive in defining what constitutes religious uses,
Applicant argues that the ZBA has no alternative but to define the proposed use as
Applicant urges.[7]

However, on June 20, 2024, Applicant made clear that the dormitories would house only
children between the ninth and twelfth grades, would only house them for the summer
months,[8] the Project would provide recreational and educational facilities for said
children, and that parents will not be permitted to stay on-site.[9]

The Project is clearly designed and intended for the "recreation and education of youth,"
i.e., a summer children's camp, after or near the conclusion of the official school year to
the exclusion of any other primary use. This logical conclusion is further bolstered by the
Applicant's identification on its own website of the Subject Property as "Mesivta Camp –
Barryville." https://ohrshraga.org/.[10]

---

[5] See, generally, 4/27/23 Barshov MOL, 5-14.

[6] Code at Chapter 190 Schedule 2.

[7] See, generally, 4/27/23 Barshov MOL, 5-14.

[8] Said dormitories are best described as housing for the summer children's camp, i.e., "bunks" and, as such,
should not be deemed a separate use upon the Subject Property, but rather as a necessary component of any
summer children's camp offering temporary lodging.

[9] This directly contradicts with Applicant's attorney's statement that "Some of the students that would be
given religious education at the Site are the children of the families that will reside on Site during the
summer months." 4/27/23 Barshov MOL, 4.

[10] It is worthy of note that the Applicant stated that the Subject Property would consist of the Yeshiva's
students from their Brooklyn and Lakewood New Jersey locations. Applicant stated that the Brooklyn
schools regard the month of July as part of the school year and the students are mandated to stay "upstate"
for that month. For these students at least, the Subject Property is their school for the month of July, not an
"religious retreat." In the R-2 zone in which the Subject Property sits, Educational Institutions are not
permitted. *District Schedule of Use Regulations, 190 Attachment 3.*

FRIDAY, JULY 19, 2024
PAGE | 4

### That the summer children's camp proposed upon the Subject Property caters exclusively to a religious community and includes structures and uses that are undoubtedly religious in nature does not mandate interpreting use in the manner urged by Applicant.

The Project includes structures and uses that are undoubtedly religious in nature, such as the mikva, shul, and related uses, and said uses would be permitted upon the Subject Property as the primary use of the Subject Property or perhaps as accessory uses to a permissible and related primary use. It is clear, however, that the mikva, shul, and related uses are ancillary to the primary use of the Subject Property as a summer children's camp, which primary use is explicitly prohibited. The presence of such clearly religious structures and uses do not render the primary, explicitly prohibited use permissible.

None of the cases cited by Applicant require or even reference any finding or decision that a summer children's camp run by and catering to a religious group be defined, described, or encompassed within the definition of a "place of worship." To do so would be to render the definitions codified in the Code meaningless and allow a use (i.e., a children's camp) to all religious groups while simultaneously denying same to all non-religious groups.

### The accessory usage of the Subject Property during the non-summer months is moot as the primary use is prohibited.

As set forth above, the record clearly shows that the Project is designed and was presented to the ZBA as a summer children's camp in all but name and the sporadic use of the Subject Property by either the campers/students or other groups for short periods of time over the remaining ten (10) months of the year may constitute accessory uses to the primary use of the Subject Property. As the primary use of the Subject Property is not permitted, whether these additional uses could be considered accessory uses to the primary use is moot.

Therefore, the ZBA makes the following findings regarding the interpretation sought:

#### *Findings*

(1) The proposed use of the Subject Property is most properly characterized as a "Children's Camp" under the Town of Highland Zoning Code;

(2) While the use of property as a "Children's Camp" is expressly prohibited in the Town of Highland, the final determination upon this application shall be made by the Planning Board;

Case 7:24-cv-08477-CS    Document 12-25    Filed 03/31/25    Page 5 of 5

FRIDAY, JULY 19, 2024
PAGE | 5

(3) Whether the other uses of the Subject Property during the remaining months of the year can be deemed proper accessory uses to a "Children's Camp," in the absence of a permissible primary use, is moot.

**Thereafter, the following interpretation was issued:**

**The proposed use of the Subject Property is most properly characterized as a "Children's Camp" under the Town of Highland Zoning Code. While the use of property as a "Children's Camp" is expressly prohibited in the Town of Highland, the final determination upon this application shall be made by the Planning Board. Whether the other uses of the Subject Property during the remaining months of the year can be deemed proper accessory uses to a "Children's Camp," in the absence of a permissible primary use, is moot.**

In FAVOR:

L. Fishman; G. Finn; S. Stolte; J. Consiglio; G. Billard

OPPOSED:

NONE

Motion is carried.

DATED:    July  _18_ , 2024
          Highland, NY

_____
Larry Fishman, Chairman
Town of Highland Zoning Board of Appeals

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| YESHIVA OHR SHRAGA VERETZKY,<br><br>             Plaintiff,<br><br>       *v.*<br><br>TOWN OF HIGHLAND ZONING BOARD OF<br>APPEALS and TOWN OF HIGHLAND,<br><br>          Defendants. | 24 Civ. 8477 (CS) |

**STATEMENT OF INTEREST
OF THE UNITED STATES OF AMERICA**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2721

TOMOKO ONOZAWA
Assistant United States Attorney
—Of Counsel—

HARMEET K. DHILLON
Assistant Attorney General
MICHAEL E. GATES
Deputy Assistant Attorney General
CARRIE PAGNUCCO
Chief
Housing and Civil Enforcement Section
NOAH SACKS
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
Washington, D.C. 20530

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

INTEREST OF THE UNITED STATES ........................................................................... 2

BACKGROUND ................................................................................................................ 4

    A.   The Town of Highland Zoning Laws.............................................................. 4

    B.   The Yeshiva's Search for Property to Be Used for Religious Education ........................... 5

    C.   The Yeshiva's Special Use Permit Application Before the Planning Board ...................... 6

    D.   The ZBA's Interpretation of the Proposed Use of the Property ......................... 8

    E.   The Instant Action........................................................................................ 9

ARGUMENT—PLAINTIFFS' RLUIPA CLAIMS AGAINST DEFENDANTS
    ARE RIPE FOR ADJUDICATION ..................................................................... 10

    A.   Ripeness and Futility Principles in Land Use Litigation ................................. 11

    B.   The Yeshiva's RLUIPA Claims Are Ripe ......................................................... 12

    C.   The Yeshiva's RLUIPA Claims Are Ripe Because It Has Suffered Concrete Harm ....... 19

CONCLUSION.................................................................................................................. 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ateres Bais Yaakov Academy v. Town of Clarkstown,*
 88 F.4th 344 (2d Cir. 2023) ................................................................. 11

*Bais Brucha Inc. v. Township of Toms River,*
 Civil Action No. 21-3239, 2024 WL 863698 (D.N.J. Feb. 29, 2024) .................... 14, 15, 16, 20

*BMG Monroe I, LLC v. Vill. of Monroe,*
 No. 20 Civ. 1357 (NSR), 2022 WL 1094538 n.5 (S.D.N.Y. Apr. 12, 2022) ........................... 18

*BMG Monroe I, LLC v. Village of Monroe,*
 93 F.4th 595 (2d Cir. 2024) ....................................................................... passim

*Brooklyn Ctr. for Indep. of Disabled v. Bloomberg,*
 980 F. Supp. 2d 588 (S.D.N.Y. 2013) ...................................................................... 3

*BT Holdings, LLC v. Village of Chester,*
 15 Civ. 1986 (CS), 2016 WL 796866 (S.D.N.Y. Feb. 23, 2016) ....................................... 18, 19

*Cheng v. United States,*
 132 F.4th 655 (2d Cir. 2025) ................................................................................ 4

*Congregation Kollel, Inc. v. Township of Howell,*
 Civ. No. 16-2457, 2017 WL 637689 (D.N.J. Feb. 16, 2017) ................................. 13, 14, 16, 20

*Conley v. Town of Brookhaven Zoning Bd. of Appeals,*
 353 N.E.2d 594 (N.Y. 1976) ............................................................................ 16, 17

*Horne v. Dep't of Agric.,*
 569 U.S. 513 (2013) ........................................................................................ 4

*Khal Anshei Tallymawr, Inc. v. Township of Toms River,*
 Civ. No. 21-2716, 2021 WL 5757404 (D.N.J. Dec. 3, 2021) ................................. 14, 15, 16, 20

*Knick v. Township of Scott,*
 588 U.S. 180 (2019) ....................................................................................... 11

*Lost Lake Holdings LLC v. Town of Forestburgh,*
 22 Civ. 10656 (VB), 2025 WL 1899026 (S.D.N.Y. July 9, 2025) ........................................ 19

Case 7:24-cv-08477-CS     Document 19     Filed 07/29/25     Page 4 of 26

*Murphy v. New Milford Zoning Commission*,
402 F.3d 342 (2d Cir. 2005)................................................................ 11, 12, 18

*Pakdel v. San Francisco*,
594 U.S. 474 (2021)........................................................................... 11

*Palazzolo v. Rhode Island*,
533 U.S. 606 (2001)........................................................................... 12

*Sherman v. Town of Chester*,
752 F.3d 554 (2d Cir. 2014)............................................................... 4, 12

*Smith v. Town of Thompson Planning Board*,
223 N.Y.S.3d 356 (3d Dep't 2024)..................................................... 13

*Sunrise Detox V, LLC v. City of White Plains*,
769 F.3d 118 (2d Cir. 2014)............................................................... 12, 19

*Village Green at Sayville, LLC v. Town of Islip*,
43 F.4th 287 (2d Cir. 2022) .............................................................. 11, 12, 18, 19

*Williamson Community Regional Planning Commission v. Hamilton Bank*,
473 U.S. 172 (1985)........................................................................... 11

**Statutes**

28 U.S.C. § 517................................................................................... 1, 2

42 U.S.C. § 1983................................................................................. 10

42 U.S.C. § 2000cc ............................................................................ 1, 9, 10

N.Y. Town Law § 267 ......................................................................... 5, 16

N.Y. Town Law § 274-b ...................................................................... 4

**Other Authorities**

Exec. Order No. 14188 ....................................................................... 3

Case 7:24-cv-08477-CS   Document 19   Filed 07/29/25   Page 5 of 26

The United States, by its attorney Jay Clayton, United States Attorney for the Southern District of New York, and Harmeet K. Dhillon, the Assistant Attorney General for Civil Rights of the United States Department of Justice, respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517, to address the motion of defendants the Town of Highland Zoning Board of Appeals ("ZBA") and the Town of Highland (collectively, the "Town" or "Defendants") to dismiss the claims of plaintiff Yeshiva Ohr Shraga Veretzky ("Yeshiva" or "Plaintiff"), under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq.* ("RLUIPA"), and other land use claims as unripe and therefore nonjusticiable.

### PRELIMINARY STATEMENT

Congress enacted RLUIPA to combat a widespread pattern of religious discrimination in local land use decisions. RLUIPA prohibits state or local governments from, *inter alia*, imposing or implementing a land use regulation in a manner that imposes a substantial burden on religious exercise; implementing land use regulations "in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution"; and "unreasonably limit[ing] religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(a)(1), (b)(1), (b)(3)(B).

From February 2023 through March 2024, the Yeshiva sought a special use permit to use its property as a "place of worship" from the Town Planning Board. In written letters, detailed site plans, legal memoranda, and seven public meetings, the Yeshiva consistently and continuously stated to the Planning Board that the property would be used for religious education in the summer months and as a religious retreat during the rest of the year. Notwithstanding the Yeshiva's clear and consistent statements about the intended use of its property, the Planning Board referred the Yeshiva's special permit application to the ZBA for an interpretation as to

whether the use of the property would be religious. Over two more months, the Yeshiva continued to represent that the property would be used for religious purposes in letters to the ZBA and in three ZBA public meetings. In July 2024, the ZBA issued a final interpretation declaring that the Property was to be used as a "children's camp," a prohibited use throughout the Town. The ZBA's final decision ended the Yeshiva's ability to obtain a special use permit to operate its religious facility anywhere in the Town.

The Yeshiva has filed an Amended Complaint against Defendants, asserting claims under RLUIPA, the First and Fourteenth Amendments to the Constitution, and parallel state constitutional law claims. Defendants have moved to dismiss the Yeshiva's Amended Complaint, arguing, among other things, that this is "a premature case, where a land developer jumps the gun and starts litigation before giving a municipality a chance to make a final determination on a project." Mem. of Law in Support of Defs.' Mot. to Dismiss Pl.'s Am. Complaint, dated May 29, 2025 ("Defs.' Br.") at 1. The United States respectfully submits this Statement of Interest to address the application of ripeness principles to the Yeshiva's RLUIPA claims, and in particular, respectfully submits that those claims are ripe for adjudication before this Court. The United States expresses no view on the merits of the Yeshiva's RLUIPA claims, nor on any legal question presented other than this issue.

## INTEREST OF THE UNITED STATES

The United States' authority to file this Statement of Interest stems from 28 U.S.C. § 517, which provides:

> The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.

*Id.* Defendants' motion raises a significant question regarding the application of prudential

2

ripeness to RLUIPA claims. The United States frequently files Statements of Interest in cases concerning the applicability and interpretation of federal law in which it has enforcement interests. *See, e.g., Garrett v. City Univ. of New York*, 24 Civ. 9710 (VSB), ECF No. 28 (S.D.N.Y. May 12, 2025) (statement of interest filed in Title VII challenge alleging that university employer created a hostile work environment based on plaintiff's religious identity); *Lost Lake Holdings LLC v. Town of Forestburgh*, 22 Civ. 10656 (VB), ECF No. 181 (S.D.N.Y. Mar. 7, 2025) (statement of interest filed in Fair Housing Act challenge alleging that town discriminatorily obstructed and delayed construction of housing development); *Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 641 n.9 (S.D.N.Y. 2013) (noting statement of interest filed in Americans with Disabilities Act challenge to municipal emergency planning procedures).

The United States is responsible for enforcing RLUIPA and accordingly has an interest in the interpretation of the statute. *See, e.g., United States v. Village of Airmont*, 20 Civ. 10121 (NSR) (AEK) (RLUIPA Consent Decree entered October 20, 2023); *United States v. Village of Suffern*, 06 Civ. 7713 (WWE) (RLUIPA Consent Decree entered June 16, 2010); *United States v. Village of Airmont*, 05 Civ. 5520 (LAK) (RLUIPA and Fair Housing Act Consent Decree entered May 9, 2011). The United States further has an enforcement interest arising from the President's January 29, 2025 Executive Order on Combating Anti-Semitism, Section 2 of which provides: "It shall be the policy of the United States to combat anti-Semitism vigorously, using all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of unlawful anti-Semitic harassment and violence." Exec. Order No. 14188, 90 Fed. Reg. 8847 (Jan. 29, 2025).

Case 7:24-cv-08477-CS   Document 19   Filed 07/29/25   Page 8 of 26

## BACKGROUND[1]

### A.   The Town of Highland Zoning Laws

Chapter 190 of the Town's municipal code ("Town Code") regulates land use. ECF No.

12 ("Am. Compl.") ¶ 19; *see* Town Code, Chapter 190, *available at*

https://ecode360.com/13926123. The Town Code divides the Town into five zoning districts. *Id.*

§ 190-8. The Yeshiva-owned property at issue in this case is within the Town's Agricultural

Residential R-2 Zoning District. Am. Compl. ¶ 20.

The Town Code restricts certain types of land use within each zoning district, and

indicates on a "District Schedule of Use Regulations" which land uses in each zone are

categorized as a "permitted use" and which uses require a "special use permit." Town Code,

§ 190-12(A); Am. Compl. Ex. A. A "special use permit" is defined as "an authorization of a

particular land use which is permitted in a zoning ordinance or local law," subject to

requirements imposed by local zoning laws to ensure that the proposed use is "in harmony with"

those laws and "will not adversely affect the neighborhood." N.Y. Town Law § 274-b(1). As

relevant here, a property owner who seeks to use a property as "a place of worship" (which is

undefined under the Town Code) in any of the Town's zoning districts much first obtain a

special use permit. Am. Compl. ¶¶ 20, 21 & Ex. A. On the other hand, if a land use is *not* listed

in the District Schedule of Use Regulations, it is a "prohibited use" in all zoning districts. Town

---

[1]This Statement of Interest assumes the truth of the allegations in the Amended
Complaint, as required at the motion to dismiss stage. *Cheng v. United States*, 132 F.4th 655, 658
(2d Cir. 2025); *see also Sherman v. Town of Chester*, 752 F.3d 554, 560 (2d Cir. 2014) (applying
Rule 12(b)(6) standard to determine whether land use claims were prudentially ripe under
*Williamson County*). Contrary to Defendants' claims, prudential ripeness is a not a function of
the Court's subject matter jurisdiction and is therefore not subject to Rule 12(b)(1). *See BMG
Monroe I, LLC v. Village of Monroe*, 93 F.4th 595, 600 (2d Cir. 2024) ("*Williamson County*'s
prudential-ripeness doctrine 'is not, strictly speaking, jurisdictional.'") (quoting *Horne v. Dep't
of Agric.*, 569 U.S. 513, 526 (2013)).

Code § 190-12(B). For example, a "children's camp" is an unlisted use and is therefore a prohibited use in all of the Town's zoning districts. *Id.* §§ 190-12, 190-41(H). A property owner seeking to use a property for a prohibited use must obtain a "use variance" from the ZBA, which is "the authorization by the zoning board of appeals for the use of land for a purpose which is otherwise not allowed or is prohibited by the applicable zoning regulations." N.Y. Town Law § 267(1)(a).

The Town of Highland Planning Board ("Planning Board") is a five-member board appointed by the Town Board and is authorized to issue special use permits. Town Code §§ 190-67, 190-73(A)–(D). The ZBA is a separate five-member board appointed by the Town Board and, as relevant here, has the authority to issue variances, *id.* §§ 190-64, 190-65(A), 190-66(B), and to issue "interpretations" upon a request or referral by the Planning Board, the Town Board, or the Town Code Enforcement Officer to decide "any question involving the interpretation of any provision of [Chapter 190 of the Town Code]." *Id.* §§ 190-65(B), 190-66(A), (C).

## B.    The Yeshiva's Search for Property to Be Used for Religious Education

The Yeshiva is a New York State religious corporation which has religious schools and related facilities in Brooklyn, New York, and Lakewood, New Jersey. Am. Compl. ¶¶ 8. 14. To provide spaces for its rabbis and students to continue their religious education during the summer, the Yeshiva has leased facilities in Sullivan County for several years. *Id.* ¶ 14. At some point, the Yeshiva initiated a search for real property that could be used for religious education of its students during the summer and as a religious retreat during other months of the year. *Id.* ¶ 16. The Yeshiva learned of a 40.2-acre site located at 211 Mail Road, Barryville, New York, in Sullivan County (the "Property"), which previously operated as a commercial hotel under a special use permit granted by the Planning Board. *Id.* ¶ 17; *see also* Ex. B at 6, Ex. C. In February 2023, while the Property was still under prior ownership, the Yeshiva filed a

preliminary application with the Planning Board to obtain a special use permit for the Property as a place of worship. *Id.* ¶¶ 2, 16–18. The Yeshiva closed on the sale of the Property in November 2023. *Id.* ¶ 51.

**C.     The Yeshiva's Special Use Permit Application Before the Planning Board**

The Yeshiva's February 2023 special use permit application sought to adapt the Property's existing buildings and to construct four new single-story buildings for its proposed use to provide religious education in the summer and to serve as a religious retreat during other times in the year. Am. Compl. ¶¶ 23–24 & Exs. B–C. The Yeshiva contemplated that rabbis, teenagers, and young adults from the Yeshiva's Brooklyn and New Jersey facilities would reside at the Property to engage in religious studies. *Id.* ¶¶ 25–26. Regular activities would include studying the Talmud (the body of Jewish religious teaching and commentary), learning with rabbis, and prayer. *Id.* ¶¶ 24–28, 33, 113.

Minutes of Planning Board meetings in March 2023, June 2023, August 2023, and October 2023 indicate that representatives of the Yeshiva repeatedly stated that the Property would be used for religious purposes. *Id.* ¶¶ 36, 40, 43, 47; Ex. D at 3; Ex. F, at 2–3; Ex. G, at 2–3; Ex. H, at 2. Written letters, memoranda, and comments to the Planning Board submitted both by the Yeshiva and the Town Engineer affirmed their mutual understanding that the Property was to be used for religious educational use. *Id.* ¶¶ 38–39, 40–41, 43, 46; Exs. E–H.

On November 17, 2023, counsel for the Yeshiva submitted to the Planning Board a memorandum which again affirmed that it was seeking approval to use the Property as a religious educational retreat throughout the year, including the summer months. *Id.* ¶¶ 50, 52 & Ex. I. The Yeshiva's engineer submitted additional application materials which responded to multiple technical comments from the Town Engineer. *Id.* ¶¶ 53–54 & Exs. J–K. The Yeshiva's November 2023 submissions to the Planning Board, in addition to its prior submissions,

constituted a complete special use permit application. *Id.* ¶ 55. Because the Town Engineer had not expressed a view on the Yeshiva's November 2023 submissions as of the Planning Board's November 29, 2023 meeting, the Planning Board's consideration of the Yeshiva's special permit use application was adjourned to its next meeting on December 20, 2023. *Id.* ¶ 56.

According to the minutes of the December 20, 2023 Planning Board meeting, the Board deemed a technical study submitted by the Yeshiva to be "not acceptable" and indicated that a State Environmental Quality Review Act ("SEQRA") filing had not been made. *Id.* Ex. M. The Yeshiva alleges that the meeting minutes do not accurately reflect that, in addition to the discussion noted above, at least one Planning Board member "expressed hostility" about the Yeshiva to the Town Engineer, and one member "accus[ed] its Rabbi . . . of being prejudiced." *Id.* ¶ 60.

The Planning Board rescheduled the hearing on the special use permit application to January 24, 2024. *Id.* Ex. M. Before the next Planning Board meeting, and in response to reports that Planning Board members "questioned whether the application was for a religious use," counsel for the Yeshiva submitted a letter to the Board on January 12, 2024, which affirmed that the special use permit application for the Property was, in fact, for a religious use. *Id.* ¶¶ 66–68 & Ex. P.

Counsel for the Yeshiva appeared before the Planning Board on January 24, 2024, and restated that the proposed use of the Property would be for a religious educational use during the summer months, and as a religious retreat for the remainder of the year. *Id.* ¶ 72. According to the Yeshiva, however, the Planning Board minutes incorrectly state that the special use permit application "has not stated specifically the use intended." *Id.* ¶ 73 & Ex. Q. At this meeting, the Planning Board's counsel proposed that the Board refer the Yeshiva's application to the ZBA to

7

determine whether the proposed use of the Property was religious. *Id.* ¶ 74 & Ex. Q. The Planning Board approved the proposal, which the Yeshiva contends was "obviously prearranged" because there was no "virtually no discussion" before the proposal was approved. *Id.* The Yeshiva further asserts that, even though the Planning Board voted to refer the property use question to the ZBA, the meeting minutes inaccurately state that the Yeshiva was free to apply to the ZBA for a hearing if the Planning Board could not determine the proposed use of the Property. *Id.* ¶ 75 & Ex. Q. After counsel for the Yeshiva sent two letters asking the ZBA to accept the Planning Board's referral without further delay, *id.* ¶¶ 76–77 & Exs. R–S, the Planning Board finally confirmed on March 20, 2024 that it had referred the use-interpretation question to the ZBA. *Id.* ¶ 79 & Ex. T.

**D.    The ZBA's Interpretation of the Proposed Use of the Property**

At an April 16, 2024 meeting of the ZBA, the Yeshiva's counsel reiterated the assertions made in his past submissions to the Planning Board that, under applicable case law, its proposed summer religious educational use met the criteria for "religious use." *Id.* ¶ 80 & Ex. U.

The ZBA then held a public hearing on the Yeshiva's application on May 20, 2024. *Id.* ¶¶ 80–81 & Exs. U, V. According to the Yeshiva, counsel for the ZBA asked how the Yeshiva's proposed use of the Property during the summer months could be distinguished from a summer camp. *Id.* ¶ 83. The Yeshiva informed the ZBA that the Property's proposed use was for religious education, and the fact that students would stay at the Property during the summer for that education was not dispositive of the proposed-use question. *Id.* During the public comment portion of the hearing, several commenters expressed concerns about increased traffic at the Property, possible impacts on pedestrians, and the number of people who would be at the Property at any given time, but none of the comments addressed whether the Property's proposed use was religious in nature. *Id.* ¶ 84 & Ex. V. There was also a "vocal group" "who used the

public hearing as an opportunity to speak out forcefully against the Yeshiva receiving a special use permit from the Planning Board." *Id.*

At a third ZBA meeting on June 20, 2024, the Yeshiva discussed in detail the Property's planned configuration for religious study, described the groups of students from the Yeshiva who would come to the Property during the summer and when they would be on site, and described the number of staff who would be at the Property. *Id.* ¶¶ 86–87 & Ex. W. The ZBA did not discuss how it would respond to the Planning Board's request for an interpretation of the proposed use of the Property. *Id.* ¶ 88.

At a fourth meeting on July 18, 2024, the chairperson of the ZBA read aloud a written document with the heading, "Interpretation." *Id.* ¶ 89 & Ex. X. The Interpretation was unanimously approved by all five members of the ZBA, and stated:

> The proposed use of the Subject Property is most properly characterized as a 'Children's Camp' under the Town of Highland Zoning Code. While the use of property as a 'Children's Camp' is expressly prohibited in the Town of Highland, the final determination upon this application shall be made by the Planning Board. Whether the other uses of the Subject Property during the remaining months of the year can be deemed proper accessory uses to a 'Children's Camp,' in the absence of a permissible primary use, is moot.

*Id.* Ex. X at 4–5.

## E.    The Instant Action

The Yeshiva filed this action against Defendants in November 2024 (ECF No. 1), and amended its complaint in March 2025 (ECF No. 12). In Count I of its Amended Complaint, the Yeshiva asserts an RLUIPA claim on the following three theories: (1) Defendants' interpretation of the Zoning Code and of the uses permitted as a "place of worship" imposed a substantial burden on the Yeshiva, 42 U.S.C. § 2000cc(a)(1); (2) Defendants' interpretation imposed or implemented "a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution," *id.* § 2000cc(b)(1); and

9

(3) Defendants' interpretation deprived the Yeshiva of its right to the free exercise of religion, by imposing or implementing a land use regulation that "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction," *id*. § 2000cc(b)(3)(B). Am. Compl. ¶¶ 98–120. The remaining counts of the Amended Complaint assert that Defendants deprived the Yeshiva of its rights under the First and Fourteenth Amendments of the Constitution in violation of 42 U.S.C. § 1983, *id*. ¶¶ 121–133, and allege parallel claims under the New York State Constitution. *Id*. ¶¶ 134–151. Defendants moved to dismiss the Amended Complaint, maintaining *inter alia* that the Yeshiva's claims are unripe because it failed to first obtain a "final decision" on its proposed use of the Property before filing suit. Defs.' Br. at 8–11.

## ARGUMENT

### PLAINTIFFS' RLUIPA CLAIMS AGAINST DEFENDANTS ARE RIPE FOR ADJUDICATION

The Yeshiva's RLUIPA claims are ripe for review because local law grants the ZBA exclusive jurisdiction to consider referrals from the Planning Board to interpret whether the use of a property conforms to the uses allowed by local law. Here, the ZBA clearly exercised that authority and (inaccurately) determined that the Property was to be used as a "children's camp," a use that is prohibited by the Town of Highland's zoning code. The Planning Board is bound by the ZBA's determination that the Yeshiva's proposed use was for a children's camp, a prohibited use, and therefore cannot grant a special use permit to the Yeshiva. A use variance application would not allow the ZBA to re-consider its interpretation and would not further develop an already developed record of the facts and circumstances supporting the Yeshiva's position that its use of the property qualifies as a place of worship. The Court should reject Defendants' exhaustion argument, which would only delay the proceedings and improperly force the Yeshiva

to seek a variance upon the false premise that it is seeking to use the Property as a "children's camp," when in fact it seeks to use the Property for religious education.

## A.    Ripeness and Futility Principles in Land Use Litigation

The Yeshiva's land use claims are prudentially ripe because Defendants have reached a final decision on the use of the Property. Under *Williamson Community Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186 (1985), *overruled in part on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019), a land use claim is ripe when "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" that "inflict[s] an actual, concrete injury." *Village Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 294, 298 (2d Cir. 2022) (quoting *Williamson County*, 473 U.S. at 186, 193). The "finality" requirement ordinarily requires plaintiffs to "submit[] at least one meaningful application to the relevant municipal entity." *Village Green*, 43 F.4th at 296 (quoting *Murphy v. New Milford Zoning Commission*, 402 F.3d 342, 348 (2d Cir. 2005)). The purpose of the finality doctrine is "to avoid entangling [the Court] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Id.* at 293 (citation omitted). As the Second Circuit has made clear, "the finality requirement is relatively modest," and "nothing more than *de facto* finality is necessary." *Ateres Bais Yaakov Academy v. Town of Clarkstown*, 88 F.4th 344, 351 (2d Cir. 2023) (quoting *Pakdel v. San Francisco*, 594 U.S. 474, 479 (2021)).

In *BMG Monroe I, LLC v. Village of Monroe* ("*BMG Monroe*"), 93 F.4th 595 (2d Cir. 2024), the Second Circuit affirmed the "futility exception," explaining that "a property owner is excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile"—"for example, when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied."

11

*Id.* at 601 (cleaned up) (quoting *Murphy*, 402 F.3d at 349). The determination as to whether a jurisdiction has "dug in its heels," moreover, cautions against the view that the finality requirement is to be "mechanically applied." *Murphy*, 402 F.3d at 349. "Additionally, 'government authorities . . . may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision.'" *Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014) (cleaned up) (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 621 (2001)). A "plaintiff alleging discrimination in the context of a land-use dispute is not subject to the final-decision requirement" if "he can show that he suffered some injury independent of the challenged land-use decision." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014). Thus, "a plaintiff need not await a final decision to challenge . . . the manipulation of a zoning process out of discriminatory animus to avoid a final decision." *Id.* (quotation marks omitted)).

**B.    The Yeshiva's RLUIPA Claims Are Ripe**

1.    <u>The ZBA's Decision Was Final</u>

For ripeness purposes, "[t]he municipal entity responsible for the relevant zoning laws must also have an opportunity to commit to a position." *Village Green*, 43 F.4th at 297. This matter is ripe for review because the ZBA unanimously committed to a position that "[t]he proposed use of the Subject Property is most properly characterized as a 'Children's Camp' under the Town of Highland Zoning Code," which "is expressly prohibited in the Town of Highland." Am. Compl. Ex. X. Requiring the Yeshiva to complete the special use permit application process and obtain a "final determination" before the Planning Board, as Defendants assert (Defs.' Br. at 11), is irreconcilable with the scope of the Planning Board and the ZBA's authority under Town law. Once the ZBA determined that the Property's proposed use was a prohibited use in all Town zones, Town Code §§ 190-12, 190-41(H), the Planning Board had no

12

authority to grant a special use permit for the Yeshiva to operate a children's camp in the Town. Am. Compl. Ex. A. Under Town law, the ZBA has the sole authority to adjudicate questions of interpretation relating to the proposed use of a property under the Town Code. Town Code §§ 190-65(B), 190-66(A), (C). Planning boards "are without power to interpret the local zoning law, as that power is vested exclusively in local code enforcement officials and the zoning board of appeals." *Smith v. Town of Thompson Planning Board*, 223 N.Y.S.3d 356, 359 (3d Dep't 2024) (quotation marks omitted).

Three federal district courts have reached the same ripeness conclusion in similar cases considering ZBA interpretations of proposed uses. First, in *Congregation Kollel, Inc. v. Township of Howell*, Civ. No. 16-2457, 2017 WL 637689 (D.N.J. Feb. 16, 2017), plaintiffs wanted to build a Jewish educational facility in a New Jersey township. *Id.* at *1–2. The property was located in a zone which permitted "educational facilities" as of right. *Id.* at *2. Plaintiffs proposed to build a classroom building where Jewish studies would be conducted, a dormitory building, and seven attached townhouses for faculty housing, and sought to have the educational and housing structures be deemed a permitted use as a combined "educational facility." *Id.* at *2–3. The township's director of land use denied the application and determined that, while the non-residential component of the project was permitted, the student and faculty housing were not, and stated that plaintiffs had to apply for a variance before the township's Board of Adjustment. *Id.* at *3. The Board upheld the decision on appeal and agreed with the director's interpretation of the property's proposed use. *Id.* at *4. Plaintiffs then brought RLUIPA claims (among others) in federal court; the defendants moved to dismiss, contending that the suit was not ripe because plaintiffs had not sought a variance. *Id.* at *1. The district court disagreed and

13

held that plaintiffs' claims were ripe because the Board had "rendered a definitive decision that Plaintiffs' proposed use of an 'Educational Facility' is not a permitted use." *Id.* at *10.

Second, in *Khal Anshei Tallymawr, Inc. v. Township of Toms River*, Civ. No. 21-2716, 2021 WL 5757404 (D.N.J. Dec. 3, 2021), plaintiff sought to build a shul (a small synagogue) for its congregants in a New Jersey township. *Id.* at *2. Changes to the township's zoning code, however, removed "churches and places of worship" as a conditional use from several zones, including the zone where plaintiff's property was located. *Id.* Plaintiff applied for a zoning permit to build a shul and to have it deemed as a "permitted conditional use" in the zoning district. *Id.* The zoning officer denied the application on the ground that the shul was not a permitted use, and the township's Zoning Board of Adjustment upheld the denial. *Id.* at *3. Plaintiff then filed suit in federal court, asserting RLUIPA, constitutional, and state law challenges to the township's zoning regulations. *Id.* at *3. Although defendants moved to dismiss on ripeness grounds because plaintiff had not sought a variance, the district court disagreed. *Id.* at *1, 7. The district court held that "the factual record does not need additional development," and "[b]ecause the Board already found the proposed use was prohibited in the proposed zone, this is not a case where a variance application would have clarified the record." *Id.* at *7.

Finally, in *Bais Brucha Inc. v. Township of Toms River*, Civil Action No. 21-3239, 2024 WL 863698 (D.N.J. Feb. 29, 2024), another set of plaintiffs purchased a property in the same New Jersey township to build a shul and encountered the same prohibition against "churches and places of worship" as a conditional use. *Id.* at *1–2. After the plaintiffs' zoning application was denied on the ground that the shul was an unpermitted use, and the Board upheld the denial, plaintiffs filed suit in federal court, asserting RLUIPA and other claims. *Id.* at *2–3. Defendants moved to dismiss on ripeness grounds, arguing that plaintiffs could have, among other things,

14

filed for variances seeking relief from the ordinances at issue. *Id.* at *4. The district court disagreed, holding again that "a variance application would not significantly develop the record" where the "ZBA already determined that Plaintiffs' proposed use was not permitted." *Id.* at *6.

2.      The Yeshiva Was Not Required to Apply for a Variance

The Yeshiva is not required to apply for a use variance for its RLUIPA claims to be ripe. Defendants fail to explain why, as a prerequisite to challenging the ZBA's erroneous interpretation in federal court, the Yeshiva must first accept the ZBA's erroneous use interpretation and seek permission to depart from the zoning law to operate a children's camp—contrary to the Yeshiva's repeated representations made over sixteen months to Town officials regarding its plans to establish a religious retreat on the Property. The use variance process urged by Defendants would not assess the correctness of the ZBA's interpretation and whether it infringed on the Yeshiva's religious freedom, and thus would not "aid[] in developing a full record" before this Court, as Defendants suggest. Defs.' Br. at 9. Moreover, to date, the Yeshiva has developed a detailed, factual record of its extensive efforts to have the Property use deemed as a "place of worship." For nearly a year and a half, the Yeshiva submitted multiple written submissions to the Planning Board and the ZBA about using the Property as a place of worship, Am. Compl. Exs. B, C, E, I–K, P, R–S; met with the Planning Board and ZBA multiple times to discuss using the Property as a place of worship, *id.* Exs. D, F, G, H, L–O, U–W; and received a referral from the Planning Board to the ZBA, which concluded that the Property—contrary to the evidence presented to the ZBA by the Yeshiva—would be used as a summer camp, not a place of worship. *Id.* Exs. T, X. Because a variance application would not significantly develop the

record, it was not required. *See, e.g., Congregation Kollel, Inc.*, 2017 WL 637689, at \*10; *Khal Anshei Tallymawr, Inc.*, 2021 WL 5757404, at \*7; *Bais Brucha Inc.*, 2024 WL 863698, at \*6.

### 3.    A Variance Application Would Be Futile

It also would have been futile for the Yeshiva to reappear before the ZBA under Town Code §§ 190-65(A), 190-66(B) to request a use variance that would allow the Property to be used as a summer camp or a "children's camp" in the R-2 Residential Agricultural Zone. As a preliminary matter, the Yeshiva is not actually seeking to operate a "children's camp," so trying to obtain such a variance does not achieve its goal of operating a "place of worship." In any event, use variances are highly restricted and cannot be granted "without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship." Town Code § 190-66(B)(2)(b); *see also* N.Y. Town Law § 267-b(2)(b). To demonstrate "unnecessary hardship," the Yeshiva must demonstrate to the ZBA's satisfaction "that for each and every permitted use under the zoning regulations for the particular district where the property is located": (1) the Yeshiva "cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence"; (2) the "alleged hardship relating to" the Property "is unique, and does not apply to a substantial portion of the district or neighborhood"; (3) the use variance, if granted, "will not alter the essential character of the neighborhood"; and (4) "the alleged hardship has not been self-created." Town Code § 190-66(B)(2)(b)(1)–(4).[2] Defendants do not explain how the Yeshiva could show that the Property—

---

[2] Indeed, the standard for obtaining a use variance is considerably more difficult than for an "area" variance because an area variance only releases a landowner "from the duty to follow the strict letter of the zoning ordinance so that the land may be put to a permitted use. On the other hand, a use variance, if granted, will result in the use of land in a manner inconsistent with the basic character of the neighborhoods." *Conley v. Town of Brookhaven Zoning Bd. of Appeals*, 353 N.E.2d 594, 683 (N.Y. 1976) (citations omitted).

which previously operated as a commercial hotel under a special use permit—"cannot realize a reasonable return" for "each and every permitted use" in the R-2 Residential Agricultural Zone. Am. Compl. Ex. A. In that zone, uses permitted as of right include one- to two-family dwellings, manufactured homes, agricultural uses, commercial logging, forestry management, and quarrying, to name a few. *Id.* The fact that the Yeshiva could theoretically realize a financial return through other, non-religious use of the property cannot bar it from pursuing its intent to use the Property as a place of worship. *Id.*

4.      The Decisions Defendants Rely Upon Are Inapposite

Defendants cite a number of cases for their contention that Plaintiff's failure "to seek a meaningful variance, which the Second Circuit has made clear is a perquisite [sic] to ripeness," deprives this Court of subject matter jurisdiction. Defs.' Br. at 11–12 (citing cases). However, the stark differences between the cases cited in Defendants' brief and the facts alleged in the Amended Complaint highlight why Defendants' insistence on a variance has no application here; none of these cases involved a ZBA's conclusive and binding interpretation that the plaintiff's proposed religious use is a prohibited use.

In *BMG Monroe*, for instance, the plaintiff-developer proposed a residential development plan to the Village and Town of Monroe, which did not conform with the defendants' zoning codes. 93 F.4th at 598. The plaintiff was granted an initial variance from the zoning codes as long as plaintiff's construction plans complied with "a strict architectural code" and "critical architectural criteria." *Id.* at 599. Later, the Village and Town Planning Boards granted preliminary and final conditional approvals for the property, which emphasized that their approvals were conditioned on plaintiff's compliance with specific architectural requirements. *Id.* at 599–600. However, the Village building inspector denied plaintiff's applications for

17

construction permits, citing a failure of the proposed construction plans to comply with the architectural requirements upon which the Village and Town had conditioned their approvals. *Id.* at 600. Following a partial appeal which the ZBA denied, plaintiff filed suit in federal district court, but its claims were dismissed as unripe. *Id.* The Second Circuit upheld the dismissal on the ground that plaintiff "needed to apply for a second variance from the zoning regulations based on the updated rear elevation, roof pitch, and siding materials" and could not "sidestep that requirement merely by asserting that the Village Planning Board did not appear to be receptive to granting another variance." *Id.* at 604 (emphasis omitted).[3] In contrast, this case challenges the ZBA's final interpretation that the Yeshiva's proposed religious use was really a "children's camp" and thus not allowed by the Town's zoning code. This interpretation cannot be remedied by an *area* variance—as in *BMG Monroe*—and a use variance, even if granted, would only permit the Yeshiva to operate a type of facility that it does not intend to operate.

Defendants' remaining cases also do not support their position. *See, e.g., Village Green,* 43 F.4th at 296–98 (plaintiff's Fair Housing Act claims were ripe for review where Town Board made a final decision to deny plaintiff's application to remove covenants and restrictions that accompanied Town's rezoning of plaintiff's lot); *Murphy,* 402 F.3d at 352–53 (plaintiffs' RLUIPA and other claims were unripe, where defendant zoning commission issued cease-and-desist order finding that plaintiffs' weekly prayer meetings violated single-family zoning regulations; plaintiffs could have appealed the order to the Zoning Board of Appeals and requested variance relief); *BT Holdings, LLC v. Village of Chester,* 15 Civ. 1986 (CS), 2016 WL 796866, at *4 (S.D.N.Y. Feb. 23, 2016), *aff'd,* 670 Fed. Appx. 17 (2d Cir. 2016) (unpublished)

---

[3] As noted by the district court, an area variance was the type of variance necessary to address those issues. *See BMG Monroe I, LLC v. Vill. of Monroe,* No. 20 Civ. 1357 (NSR), 2022 WL 1094538, at *6 n.5 (S.D.N.Y. Apr. 12, 2022), *aff'd,* 93 F.4th 595 (2d Cir. 2024).

(plaintiff's unconstitutional taking challenge was unripe because plaintiff never submitted a formal application for site plan approval to the Planning Board).[4] Because the cases holding that a variance application is necessary to establish ripeness do not apply where a ZBA has issued a final, definitive interpretation that the proposed use of a property—notwithstanding the applicant's repeated and consistent representations to the contrary—is prohibited in any zoning district, Defendants' argument that a "meaningful variance" is necessary is misplaced and unsupported.

## C.    The Yeshiva's RLUIPA Claims Are Ripe Because It Has Suffered Concrete Harm

The Yeshiva's land use claims are also ripe because it suffered "an injury independent of the challenged land-use decision," *Sunrise Detox V, LLC*, 769 F.3d at 123, that was "concrete and particularized" and not "merely speculative and may never occur." *Village Green*, 43 F.4th at 299 (quotation marks omitted). The Yeshiva has alleged multiple concrete and particularized injuries caused by Defendants' actions: (1) it has expended additional funds to find an alternate

---

[4] In a recent decision issued after Defendants' opening brief and the Yeshiva's opposition, Judge Briccetti dismissed for lack of ripeness certain land use claims asserted by a group of developer plaintiffs against the Town of Forestburgh, its ZBA, and other Town officials and employees. *Lost Lake Holdings LLC v. Town of Forestburgh*, 22 Civ. 10656 (VB), 2025 WL 1899026 (S.D.N.Y. July 9, 2025). To the extent Defendants seek to rely on that decision, it is inapposite to the facts alleged in the Amended Complaint. In *Lost Lake Holdings*, plaintiffs purchased a property that the Town Board previously allowed the previous owner to develop as a resort and gated community. *Id.* at *1. Plaintiffs submitted several building permit applications to construct single-family homes on the same site. *Id.* at *3. The Town's building inspector permitted construction to begin on one lot, but denied permit applications for two other lots based on alleged deficiencies in Plaintiffs' applications. *Id.* On administrative appeal, the ZBA affirmed the denials and the Town Board subsequently adopted the ZBA's findings and determination. *Id.* at *3–4. After the Town Board issued stop work orders and reopened a SEQRA process for the property, plaintiffs filed suit in this Court. *Id.* at *4–5. The Court held that plaintiffs' land use claims were unripe because they did not seek a variance from the previously-approved project proposals, and found there were no procedural hurdles barring such a variance. *Id.* at *8. *Lost Lake Holdings* therefore is similar to, and relied on *BMG Monroe*, insofar as both courts found there were still remaining "avenues" (variances) where the municipal authority could "clarify or change its decision." *Id.* at *7 (quoting *BMG Monroe*, 93 F.4th at 604). As explained, *supra* at Section B.3, here a variance application would be futile.

location for its religious educational facilities; (2) it has paid carrying costs for a Property that it cannot use for its intended purpose; and (3) it has incurred costs and expenses associated with extended proceedings before the Planning Board and the ZBA to show that its proposed use for the Property for religious education was a permissible use. Am. Compl. ¶¶ 125, 132. Compelling the Yeshiva to undergo a futile variance process will not address these harms.

These alleged injuries are also similar to harms asserted by plaintiffs in other RLUIPA cases where defendants have unsuccessfully asserted a lack of ripeness. In *Congregation Kollel, Inc.*, the district court held that plaintiffs' RLUIPA claims were ripe because "Defendants' alleged discriminatory conduct has caused an immediate and tangible injury." 2017 WL 637689, at *10. Given that defendants had prevented plaintiffs from erecting religious structures on their property, "to subject Plaintiffs to an additional variance process would only seek to amplify the harm." *Id.* In *Khal Anshei Tallymawr, Inc.*, the district court held that plaintiff's challenge to the zoning board of adjustment's denial of a permit was ripe because plaintiff alleged "immediate injury" in the form of "financial losses and inability to exercise its religion due to the permit denial, and that it would continue [to] suffer these injuries during the Board's review of a variance application." 2021 WL 5757404, at *7. Finally, in *Bais Brucha Inc.*, the district court similarly held that plaintiffs' RLUIPA and other claims were ripe because plaintiffs had sufficiently alleged an "immediate injury," where the allegedly discriminatory conduct prevented plaintiffs from building a shul on their property much earlier, they had to acquire additional property, and they were forced to pay rental costs, increased construction costs, and various professional fees. 2024 WL 863698, at *6.

Case 7:24-cv-08477-CS    Document 19    Filed 07/29/25    Page 25 of 26

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that Plaintiff's

RLUIPA claims are ripe for adjudication before this Court.

Dated: New York, New York
July 29, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for the United States*

By:    _____/s/ Tomoko Onozawa_____
TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2721
Fax: (212) 637-0033
tomoko.onozawa@usdoj.gov


HARMEET K. DHILLON
Assistant Attorney General

MICHAEL E. GATES
Deputy Assistant Attorney General

CARRIE PAGNUCCO
Chief
Housing and Civil Enforcement Section

NOAH SACKS
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
Washington, D.C. 20530

21

**[JA-218]**

Case 7:24-cv-08477-CS    Document 19    Filed 07/29/25    Page 26 of 26

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that, measured by the word processing program used to prepare this brief, that this brief complies the word-count limitation of the rule, which is a maximum of 8,750. Excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but including material contained in footnotes or endnotes, there are 6,884 words in this brief.

Dated:      New York, New York
            July 29, 2025

_____/s/ Tomoko Onozawa_____
TOMOKO ONOZAWA
Assistant United States Attorney

Case 7:24-cv-08477-CS     Document 22     Filed 08/07/25     Page 1 of 1

UNITED STATES OF DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YESHIVA OHR SHRAGA VERETZKY,<br><br>        Plaintiff,<br><br>    -against-<br><br>TOWN OF HIGHLAND ZONING BOARD OF<br>APPEALS and TOWN OF HIGHLAND,<br><br>        Defendants. | **NOTICE OF MOTION**<br><br>24-cv-08477 (CS) |

**PLEASE TAKE NOTICE** that upon the annexed *Memorandum of Law in Support of Defendants' Motion to Dismiss*, the referenced exhibits, and upon all pleadings and proceedings in this case, Defendants will move this Court before the Honorable Cathy Seibel, at the United States District Court, located at 300 Quarropas Street, White Plains, New York 10601, on a date and time to be determined by the Court, for an Order pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), dismissing Plaintiff's claims, which include Counts I, II, III, IV, of the Amended Complaint, and all claims against Defendants Town of Highland and Town of Highland Zoning Board of Appeals, together with such other and further relief as the Court deems just, equitable, and proper.

Dated:  Carle Place, New York
        May 29, 2025

                                        **SOKOLOFF STERN LLP**
                                        *Attorneys for Defendants*

By:   _____
                                        Brian S. Sokoloff
                                        179 Westbury Avenue
                                        Carle Place, NY 11514
                                        (516) 334-4500
                                        File No. 240690LI

cc:     All parties by ECF

1

UNITED STATES OF DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YESHIVA OHR SHRAGA VERETZKY,

                Plaintiff,

      -against-

TOWN OF HIGHLAND ZONING BOARD OF
APPEALS and TOWN OF HIGHLAND,

                Defendants.

Docket No. 24-cv-08477 (CS)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

SOKOLOFF STERN LLP
*Attorneys for Defendants*
179 Westbury Avenue
Carle Place, NY 11514
(516) 334-4500
File No. 240690LI

*of Counsel:*
    Brian S. Sokoloff
    Leo Dorfman

**[JA-221]**

Case 7:24-cv-08477-CS     Document 23     Filed 08/07/25     Page 2 of 23

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

    A. Plaintiff's Purchase of the Subject Property and Application for Special Use Permit ...... 4

    B. The Planning Board's Review of Plaintiff's Preliminary Application ............................. 5

    C. The ZBA Interpretation ................................................................................................ 6

ARGUMENT ......................................................................................................................... 8

    I. Plaintiff's Claims are unripe Under Second Circuit Precedent ...................................... 8

        A. Plaintiff's Federal Claims Are Not Ripe for Adjudication Because Plaintiff Lacks a Final Decision from the Municipal Agency with Authority to Grant Approval. ........ 8

        B. The Final Decision Requirement Applies to Plaintiff's State-law Claims .................. 12

    II. The Court Should Dismiss Plaintiff's 42 U.S.C. §1983 Claim also for Failure to State a Claim .................. ...................................................................................... 12

        A. Plaintiff Fails to State a Free Exercise Claim (Second Cause of Action) .................. 13

        B. Plaintiff Fails to State an Equal Protection Claim (Third Cause of Action) .............. 15

CONCLUSION ..................................................................................................................... 17

## TABLE OF AUTHORITIES

Cases                                                                            Page(s)

*Antonyuk v. Chiumento,*
   89 F.4th 271 (2d Cir. 2023) ............................................................................ 14

*Antonyuk v. James,*
   120 F.4th 941 (2d Cir. 2024) .......................................................................... 14

*Automated Salvage Transp., Inc. v. Wheelabrator Envl. Sys., Inc.,*
   155 F.3d 59 (2d Cir. 1998) ............................................................................... 2

*Bennett v. City of New York,*
   425 Fed. Appx. 79 (2d Cir. 2011) .................................................................. 12

*Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, N.Y.,*
   111 F. Supp. 3d 459 (S.D.N.Y. June 9, 2015) ......................................... 10, 15

*BMG Monroe I, LLC v. Vill. Of Monroe,*
   93 F.4th 595 (2d Cir. 2024) ......................................................................... 9, 11

*Brandon v. Royce,*
   102 F.4th 47 (2d Cir. 2024) ........................................................................... 13

*Brown v. City of Oneonta, N.Y.,*
   221 F.3d 329 (2d Cir.1999) ........................................................................... 15

*BT Holdings, LLC v. Village of Chester,*
   2016 WL 796866 (S.D.N.Y. Feb. 23, 2016) ................................................. 11

*C. Rabbinical Cong. of U.S. & Canada v. New York City Dept. of Health & Mental Hygiene,*
   763 F.3d 183 (2d Cir. 2014) .......................................................................... 13

*Civil Liberties for Urban Believers v. City of Chicago,*
   342 F.3d 752 (7th Cir.2003) .......................................................................... 14

*Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona, NY,*
   945 F.3d 83 (2d Cir. 2019) ............................................................................ 10

*Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona, NY,*
   915 F. Supp.2d 574 (S.D.N.Y. 2013) ....................................................... 10, 12

*Donovan Realty, LLC v. Davis,*
   2009 WL 1473479 (N.D.N.Y. May 27, 2009) ............................................... 8

Case 7:24-cv-08477-CS    Document 23    Filed 08/07/25    Page 4 of 23

*Flores v. City of New York,*
 2022 WL 4705949 (S.D.N.Y. Aug. 8, 2022)................................................................. 12

*Fortress Bible Church v. Feiner,*
 694 F.3d 208 (2d Cir. 2012) ........................................................................................ 14

*Galanova v Portnoy,*
 432 F Supp 3d 433 (S.D.N.Y. Jan. 13, 2020).............................................................. 2

*Hart v. Town of Guilderland,*
 2020 WL 4500699 (N.D.N.Y. Aug. 5, 2020)................................................................ 8

*Kennedy v. Bremerton Sch. Dist.,*
 597 U.S. 507 (2022) ................................................................................................... 14

*Kravitz v. Purcell,*
 87 F.4th 111 (2d Cir. 2023) ........................................................................................ 13

*Liberty Sackets Harbor, LLC v. Vill. of Sackets Harbor,*
 2018 WL 4609129 (N.D.N.Y. Sept. 25, 2018)............................................................. 9

*Magee v. Nassau County Medical Ctr.,*
 27 F. Supp. 2d 154 (E.D.N.Y. Nov. 13, 1998) ............................................................ 2

*Makarova v. United States,*
 201 F.3d 110 (2d Cir. 2000) ........................................................................................ 2

*Monell v. Department of Social Services,*
 436 U.S. 658 (1978) ................................................................................................... 12

*Morrison v. Nat'l Austl. Bank Ltd.,*
 547 F.3d 167 (2d Cir. 2008) ...................................................................................... 10

*Murphy v. New Milford Zoning Comm'n,*
 402 F.3d 342 (2d Cir. 2005) ................................................................................. 9, 11

*Nat'l Org. for Marriage, Inc. v. Walsh,*
 714 F.3d 682 (2d Cir. 2013) ........................................................................................ 8

*Pani v. Empire Blue Cross Blue Shield,*
 152 F.3d 67 (2d Cir. 1998) .......................................................................................... 2

*Pyke v. Cuomo,*
 258 F.3d 107 (2d Cir. 2001) ...................................................................................... 15

*S & R Dev. Estates, LLC v. Bass*,
   588 F. Supp. 2d 452 (S.D.N.Y. 2008) ................................................................ 9, 11

*SM Kids, LLC v. Google LLC*,
   963 F.3d 206 (2d Cir. 2020) ...................................................................................... 2

*Thomas v. Union Carbide Agr. Prod. Co.*,
   473 U.S. 568 (1985) .................................................................................................. 8

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*,
   429 U.S. 252 (1977) ................................................................................................ 15

*Village Green At Sayville, LLC v. Town of Islip*,
   43 F.4th 287 (2d Cir. 2022) ......................................................................... 10, 11, 12

*W.D. v. Rockland Cnty.*,
   521 F. Supp. 3d 358 (S.D.N.Y. 2021) ................................................................... 13

*Westchester Day Sch. v. Village of Mamaroneck*,
   504 F.3d 338 (2d Cir. 2007) ................................................................................... 13

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
   473 U.S. 172 (1985) ............................................................................................ 8, 11

*Zahra v. Town of Southold*,
   48 F.3d 674 (2d Cir. 1995) ..................................................................................... 12

Statutes

42 U.S.C.§1983 ............................................................................................... 12, 13

N.Y. Const. Article I §§ 3, 9 and 11 ............................................................. 12

Case 7:24-cv-08477-CS    Document 23    Filed 08/07/25    Page 6 of 23

## PRELIMINARY STATEMENT

This is not a case of religious discrimination. It typifies a premature case, where a land developer jumps the gun and starts litigation before giving a municipality a chance to make a final determination on a project. In so doing, the developer tries to involve the court in the minutiae of local land use regulations prematurely.

Rather than deprive the Court's ripe cases of the attention they deserve, the Court should send Plaintiff back to the Planning Board (from which Plaintiff yanked its application) and/or the Zoning Board of Appeals (from which Plaintiff could seek a zoning variance, if needed).

Prematurity is not the Amended Complaint's only problem; it also fails to state a cause of action.

1

Case 7:24-cv-08477-CS    Document 23    Filed 08/07/25    Page 7 of 23

## STATEMENT OF FACTS[1]

The Town of Highland ("The Town") is in Sullivan County, New York. The Town spans 50.1 miles and is home to roughly 2,007 residents.[2] The Town Zoning Code is codified as Chapter 190 of the Town Code of the Town of Highland ("Town Code").[3] Chapter 190 Schedule 2 of the Town Code provides a schedule of use regulations for the four zones into which the Town is broken: (1) Hamlet Commercial; (2) Residential (R-1), which requires a 2-acre minimum; (3) Residential (R-2), which requires a 3-acre minimum; and (4) Washington Lake Resort District. ECF 12-1 at 1. Schedule 2 also has a list of uses and designates such uses as (1) permitted; (2) permitted by special use permit; or (3) not allowed. Id.

Section 190-41 of the Town Code lists property uses that the Town prohibits in all districts. That section prohibits a "children's camp," which § 190-7 of the Town Code defines as, "An establishment, either publicly or privately owned, complete with buildings, structures, sanitary facilities and ancillary services designated for the recreation and education of youth."

---

[1] For this motion only, the Town accepts the facts (not legal argument) in the complaint as true. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may refer to evidence outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000*); SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020); *Galanova v Portnoy*, 432 F Supp 3d 433, 438-439 (S.D.N.Y. Jan. 13, 2020). When considering a motion to dismiss for failure to state a claim, the court considers the facts set forth in the complaint, documents attached thereto and incorporated by reference therein, case law, statutes, and matters of public record. *See Automated Salvage Transp., Inc. v. Wheelabrator Envl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Magee v. Nassau County Medical Ctr.*, 27 F. Supp. 2d 154, 160 (E.D.N.Y. Nov. 13, 1998).
[2] Census Reporter, *Highland town, Sullivan County, NY*, CENSUS REPORTER, https://censusreporter.org/profiles/06000US3610534473-highland-town-sullivan-county-ny/.
[3] The Town Code, of which the Court can take judicial notice, is publicly available at https://ecode360.com/13926123.

2

While the Town Code defines "children's camps," it does not define "place of worship,"

which the Town allows in all districts with a special permit. *See* Chapter 190, Schedule 2, <u>ECF 12-</u>

<u>1</u>.

### A. Plaintiff's Purchase of the Subject Property and Application for Special Use Permit

Plaintiff Yeshiva Ohr Shraga Veretzky (the "Yeshiva") is a New York community-based religious corporation that provides Torah-based religious education to students. ECF 12 at ¶ 8; ECF 12-15 at 4. Plaintiff has facilities in Brooklyn, NY and Lakewood, NJ. ECF 12 at ¶ 14. During the summer, Plaintiff provides co-sponsored religious retreats by renting spaces at various locations. Id. ¶ 15. In 2023, as Plaintiff was searching for a property to conduct its programming during the summer months, it came across property located 211 Mail Road, Barryville, New York then owned by 211 Mail Road LLC ("211 Mail Road"). Id. ¶ 16-17; ECF 12-5 at 3. The property, 40.23 acres, sat in the Residential – Agricultural (R-2) Zoning District. ECF 12 at ¶ 2; ECF 12-11 at 1. The property operated as a commercial hotel and had a special use permit from the Town of Highland Planning Board (the "Planning Board"). The hotel comprised seven hotel units, 20 motel units, a bar/lounge, a gym, and cabins. ECF 12-7 at 2.

In February 2023, Plaintiff, an interested purchaser of the property, filed a preliminary application to significantly expand and convert the specially permitted hotel to a new use, to include four new single story buildings containing dormitories, each about 5,800 square feet with 32 bedrooms, an 800 square foot Mikvah (ritual bath), a 10,000 or more square foot multi-purpose building, and a 62-spot parking lot. Id. at 2.

The property, which would operate during the summer months, "principally July and August," would house teenagers and young adults, potentially without their parents, while they study the Talmud and "connect on a religious level with others within the Yeshiva's religious community." ECF 12 at ¶ 25. The use, as proposed and advertised by Plaintiff, had all the hallmarks of a children's camp and fit squarely within the definition of a "children's camp" found

4

at § 190-7 of the Town Code. The scope and complexity of the proposed expansion, not to mention the potential adverse impacts from it, required careful review by the Planning Board.

### B. The Planning Board's Review of Plaintiff's Preliminary Application

On August 23, 2023, Plaintiff's preapplication came before the Planning Board. ECF 12-7 at 2-3. Plaintiff's proposal, which transformed the configuration of the property, raised concerns about septic usage, speed limits in the area, and increased traffic. *Id.* at 3. Two days before the preapplication came before the Planning Board, Fusco Engineering, the Town Engineer, submitted a comment letter, requiring the Planning Board to reschedule preapplication to allow Plaintiff's engineer, John Fuller, time to review the comment letter and respond.

On October 25, 2023, Plaintiff's special use permit application came before the Planning Board. Plaintiff changed its original proposal; changes included (1) removing four 5,200 square foot dormitories and replacing them with two 6,800 square foot dormitories, with 144 beds; (2) including a 1,200 square foot Mikvah; (3) including a 9,500 square foot multi-purpose building; and (4) moving the septic to the lower end of the property. ECF 12-8 at 2.

Because Plaintiff came before the Planning Board with substantially different plans for development, the Planning Board needed time to review them. In addition, Plaintiff needed to supply current perk tests witnessed by the Town Engineer and conduct a traffic analysis based on the busy season. *Id.*

In its November 29, 2023 session, the Planning Board acknowledged Plaintiff's compliance with perk testing, noted the new plans submitted by Plaintiff, and rescheduled Plaintiff's application to allow time for a response from Fusco Engineering. ECF 12-12.

At the December 20, 2023 Planning Board meeting, Plaintiff learned that it submitted a traffic study for the incorrect road and needed to submit a full and legal traffic study for the correct

road. The Planning Board also noted Plaintiff's changing narrative and accompanying plans about the intended use of the property, and the Planning Board requested Plaintiff's presence at the next meeting to answer the Planning Board's questions about the intended use. The Planning Board did not schedule a public hearing during this meeting. ECF 12-13 at 3.

On January 24, 2024, the Planning Board met with Plaintiff and its counsel, asking several questions about the use of the property, including whether the property will hold religious retreats only in the summer rather than year-round, whether the property would be available to all religious groups, what other activities will be taking place, and whether the occupants would be adults, children, or both. ECF 12-17 at 2. To adequately notify the public about the proposed use and to clear up existing grey areas about how the property was to be used, the Planning Board referred the application to the Town's Zoning Board of Appeals ("ZBA") for the limited purpose of determining the use complied with the Town Code. *Id.* at 3. As stated by the Planning Board, "once the Zoning Board reviews and makes their decision the applicant can return to the Planning Board." *Id.*

### C. The ZBA Interpretation

On April 16, 2024 Plaintiff appeared before the ZBA. The ZBA requested all documents provided to the Planning Board about the intended use of the property, and it set a public hearing for May 21, 2024. ECF 12-21 at 2. The ZBA opened the May 21 public hearing and said that public comments should concern the zoning code's interpretation of the use of the property. ECF 12 at ¶ 84; ECF 12-22 at 5. During the public hearing, several members of the public expressed concerns about Plaintiff's lack of transparency, traffic safety, the rural nature of the Town, and maximum occupancy. *Id.* at 5-6.

6

The ZBA next met on June 20, 2024. ECF 12 at ¶ 86. Plaintiff and the ZBA discussed the use of the property outside the summer months, who would rent the space when Plaintiff is not there, and how Plaintiff will oversee the property when renting the space to other organizations. ECF 12-23 at 4.

On July 18, 2024, the ZBA adopted a resolution interpreting the proposed use of 211 Mail Road. ECF 12-24. The ZBA opined that, based on the information provided by Plaintiff, the proposed use meets the Zoning Code's definition of a "children's camp." While the ZBA found the use to be consistent with a children's camp, it added that "while a children's camp is expressly prohibited under the Town Code, the final determination will be made by the Planning Board." *Id.* at 5.

Despite the ZBA invitation to Plaintiff to return to the Planning Board for the final determination on whether the proposed use amounts to a "summer camp," Plaintiff has never done so, choosing to litigate, instead.

7

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE UNRIPE UNDER SECOND CIRCUIT PRECEDENT.

Under prevailing Second Circuit case law, Plaintiff must obtain a "final decision" on its proposed land use before asking this Court to adjudicate its land use claims. The ZBA provided the roadmap back to the Planning Board, but Plaintiff pulled the plug.

### A. Plaintiff's Federal Claims Are Not Ripe for Adjudication Because Plaintiff Lacks a Final Decision from the Municipal Agency with Authority to Grant Approval.

"To be justiciable, a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (citation omitted). "A claim is not ripe if it depends upon 'contingent future events that may or may not occur as anticipated, or indeed, may not occur at all.'" *Walsh*, 714 F.3d at 687 (quoting *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580–81 (1985)).

Land use claims are not ripe until the government "has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019). "A final decision is 'a definitive position on the issue that inflicts an actual, concrete injury.'" *Donovan Realty, LLC v. Davis*, No. 07-CV-905 (DRH), 2009 WL 1473479, at *3 (N.D.N.Y. May 27, 2009) (quoting *Williamson*, 473 U.S. at 193).

"In the land use development context, a final decision requires that a development plan be submitted, considered, and rejected by the governmental entity with the power to implement zoning regulations." *Hart v. Town of Guilderland*, 2020 WL 4500699, at *4 (N.D.N.Y. Aug. 5,

2020) (internal quotations omitted) (quoting *S & R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008)). Plaintiff bears the "high burden" of proving the Court "can look to a final, definitive position from a local authority to assess precisely how they can use their property." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).

Even if a plaintiff submitted a plan that the relevant body rejected, a claim is not ripe until the "property owner submit[s] at least one meaningful application for a variance." *Id.* at 348. A developer's failure to seek a variance shows that it has not yet obtained a final decision on how it could develop the property. *BMG Monroe I, LLC v. Vill. Of Monroe*, 93 F.4th 595, 601 (2d Cir. 2024). A meaningful application for a variance is a "necessary prerequisite" to ripeness. *Id.*

The "final decision" ripeness requirement rests on four considerations: (1) a final decision from a land use authority aids in developing a full record; (2) "only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel;" (3) the possibility that a variance "might provide the relief the property owner seeks without requiring judicial entanglement" supports the "long-standing principle that disputes should be decided on non-constitutional grounds wherever possible;" and (4) "[r]equiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Murphy*, 402 F.3d at 348 (citations omitted).

Plaintiff's RLUIPA, free exercise, and equal protection claims are subject to the finality requirement for ripeness. *See Liberty Sackets Harbor, LLC v. Vill. of Sackets Harbor*, 2018 WL 4609129, at *14 (N.D.N.Y. Sept. 25, 2018), *aff'd,* 776 F. App'x 1 (2d Cir. 2019).

Originating under *Williamson* in the takings context, the "final decision" requirement applies with equal force to as-applied land use claims under RLUIPA, the First Amendment, the

9

Equal Protection Clause, and the Due Process Clause. *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d 574, 589 (S.D.N.Y. 2013) ("*Tartikov I*"), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019) (collecting cases); *Village Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287 at 294 (2d Cir. 2022); *Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459 (S.D.N.Y. June 9, 2015). And it applies to land use disputes arising under New York law. *Tartikov I*, 915 F. Supp. 2d at 589.

Where, as here, a claim is non-justiciable as unripe, the Court must dismiss it for lack of subject matter jurisdiction. *See Tartikov I*, 915 F. Supp. 2d at 589 (dismissing for want of subject matter jurisdiction unripe claims under the Free Speech, Free Exercise, and Free Association Clauses of the First Amendment; the Equal Protection Clause of the Fourteenth Amendment; the Fair Housing Act, RLUIPA, and state law); *see also, Vill. Green At Sayville, LLC*, F.4th 287, 293.

Indeed, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted). "A plaintiff asserting jurisdiction has the burden of proving by a preponderance of evidence that it exists." *Id.* (internal quotation marks omitted). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (alteration in original) (citations and internal quotation marks omitted).

Plaintiff applied to the Planning Board for a special use permit in March 2023. Before the Planning Board made any decisions about Plaintiff's application, it referred Plaintiff to the ZBA

10

for obtaining an interpretation of the intended use under the Zoning Code based on the information provided by Plaintiff. Although the ZBA provided its interpretation, it also directed Plaintiff to return to the Planning Board for the final decision.

Plaintiff not only failed to get a final determination from the Planning Board, it also failed to seek a meaningful variance, which the Second Circuit has made clear is a perquisite to ripeness. *BMG Monroe I, LLC* at 601; *Murphy*, 402 F.3d at 348 (noting ripeness is "condition[ed] ... on a property owner submitting at least one meaningful application for a variance") (citing *Williamson Cnty. Reg'l Planning Comm'n*, 473 U.S. at 190 ("[I]n the face of [the developer's] refusal to follow the procedures for requesting a variance" the developer has "not yet obtained a final decision regarding how it [would] be allowed to develop [the] property."")), 353 ("failure to pursue a variance prevents a federal challenge to a local land use decision from becoming ripe").

Absent a final decision by the Planning Board and a subsequent application for a variance, this Court cannot determine whether the Town would have permitted Plaintiff's proposed construction on the Property and its subsequent use (or even whether there was a discriminatory motivation). Moreover, the ZBA interpretation does not substitute for a final decision by an agency with authority to grant approval. *BT Holdings, LLC v. Village of Chester*, No. 15-CV-1986 (CS), 2016 WL 796866, at *4 (S.D.N.Y. Feb. 23, 2016), *aff'd*, 670 Fed. Appx. 17 (2d Cir. 2016)(unpublished) (citing *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 462 (S.D.N.Y. Sept. 26, 2008) ("An opinion regarding the zoning classification for a given property is not a substitute for a final decision rendered as to a development plan").

Plaintiff's claims are not ripe, and the Court should dismiss this action for lack of jurisdiction. *See Vill. Green At Sayville, LLC*, 43 F.4th at 296 ("[I]t is 'virtually impossible' for us to determine 'what development will be permitted on a particular lot of land when its use is subject

11

to the decision of a regulatory body invested with great discretion, which it has not yet even been asked to exercise' ").

### B. The Final Decision Requirement Applies to Plaintiff's State-law Claims.

The requirement that Plaintiff obtain final decision before suing applies to state-law claims, too. *Tartikov I,* 915 F. Supp. 2d at 589; *see also, Vill. Green At Sayville, LLC,* F.4th 287, 293. The Court, should therefore also dismiss Plaintiff's fourth cause of action, alleging violations of N.Y. Const. Article I §§ 3, 9 and 11.

### II.    THE COURT SHOULD DISMISS PLAINTIFF'S 42 U.S.C. § 1983 CLAIM ALSO FOR FAILURE TO STATE A CLAIM.

A municipality is subject to liability for the unconstitutional acts of its employees in limited circumstances: where a municipal policy or custom caused the alleged constitutional injury. *See Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). For the Town to be liable under 42 U.S.C. § 1983, Plaintiff must plead and prove the existence of an official policy or custom that caused the deprivation of Plaintiff's constitutional rights. *Flores v. City of New York*, No. 21CV1680PGGKHP, 2022 WL 4705949, at \*27 (S.D.N.Y. Aug. 8, 2022), *report and recommendation adopted,* No. 21CIV1680PGGKHP, 2022 WL 4592892 (S.D.N.Y. Sept. 30, 2022); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995); *Bennett v. City of New York*, 425 Fed. Appx. 79, 81 (2d Cir. 2011).

This Court should dismiss Plaintiff's § 1983 claim alleging violations of the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause because Plaintiff fails to plead facts meeting the requisite elements of these claims. With no underlying constitutional violation, Plaintiff cannot maintain a *Monell* claim against the Town.

12

### A.  Plaintiff Fails to State a Free Exercise Claim (Second Cause of Action).

Plaintiff fails to state a free exercise claim because the ZBA interpretation is neutral and generally applicable. "To show a violation of his First Amendment right to free exercise, [i]n the context of a [Section] 1983 claim…, there is no requirement to show that the governmental burden on religious beliefs was 'substantial.'" *Brandon v. Royce*, 102 F.4th 47, 55 (2d Cir. 2024) (quoting *Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023)) (emphasis in original). "Rather, 'a plaintiff may carry the burden of proving a free exercise violation…by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Id.*

"A law is not facially neutral 'if [the text] refers to a religious practice without a secular meaning discernable from the language or context.'" *W.D. v. Rockland Cnty.*, 521 F. Supp. 3d 358, 398 (S.D.N.Y. 2021), *rev'd in part, vacated in part sub nom. M.A. on behalf of H.R. v. Rockland Cnty. Dept. of Health*, 53 F.4th 29 (2d Cir. 2022). "A law is not generally applicable if it is 'substantially underinclusive' in that it regulates religious conduct, but does not regulate secular conduct that is 'at least as harmful to the legitimate government interests purportedly justifying it.'" *Id.* at 402 (quoting *C. Rabbinical Cong. of U.S. & Canada v. New York City Dept. of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014)).

Moreover, when a religious plaintiff makes a Free Exercise challenge to a land use regulation, it must explain how the inability to overcome the regulation renders its religious exercise impracticable. *See Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007) (finding substantial burden only where village zoning ordinance left religious school no alternative viable means—including no economically feasible means—to achieve building requirements and where board's decision was final and absolute).

Plaintiff has failed to show that the ZBA interpretation, or the accompanying Town Code, is not neutral and not generally applicable. The generic boilerplate assertions in the Amended Complaint are insufficient. The zoning regulations the ZBA interpreted existed before Plaintiff began its application process in 2023. While such regulations may be inconvenient and may require the type of give and take that typically arises during land use applications where a board has discretion over approvals, this potential inconvenience does not mean (a) that the ZBA interpretation or the Town's zoning regulations are not neutral and not generally applicable or (b) that they impose a substantial burden on Plaintiff. *Antonyuk v. Chiumento*, 89 F.4th 271, 348 (2d Cir. 2023), *cert. granted, judgment vacated sub nom. Antonyuk v. James*, 144 S. Ct. 2709 (2024), and *reinstated in part by Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022)) ("However, even if a law burdens a religious practice, it is not constitutionally suspected if it is 'neutral' and 'generally applicable.'").

While the Second Circuit has not addressed the standard of review for zoning decisions "the majority of circuits that have addressed this question have concluded that zoning laws with the opportunity for individualized variances are neutral laws of general applicability." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 220 (2d Cir. 2012) (citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 764 (7th Cir. 2003)). Under the Town Code, any entity wishing to apply for a special use permit, religious or secular, would undergo the procedures Plaintiff had to follow.

Moreover, the Town Code prohibits children's camps in all areas and does not prefer secular uses over religious uses.

And while Plaintiff claims that the ZBA interpretation denies a constitutional right to practice religion, because it is merely a recommendation to the Planning Board, which has not yet

14

ruled, it does no such thing. Plaintiff simply has no facts showing that the Town has rendered religious exercise impracticable.

### B. Plaintiff Fails to State an Equal Protection Claim (Third Cause of Action).

Plaintiff fails to state a cause of action under the Equal Protection Clause. "There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause: (1) a plaintiff could point to a law or policy that expressly classifies persons on the basis of religion; (2) a plaintiff could allege that a facially neutral law or policy has been applied in an intentionally discriminatory manner; or (3) a plaintiff could allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Village of Bloomingburg,* 111 F. Supp. 3d at 486 (citing *Brown v. City of Oneonta*, N.Y., 221 F.3d 329, 337 (2d Cir.1999).

"Discriminatory intent may be evidenced by such factors as disproportionate impact, the historical background of the challenged decision, antecedent events, departures from normal procedures, and contemporary statements by decision-makers." *Id.* (citing *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266–68 (1977). "A plaintiff alleging an equal protection claim under a theory of discriminatory application of the law, or under a theory of discriminatory motivation underlying a facially neutral policy or statute, generally need not plead or show the disparate treatment of other similarly situated individuals." *Id.* (quoting *Pyke v. Cuomo*, 258 F.3d 107, 108–09 (2d Cir. 2001).

Plaintiff pleads no necessary elements to support a claim of equal protection violation. Plaintiff does not allege that the ZBA interpretation, or any comments made by a ZBA member, explicitly mention religion, dooming elements (2) and (3). Plaintiff also fails to plead intent or effect beyond conclusory allegations.

15

While Plaintiff mentions antecedent events, such as the Town Board election and the Town Board's retention of new counsel, they do not connect these events to discriminatory intent. Plaintiff cites comments made during the May 21, 2024 ZBA public hearing, ECF 12 at ¶ 84, but those statements did not come from people affiliated with Town government or decisionmakers. Such comments do not create a viable claim.

As the complaint lacks any facts satisfying any required elements of an equal protection claim, the Court should dismiss Plaintiff's third cause of action.

Case 7:24-cv-08477-CS    Document 23    Filed 08/07/25    Page 22 of 23

## CONCLUSION

Defendants ask the Court to grant its motion and dismiss the Amended Complaint, with

such other relief as this Court may deem just, equitable, and proper.

Dated: Carle Place, New York
     May 29, 2025

<div align="right">

SOKOLOFF STERN LLP
*Attorneys for Defendants*


Brian S. Sokoloff
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No.: 240690

</div>

17

### WORD COUNT CERTIFICATION

This Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint comprises 4,310 words, exclusive of the caption and signature block, and complies with the word count limit set forth in Local Rule 7.1(c) of the Joint Local Rules of S.D.N.Y. and E.D.N.Y. and Rule 2(B)(i) of Judge Seibel's Individual Rules.

Dated: Carle Place, New York
      May 29, 2025

SOKOLOFF STERN LLP

_____
Brian S. Sokoloff

18

UNITED STATES OF DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

YESHIVA OHR SHRAGA VERETZKY,

                 Plaintiff,

   -against-

TOWN OF HIGHLAND ZONIGN BOARD
OF APPEALS and TOWN OF HIGHLAND,

              Defendants.

-----------------------------------------------------------X

Docket No. 24-cv-08477 (CS)

Assigned Judge:
Hon. Cathy Seibel

 

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Steven Barshov
SBarshovLaw PLLC
*Attorney for Plaintiff*
20 Lagoon Lane
Haverstraw, New York 10927
917-886-4328
sb@sbarshovlaw.com

1

Case 7:24-cv-08477-CS   Document 24   Filed 08/07/25   Page 2 of 13

**PRELIMINARY STATEMENT**

Contrary to the very first sentence in the Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Def. Mem.") stating "This is not a case of religious discrimination," this litigation is very much a case of violation of constitutionally and statutorily protected religious rights, including violations of: (a) the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") 42 U.S.C§ 2000cc, *et seq.*; (a) the First and Fourteenth Amendments to the United Sates Constitution as enforced by 42 U.S.C. §§ 1983 and 1988; and (c) Article 1, §§ 3, 9 and 11 of the New York Constitution.

Perhaps it is because of some fundamental denial of reality manifested by the first sentence quoted above, perhaps because delay and the passage of time favors the Defendants, but regardless of the reasons, the Court should be made aware that there has been no discussion of settlement initiated by Defendants' counsel. This is in the context of Your Honor's statement in the Order of May 14, 2025 (Document No. 14): "Counsel for Defendants are again encouraged, <u>unless their clients refuse,</u> to discuss possible settlement with Plaintiff." (Emphasis added.) Since not even the most tepid discussion of settlement has been initiated by counsel for Defendants, the logical inference is that Defendants refuse to do so.

Turning to the legal arguments proffered, the Motion to Dismiss (the "Motion") is straight out of the standard government defense playbook -- assert that the case is not ripe and that further administrative proceedings are required, including but not limited to a variance application. The first alleged basis for lack of finality is that the ZBA interpretation that the summer religious educational use is not a religious use but "amounts to a 'summer camp'" (Def. Mem. at 7), is not a final action, but that further action is required by the Planning Board. The decisional law in New York is uniform and crystal clear that an interpretation of a zoning board of appeals regarding the

2

meaning of the locality's zoning law is final and binding on all other local boards and officials. Thus, the only action that the Planning Board could possibly take given the ZBA interpretation that the summer religious educational use is not religious is to have formally denied the application. No other action was or is possible. There is no requirement for finality that the Yeshiva be forced to undertake a further administrative process with the Planning Board when the only outcome possible is denial because the Planning Board must follow the ZBA's interpretation of the Town Zoning Code.

Moreover, the obvious defense strategy of delay is apparent in filing the Motion to demand an additional Planning Board process whose outcome is predetermined. This is in the context of the issue of religious use having been raised early in the application process, then seemingly put to bed by the Memorandum of Law submitted to the Planning Board, and then it was time to conduct a public hearing and vote on the pending application, suddenly the Planning Board needed to refer the use question to the ZBA for an interpretation. There is no way that the Yeshiva was going to be further manipulated and delayed by the absurd process orchestrated by the Planning Board and the ZBA. The ZBA interpreted, the Planning Board is bound, and because the Planning Board could do nothing but deny the application, the claims are ripe, and any further administrative proceedings would be futile. *See* Point I, *infra*.

The other claimed basis for asserting that the litigation is not ripe is because no variance application was filed following the issuance of the ZBA interpretation. The interpretation sought from the ZBA was that the summer religious educational use was a permitted use, allowed as of right, and allowed as a religious use/place of worship which is a permitted use in very Town zoning district. By definition, a variance cannot yield what the Yeshiva sought and is entitled to, to wit: the right to undertake its summer religious educational use as a permitted use. A variance, by

3

definition, is permission to <u>violate</u> the applicable zoning, either to obtain an area variance to obtain relief from dimensional and similar physical requirements, or a use variance to allow a use that is otherwise prohibited. Neither yields what the Yeshiva is entitled to, which is validation and confirmation that its religious summer educational use is a fully permitted use, not one that requires a variance.

In every decision that could be located that is on point, no reviewing court has held that a challenge to an interpretation as to whether a use is permitted as of right or not is not ripe unless a variance is sought and denied. Indeed, all of the apposite precedent is that no variance is required because the variance application would not develop any additional facts germane to determination of whether the use is permitted as of right. The only facts that the variance application would develop are facts pertaining to whether there should be a departure from the applicable zoning. That is not germane to whether the summer religious educational use is permitted as of right. As to that issue, the variance application is irrelevant. Thus, no variance application is required.

The apposite decisional law is from the Third Circuit. This is simply because there is no similar case that has arisen in the Second Circuit that either party could locate. As the underlying tests for ripeness and finality are the same in both Circuits, there is no reason for this Court to eschew the decisional law cited, merely because it is from the Third Circuit. The cases cited are well reasoned and none is inconsistent with any Second Circuit precedent. *See* Point II, *infra*.

Defendants assert that Plaintiff fails to state a free exercise claim because supposedly the ZBA interpretation is neutral and generally applicable. The simple truth is that the Planning Board and subsequently the ZBA were provided a detailed Memorandum of Law explaining exactly why the Yeshiva's summer educational use was religious in nature, and it was ignored -- just as the ZBA ignored *Talmud Torah* which is precisely on point and which expressly held that what the

Defendants did in this case was done previously in the Town of Wawarsing and was just as illegal there as it is here. Religious use includes education, and it is an obvious violation of the free exercise clause for a municipality to "interpret" something as being non-religious which is fundamental and core to religious exercise. *See* Point III, *infra*.

Finally, since the ZBA interpretation prohibits the Yeshiva's proposed summer educational use it treats the Yeshiva's proposed religious educational use differently than all other religious uses. In other words, the ZBA interpretation favors other religious uses over the Yeshiva's proposed Orthodox Jewish religious educational use and discriminates against the Yeshiva's proposed religious educational use. This is a straightforward denial of equal protection. *See* Point IV, *infra*.

<div align="center">

**<u>STATEMENT OF FACTS</u>**

</div>

The Yeshiva has religious schools and related facilities in both Brooklyn, New York, and Lakewood New Jersey. For a number of years, the Yeshiva leased facilities in Sullivan County to provide a place where its Rabbis and students from both Brooklyn and Lakewood could come together and continue their religious education in the summer months

The Yeshiva applied to the Highland Planning Board for a "place of worship" special use permit to enable it to provide on-site religious education during the summer months. The Zoning Code's District Schedule of Use Regulations designates a "place of worship" as a use of property that requires a special use permit in the R-2 Zoning District, which is where the property that is the subject of this litigation is located.

As further confirmed in the District Schedule of Use Regulations, a place of worship is a specially permitted use in every zoning district in the Town, meaning that a place of worship is specially permitted everywhere in the Town. Zoning Code § 190-7 is entitled "Definitions" and

<div align="center">5</div>

contains no definition of a place of worship, house of worship, synagogue, church, temple, or any similar term. Because there is no definition of a place of worship in the Zoning Code and because a "place of worship" is allowed everywhere in the Town, religious use of property is specially permitted throughout the Town, including at the Yeshiva's property. Religious education is a part of religious use of property and wherever a place of worship is specially permitted under local zoning, so is the use of the property for religious education, subject to issuance of a special use permit.

Early in the application process, the question of the nature of the summer religious educational use was one raised by the Planning Board and certain outside consultants. To inform the Planning Board and its consultants of the applicable law regarding religious use, including the *Talmud Torah* case (discussed *infra*) and other decisional law confirming that religious education is a part of religious use, counsel for the Yeshiva prepared and submitted a Memorandum of Law (the "Religious Use MOL") to the Planning Board on April 27, 2023.

The Religious Use MOL confirmed to the Planning Board that religious education is a part of religious use under local zoning and that this principle of law has been recognized and upheld in an unbroken line of decisional law for over fifty years. The Religious Use MOL further confirmed to the Planning Board that RLUIPA prohibits units of local government from utilizing zoning and land use laws to unduly burden the exercise of religion, which includes religious education. The Religious Use MOL delineated precisely why the Application's proposed summer religious educational use and non-summer religious retreat uses would fall within the religious uses authorized for a place of worship.

Thereafter, the Planning Board, the Town's consultants and its counsel all accepted the position that the Yeshiva proposed religious educational use of its property during the summer

6

months, and that such proposed use was religious in nature, at least until the application was very close to being set for public hearing. Then, suddenly the "use" questions surfaced again, so the Yeshiva's counsel prepared and submitted the to the Planning Board the 11-17-2023 Religious Use Memo discussing the proposed religious use in detail, which was followed by additional submissions. Ultimately, the Planning Board referred the matter to the ZBA for an interpretation as to whether the proposed summer use was a religious educational use.

The Yeshiva appeared before the ZBA on April 16, 2024. At that meeting the Yeshiva's counsel reiterated what had been stated in the Religious Use MOL (Complaint, Ex. E), and in the 11-17-2023 Religious Use Memo (Complaint Ex. I), that the courts had uniformly held that the uses to be undertaken by the Yeshiva were religious uses. In addition, the ZBA was provided with the "Statement" issued by the United States Department of Justice (DOJ) in which the elements of religious use are delineated and discussed, especially as relates to RLUIPA (the "DOJ Statement"). The ZBA was informed that the Yeshiva's proposed summer religious educational use meets all of DOJ's criteria for religious use.

A place of worship is allowed as a specially permitted use in every Town zoning district. Ultimately, the ZBA unlawfully issued an interpretation that the Yeshiva's proposed summer use was not a religious use and therefore not one for which a special permit as a house of worship could be granted. Thereupon, this litigation was commenced alleging that the ZBA's interpretation violated the Yeshiva's rights under RLUIPA; was a denial of its "free exercise" rights; was a denial of equal protection, a violation of its rights under the New York State Constitution, and an unlawful conspiracy to deprive the Yeshiva of its constitutional rights

## POINT I

### SINCE THE PLANNING BOARD IS REQUIRED TO FOLLOW THE ZBA INTERPRETATION AND DENY THE APPLICATION, ANY ADDITIONAL PLANNING BOARD PROCESS WOULD BE FUTILE, THUS CAUSING THIS LITIGATION TO BE RIPE

Contrary to the position asserted by the Defendants, a property owner who receives an interpretation from a zoning board of appeals that the proposed use is not permitted under the applicable zoning is not required to go through the remainder of the futile permit application process before having a ripe claim in court that is justiciable.

In *Talmud Torah Ohr Moshe v. Zoning Board of Appeals of the Town of Wawarsing* ("*Talmud Torah*"), 170 A.D.3d 1488 (3d Dept. 2019), the identical situation as presented in this litigation occurred. Plaintiff Talmud Torah Ohr Moshe applied for site plan approval for the identical summer religious educational use as is proposed by Yeshiva Ohr Shraga Veretzky in this case. No determination was made on the site plan application because the ZBA issued an interpretation that the proposed use did not fall within the definition of place of worship but, was "akin to a school or a camp" which were not permitted uses in the applicable zoning district." *Id.* at 1489. The ZBA zoning interpretation was challenged and reversed on appeal. *Id.* at 1490 to 1491. The Third Department ordered that: "[T]he ZBA's determination is annulled and the matter is remitted for respondents to consider petitioner's site plan application. *Id.* at 1491 (emphasis added). The relief granted confirms that a ZBA interpretation is final and that the aggrieved party need not go through the futile process of obtaining a permit denial as a prerequisite to appealing the interpretation. *See also Smith v. Town of Thompson Planning Board*, 233 A.D.3d 1107 (3d Dept. 2024) holding that: (1) a town planning board is "without power to interpret the local zoning law;" (2) such power is vested exclusively in the ZBA; and (3) "[w]ithout an appropriate zoning code interpretation in hand, the Planning Board could not properly issue a special use permit." *Id.*

8

at 1110.  The principle enunciated by the *Smith* Court is that a planning board cannot, as a matter of law, deviate from zoning board of appeals interpretation.  Since the Planning Board must follow the ZBA interpretation, the only possible outcome of further proceedings before the Planning Board would be  denial.  Since that is the only possible outcome, any further Planning Board application process would be futile.  Undertaking a futile administrative process is not required for litigation, like this case, to be ripe.  Accordingly, the Motion should be denied.

<div align="center">

**POINT II**

**SINCE A VARIANCE APPLICATION WOULD NOT
GENERATE ANY ADDITIONAL RELEVANT FACTS,
IT IS NOT REQUIRED FOR THIS CASE TO BE RIPE**

</div>

The Defendants devote much of their Memorandum of Law to reciting general rules of law regarding ripeness in connection with land use cases generally, including regulatory takings cases, etc. *See* Def. Mem. at 8 - 11.  What is missing from all of the cited authorities is a single case that is factually similar to this case.  Most land use cases do not arise in the context of whether a use is or is not permitted under the applicable zoning and most do not arise from an interpretation issued by the ZBA as to the nature of a proposed use.  Indeed, not a single case cited by the Defendants arises from an interpretation by the ZBA as to whether a use is or is not permitted.

What the cases cited by the Defendants do stand for is the proposition that a <u>final</u> position of the municipality must be definitively articulated before a claim is ripe.  Plaintiff does not run from this standard or seek to evade its application in any way.  The simple truth is that the ZBA interpretation is the final and definitive action and nothing else is available to further inform the factual record.  This is, in part, because the ZBA interpretation is binding upon all other municipal boards and officials.  *See* Point I, *supra*.

<div align="center">9</div>

In addition, a variance application does not provide any additional factual information about whether the proposed religious educational use is permitted under the Highland Zoning Code. An application for permission to violate the zoning by installing a use that is not permitted via a use variance provides no additional factual information about the claim that no variance is needed because the religious educational use is permitted. Thus, both logic and common sense dictate that a variance application is entirety unnecessary and irrelevant when the claim is that the proposed religious educational use is allowed under the applicable zoning and that no variance of any kind is needed. Under such circumstances, by definition, a variance application is unnecessary for the claim to be ripe because it is entirely irrelevant to whether the zoning interpretation was properly or illegally issued. In every case that could be located arising from the factual circumstances in this case, no variance application was required as a prerequisite to federal litigation attacking the determination that the proposed use was not allowed at all

In *Congregation Kollel, Inc. v. Township of Howell, N.J.* ("*Kollel*"), 2017 WL 637689 (D.N.J. 2017), the Congregation "sought a land use permit. . . to build and operate a Jewish education facility [and] Defendants denied Plaintiffs' application, allegedly on the grounds that the type of facility which Plaintiffs seek to erect is not permitted under the Township's Zoning Ordinance." *Id* at *1. The Township moved to dismiss claiming that the Congregation's RLUIPA and related claims would not be ripe until a variance application was filed and denied. In denying the motion, the Court held as follows:

> The Board rendered a definitive decision that Plaintiffs' proposed use of an "Educational Facility" is not a permitted use. On that issue, no further development of the factual record is necessary, since the Board considered substantial evidence and came to its conclusion that Plaintiffs' proposed use of the Ford Property is inconsistent with the Zoning Ordinance. . . Indeed, in asking Plaintiffs to apply for a variance, the Board would not be developing additional factual record on that already-decided issue. Instead, the variance process,

> in this case, would only seek to determine whether Plaintiffs'
> proposed use could be permitted by the Board <u>to depart from the
> Ordinance's requirements</u>. . . . Accordingly, I find that no further
> record is necessary.

*Id.* at *10 (emphasis added).

The *Kollel* Court properly held that the ZBA interpretation was final as to what was permitted under the applicable zoning and that a variance application would not provide any additional information because it would be limited to establishing whether there could be a *departure* from the applicable zoning, and would develop no further factual information as to whether the proposed use was allowed.

The identical fact pattern and motion to dismiss was adjudicated in *Khal Anshei Tallymawr, Inc. v. Township of Toms River, New Jersey*, 2021 WL 5757404 (D.N.J. 2021) in which an interpretation was made by the ZBA that the proposed use was not a permitted use under the applicable zoning. The Court denied the motion to dismiss on ripeness and finality grounds:

> Because the Board already found the proposed use was prohibited
> in the proposed zone, this is not a case where a variance application
> would have clarified the record. . . Rather, a variance application
> would serve to determine whether the Board would permit Plaintiff's
> application to "depart from the [Regulations'] requirements." *See
> Congregation Kollel,* 2017 WL 637689 at *10. <u>Thus, Plaintiff's as-
> applied claims seeking damages are ripe for review.</u>

*Id.* at *7 (emphasis added).

The identical set of circumstances was presented in *Bais Brucha Inc. v. Township of Toms River, New Jersey*, 2024 WL 863698 (D.N.J. 2024) where the ZBA held that a house of worship was not a permitted use in a particular zone and that such decision was ripe for review in an as-applied challenge without the necessity of a variance application. *Id.* at *6.

11

The Third Circuit cases cited do not conflict with any decisions in the Second Circuit. Since no Second Circuit cases have arisen involving these specific facts and circumstances, this Court should follow the Third Circuit cases and establish the proper and appropriate precedent in this Circuit as well. The Court should deny the Motion to Dismiss on claims of lack of finality and ripeness.

## POINT III

### PLAINTIFF STATES A FREE EXERCISE CLAIM

Defendants assert that Plaintiff fails to state a free exercise claim because supposedly the ZBA interpretation is neutral and generally applicable. (Def. Mem. at 13). This and the other similar statements made on pages 13 and 14 of Defendants' Memorandum are generalized empty words bereft of any factual context or actual meaning. The simple truth is that the Planning Board and subsequently the ZBA were handed a detailed Memorandum of Law explaining exactly why the Yeshiva's summer educational use was religious in nature. The Planning Board and later the Zoning Board were both informed of the *Talmud Torah* case which is precisely on point, and which expressly held that what the Defendants did in this case was done previously in the Town of Wawarsing and was just as illegal there as it is here.

It is frankly absurd and a waste of this Court's time for Defendants to allege that the ZBA interpretation was somehow neutral. It specifically rejected as a religious use, religious education, something which is absolutely fundamental to religious use. The notion that a determination by the ZBA local zoning board that religious educational use is not religious is inherently neutral is better stated as inherently nonsensical.

And there is no basis for attempting to morph this into a debate about whether secular camps are allowed in some zoning districts but not others. Def. Mem. at 14. Religious use includes

education, and it is an obvious violation of the free exercise clause for a municipality to "interpret" something as being non-religious which is fundamental and core to religious exercise. The ZBA's refusal to follow *Talmud Torah* and deem a religious educational use to be non-religious is self-evidently a free exercise violation.

<div align="center">

**POINT IV**

**A COGNIZABLE EQUAL PROTECTION CLAIM IS STATED**

</div>

The essence of the equal protection claim is that all other religious uses and places of worship are allowed in every single zoning district in the Town. The only one that is prohibited is the Yeshiva's proposed religious educational use which is precluded by the ZBA interpretation and the refusal to follow *Talmud Torah*. Since the ZBA interpretation prohibits the Yeshiva's proposed summer educational use it treats the Yeshiva's proposed religious educational use differently than all other religious uses. In other words, the t he ZBA interpretation favors other religious uses over the Yeshiva's proposed Orthodox Jewish religious educational use and discriminates against the Yeshiva's proposed religious educational use. This is a straightforward denial of equal protection of the laws. Accordingly, the Motion to Dismiss should be denied.

<div align="center">

**CONCLUSION**

</div>

For all of the foregoing reasons, the Motion to Dismiss should be denied.

Dated: Haverstraw, New York
      July 7, 2025

<div align="right" style="margin-right:30%">

SBarshovLaw PLLC


*/s/Steven Barshov*_____
Steven Barshov
20 Lagoon Lane
Haverstraw, New York 10927
917-886-4328
sb@sbarshovlaw.com

</div>

<div align="center">

13

</div>

Case 7:24-cv-08477-CS    Document 25    Filed 08/07/25    Page 1 of 14

UNITED STATES OF DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YESHIVA OHR SHRAGA VERETZKY,

                          Plaintiff,

        -against-

TOWN OF HIGHLAND ZONING BOARD OF
APPEALS and TOWN OF HIGHLAND,

                          Defendants.

Docket No. 24-cv-08477 (CS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**SOKOLOFF STERN LLP**
*Attorneys for Defendants*
179 Westbury Avenue
Carle Place, NY 11514
(516) 334-4500
File No. 240690LI

*of Counsel:*
        Leo Dorfman

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................... ii

ARGUMENT ........................................................................................................................ 1

    I. Plaintiff's Claims Are Not Ripe ................................................................................. 1

        A. The Zoning Board Interpretation Does Not Constitute A Final Decision ......................... 2

        B. The ZBA Interpretation Did Not Inflict Any Actual, Concrete Injury ............................... 3

        C. Plaintiff Has Not Demonstrated and Cannot Demonstrate Futility ..................................... 3

    II. Plaintiff Fails to State a Free Exercise Claim .......................................................... 6

    III. Plaintiff Fails to State an Equal Protection Claim ................................................. 8

CONCLUSION....................................................................................................................... 9

Case 7:24-cv-08477-CS   Document 25   Filed 08/07/25   Page 3 of 14

## TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*835 Hinesburg Rd., LLC v. City of S. Burlington,*
    2023 WL 7383146 (2d Cir. Nov. 8, 2023) ................................................................. 5

*Bartels v. Inc. Village of Lloyd Harbor,*
    97 F. Supp. 3d 198 (E.D.N.Y. 2015) ......................................................................... 8

*Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, N.Y.,*
    111 F. Supp. 3d 459 (S.D.N.Y. 2015) ....................................................................... 7

*BMG Monroe I, LLC v Vil. of Monroe,*
    93 F4th 595 (2d Cir 2024) ................................................................................... 1, 5

*Brandon v. Royce,*
    102 F.4th 47 (2d Cir. 2024) ...................................................................................... 6

*Brown v. City of Oneonta, N.Y.,*
    221 F.3d 329 (2d Cir.1999) ....................................................................................... 7

*BT Holdings, LLC v. Village of Chester,*
    2016 WL 796866 (S.D.N.Y. Feb. 23, 2016) .............................................................. 2

*C. Rabbinical Cong. of U.S. & Canada v. New York City Dept. of Health & Mental Hygiene,*
    763 F.3d 183 (2d Cir. 2014) ...................................................................................... 6

*Donovan Realty, LLC v. Davis,*
    2009 WL 1473479 (N.D.N.Y. May 27, 2009) ........................................................... 1

*Ferncliff Cemetery Assn. v. Town of Greenburgh, New York,*
    834 Fed. Appx. 665 (2d Cir. 2021) ........................................................................... 4

*Kravitz v. Purcell,*
    87 F.4th 111 (2d Cir. 2023) ...................................................................................... 6

*Mills Pond Group, LLC v. Town of Smithtown, NY,*
    2025 WL 1720472 (2d Cir. June 20, 2025) ............................................................... 1

*Missere v. Gross,*
    826 F. Supp. 2d 542 (S.D.N.Y. 2011) ....................................................................... 4

*Murphy v. New Milford Zoning Commn.,*
    402 F.3d 342 (2d Cir. 2005) ................................................................................. 3, 4

*Rehab. Support Services, Inc. v. Town of Esopus, New York,*
    226 F. Supp. 3d 113 (N.D.N.Y. 2016) ........................................................................... 2

*S&R Dev. Estates, LLC v. Bass,*
    588 F. Supp. 2d 452 (S.D.N.Y. Sept. 26, 2008) ............................................................ 2

*Sunrise Detox V, LLC v. City of White Plains,*
    769 F.3d 118 (2d Cir. 2014) .................................................................................... 3, 4

*Village Green At Sayville, LLC v. Town of Islip,*
    43 F.4th 287 (2d Cir. 2022) ........................................................................................ 5

*W.D. v. Rockland Cnty.,*
    521 F. Supp. 3d 358 (S.D.N.Y. 2021) ......................................................................... 6

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,*
    473 U.S. 172 (1985) .................................................................................................... 1

Case 7:24-cv-08477-CS    Document 25    Filed 08/07/25    Page 5 of 14

## ARGUMENT[1]

### I.   PLAINTIFF'S CLAIMS ARE NOT RIPE

Under well-established Second Circuit case law, and the case law of this Court, Plaintiff's claims are not ripe and will not be ripe until Plaintiff obtains a final decision from the Planning Board, where its application is still live and pending, and—if that application is denied on the basis of a zoning classification—until the Plaintiff makes "at least one meaningful application for a variance." The ZBA interpretation is merely an interim step in the Town's land use process—it is not a final decision, and it cannot substitute for a final decision.

Land use claims are not ripe until the government "has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019). "A final decision is 'a definitive position on the issue that inflicts an actual, concrete injury.' *Donovan Realty, LLC v. Davis*, No. 07-CV-905 (DRH), 2009 WL 1473479, at *3 (N.D.N.Y. May 27, 2009) (quoting *Williamson*, 473 U.S. at 193). "In practice, this means that 'ripeness is conditioned on [the] property owner submitting at least one meaningful application for a variance.'" *Mills Pond Group, LLC v. Town of Smithtown*, NY, No. 24-3007-CV, 2025 WL 1720472, at *1 (2d Cir. June 20, 2025) (quoting *BMG Monroe I, LLC v Vil. of Monroe*, 93 F4th 595, 601 (2d Cir 2024) (alterations in original). As Plaintiff has not received a final decision that inflicted an actual, concrete injury, its claims are not ripe and should be dismissed.

---

[1] Plaintiff's Opposition Brief opens with a reference to settlement discussions, which is hardly appropriate for public filing, much less as part of substantive briefing, and has no relevance to the arguments here. As we advised Plaintiff's counsel, the Planning Board and ZBA stand willing to consider Plaintiff's still-pending application and any further applications. Plaintiff ought to follow the regular, available land use processes, in the ordinary course. Of course, we are also open to further discussions and anticipate having a call with Plaintiff's counsel in the coming days.

1

### A.  The Zoning Board Interpretation Does Not Constitute A Final Decision

Plaintiff does not and cannot cite any Second Circuit cases that would support ripeness under the facts presented here. Citing district court cases from New Jersey—outside this Circuit— Plaintiff argues that the ZBA's interim interpretation of the relevant zoning classification is a final decision. But this argument runs contrary to well-established case law in this Circuit and, indeed, this very Court. As Your Honor correctly wrote in *BT Holdings, LLC v. Village of Chester* in 2016—in a decision affirmed by the Second Circuit Court of Appeals—"**An opinion issued regarding the zoning classification for a given property is not a substitute for a final decision rendered as to a development plan.**" *BT Holdings, LLC v. Village of Chester*, No. 15-CV-1986 (CS), 2016 WL 796866, at *4 (S.D.N.Y. Feb. 23, 2016), *aff'd,* 670 Fed. Appx. 17 (2d Cir. 2016) (unpublished) (citing *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 462 (S.D.N.Y. Sept. 26, 2008)); *see also Rehab. Support Services, Inc. v. Town of Esopus, New York*, 226 F. Supp. 3d 113, 126 (N.D.N.Y. 2016) ("[T]he Court agrees with Defendants that the ZBA's classification determination does not constitute a final decision regarding Plaintiff's proposed residence. The Complaint does not allege that Plaintiff applied for a building permit, a use variance, or any other form of relief before bringing this action. Such actions are necessary before a decision can be considered final.")  This case presents no reason to deviate from well-established principles.

Plaintiff argues a property owner who receives a ZBA interpretation that a proposed use is not permitted should not be required to go through the remainder of the permit application process, *see* Pl. Brief at 8, but that is *precisely* what the law in the Second Circuit requires, and Plaintiff does not to distinguish this case from *BT Holdings* or any other case in this Circuit that holds a Plaintiff needs to obtain a final decision and "make at least one meaningful application for a variance." As this Court  further wrote in *BT Holdings, LLC v. Village of Chester*, "[e]ven where the initial municipal authority has rejected a developer's proposal, courts within this Circuit have

2

held that the developer must submit the plan to the relevant governing authority for a determination as to whether a variance is appropriate." *BT Holdings, LLC*, WL 796866, at *5 (citing *S&R Dev. Estates*, 588 F. Supp. 2d at 462). The ZBA interpretation merely provided a zoning classification interpretation, based on Plaintiff's intended use as then presented to the ZBA. The Planning Board must have an opportunity to consider the application in light of the interpretation. And if the application is denied, Plaintiff must make a meaningful application for a variance before its claims are ripe for adjudication in this venue.

### B. The ZBA Interpretation Did Not Inflict Any Actual, Concrete Injury

Plaintiff's claims are unripe due to the lack of an actual, concrete injury. *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014) ("[I]n light of administrative avenues for relief outlined in the zoning ordinance in the commissioner's letter, we conclude that neither of these acts give rise to an injury independent of the city's ultimate land-use decision."); *Murphy v. New Milford Zoning Commn.*, 402 F.3d 342, 352 (2d Cir. 2005) ("Bypassing the Zoning Board of Appeals and its hearing processes, which were statutorily designed for exploration and developments of these sorts of issues, leaves [Plaintiff]'s alleged injuries ill-defined.").

Plaintiff does not plausibly allege any actual or concrete injury independent of the Town's land-use decision, and any allegations of harm are speculative and conclusory. Moreover, while Plaintiff argues the only possible outcome is denial by the Planning Board, it cannot allege that further review by Village agencies, including a use variance, would not potentially relieve any alleged injuries.

### C. Plaintiff Has Not Demonstrated and Cannot Demonstrate Futility

There is no basis for Plaintiff's assertion that it would be futile to engage in any further Planning Board process. *Murphy*, 402 F.3d at 349 (stating that an application to a ZBA is not

3

required "when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied.").

Pursuant to the Town of Highland Zoning Code ("Town Code") §190-66, an applicant whose permit has been denied may request either an area variance or use variance. *See generally,* §190-66.[2] The power to grant variances is vested in the ZBA pursuant to Town Code §190-66 (2)(a). Under subsection (2)(b), "No such use variance shall be granted by a Board of Appeals without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship." Town Code §190-66 (2)(b). To prove unnecessary hardship, "the applicant shall demonstrate to the Board of Appeals that for each and every permitted use under the zoning regulations for the particular district where the property is located: (1) The applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) That the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) That the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) That the alleged hardship has not been self-created." *Id.*

As provided in the Town Code, the ZBA has the discretion to grant variances, and therefore Plaintiff cannot demonstrate futility based on a lack of ZBA discretion. *Missere v. Gross*, 826 F. Supp. 2d 542, 555 (S.D.N.Y. 2011) (holding the futility exception "inapplicable" where the ZBA had discretion to grant a variance "from the terms of the Village's zoning code."); *Ferncliff Cemetery Assn. v. Town of Greenburgh, New York*, 834 Fed. Appx. 665, 667 (2d Cir. 2021)(unpublished) (holding that plaintiff has not demonstrated futility because it did not allege that "the entities charged with approving use variances lack discretion to grant the relief it

---

[2] The Court can take judicial notice of the Town Code, which is publicly available at https://ecode360.com/HI2985.

4

seeks…"); *Sunrise Detox V, LLC*, 769 F.3d at 121 ("The district court also concluded that the futility exception to the final determination requirement did not apply because [plaintiff] had shown neither that the Board of Appeals lacked jurisdiction to grant a variance … nor that the Board of Appeals had 'dug in its heels…'").

Plaintiff also cannot plausibly allege either the ZBA or Planning Board have "dug in their heels" and made clear such applications will be denied as they have not yet been heard on the issue. In fact, the interpretation itself states that "[w]hile the use of property as a 'Children's Camp' is expressly prohibited in the Town of Highland, the final determination upon this application shall be made by the Planning Board." *See* ECF Doc. No. 12-25.

While the R-2 zoning distrct does not permit children's camps, Plaintiff can still seek a use variance from this restriction. Its failure to acknowledge the possibility ignores the "give-and-take negotiation that often resolves land use problems." *Village Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287, 297 (2d Cir. 2022). Plaintiff's argument that the only possible outcome would be denial before the planning board completely ignores the ZBA's power to grant variances and again ignores the negotiation process inherent in land use matters. *BMG Monroe I, LLC*, 93 F.4th at 603-04 ("mere doubt that [a variance] application would be [granted] is insufficient to establish futility."). A variance application could result in development that is both permissible under the law and acceptable to the parties. "But that is just it—the court does not yet know." *835 Hinesburg Rd., LLC v. City of S. Burlington*, 2023 WL 7383146, at *3 (2d Cir. Nov. 8, 2023).

Plaintiff's argument that nothing else is available to further inform the factual record outright ignores the use variance process available to Plaintiff. Plaintiff argues that a variance application does not provide additional factual information on whether the proposed religious educational use is permitted under the Town Code, but the opposite is true. A use variance

5

application gives an applicant a chance to show that the "applicable zonings and restrictions have caused unnecessary hardship." *See* Town Code, § 190-66(2)(b); *see supra*, Point I(C). A record on unnecessary hardship, one way or the other, will help to complete the factual record.

## II.    PLAINTIFF FAILS TO STATE A FREE EXERCISE CLAIM

Plaintiff fails to state a free exercise claim as both the zoning prohibition in question and the ZBA interpretation are facially neutral with respect to religion. "[A] plaintiff may carry the burden of proving a free exercise violation…by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Brandon v. Royce*, 102 F.4th 47, 55 (2d Cir. 2024) (quoting *Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023)). "A law is not facially neutral 'if [the text] refers to a religious practice without a secular meaning discernable from the language or context.'" *W.D. v. Rockland Cnty.*, 521 F. Supp. 3d 358, 398 (S.D.N.Y. 2021), *rev'd in part, vacated in part sub nom. M.A. on behalf of H.R. v. Rockland Cnty. Dept. of Health*, 53 F.4th 29 (2d Cir. 2022). "A law is not generally applicable if it is 'substantially underinclusive' in that it regulates religious conduct, but does not regulate secular conduct that is 'at least as harmful to the legitimate government interests purportedly justifying it.'" *Id.* at 402 (quoting *C. Rabbinical Cong. of U.S. & Canada v. New York City Dept. of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014)). Plaintiff has failed to allege that the zoning prohibition on children's camps was not facially neutral and not generally applicable. It further fails to allege that the ZBA interpretation of the Town Code was not applied in a religiously neutral way.

The ZBA interpretation did not reject Plaintiff's use on any religious grounds. At no point did the interpretation categorize Plaintiff's intended use as "religious education," the term was used only to reflect Plaintiff's desired categorization of the use. *See* ECF Doc. No. 12-25, pp. 1-3. The ZBA also did not interpret Plaintiff's intended use as non-religious. In interpreting the

6

intended use by Plaintiff, the ZBA reviewed the March 20, 2023 memo submitted by the Laberge Group, in addition to the plans provided by Plaintiff on June 20, 2024, which included sketch plans of the proposed construction. Based on the information provided by Plaintiff, specifically its description that "In the summer months, Hasidic young adults, children, and families will come to the [Subject Property] to study Torah, communicate and study with their Rabbi, deepen their religious faith, and connect on a religious level with others in their religious community," in conjunction with later statements that "the dormitories would house only children between ninth and twelfth grades, would only house them for the summer months, the Project would provide recreational and educational facilities for said children, and that parents will not be permitted to stay on site," the ZBA determined that Plaintiff's use "intended for the 'recreation and education of youth,' i.e., a summer camp, after or near the conclusion of the official school year..." The interpretation further relied upon Plaintiff's own categorization of the property on its website as a "Camp."

The ZBA acknowledged the application had religous aspects (mikvah and shul), but found these were "ancillary" to the primary use of the property, which was most accurately interpreted as a summer children's camp. The ZBA clarified that "the presence of such clearly religious structures and uses do not render the primary, explicitly prohibited use [a children's summer camp] permissible." The ZBA explicitly stated that a children's camp, whether religious or secular in nature, is a prohibited use in the Town of Highland. *See* ECF Doc. No. 12-25.

Neither the zoning classificiation nor the ZBA interpretation target any religious practice, nor favor non-religious practice over religious. As such, the zoning prohibition and the ZBA's interpretation are facially neutral and generally applicable, and Plaintiff has failed to state a violation of free exercise under the Fourteenth Amendment.

### III.    PLAINTIFF FAILS TO STATE AN EQUAL PROTECTION CLAIM

Plaintiff fails to allege an equal protection violation based on an express classification, intentional discrimination, or discriminatory animus. *Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 486 (S.D.N.Y. 2015) (citing *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir.1999) (asserting that a plaintiff can state an equal protection violation by alleging that the ZBA interpretation "expressly classifies on the basis of religion;" that the interpretation has been applied in an "intentionally discriminatory manner;" or that the ZBA interpretation was "motivated by discriminatory animus.").

As the ZBA interpretation does not expressly classify Plaintiff's use on the basis of religion, and is therefore facially neutral, Plaintiff cannot establish an equal protection violation on the first theory.

Neither does Plaintiff allege a violation of equal protection based on intentional discrimination or by discriminatory animus. Plaintiff makes conclusory allegations that the ZBA interpretation treats its proposed educational use differently than all other religious uses, and that the interpretation "favors other religious uses over the Yeshiva's proposed Orthodox Jewish religious education use..." but fails to allege any other religious or non-religious use favored by the Town. *See* Pl. Brief at 13. Plaintiff further fails to allege any intentional discrimination or discriminatory animus. Plaintiff's claims are vague, conclusory, and fail to allege a violation of Equal Protection under the Fourteenth Amendment and therefore must be dismissed.

Moreover, to the extent Plaintiff's conclusory allegation of Defendants "participat[ion] in a campaign designed to discourage plaintiff from engaging in activities protected by the [Fourteenth] Amendment can be construed as asserting a Section 1983 conspiracy claim, such a claim is barred by the intra-corporate conspiracy doctrine." *Bartels v. Inc. Village of Lloyd Harbor*,

8

97 F. Supp. 3d 198, 216 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. Appx. 54 (2d Cir. 2016)(unpublished).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request this Court grant their motion and dismiss this action in its entirety with prejudice, together with such and other relief ass this Court deems just, equitable, and proper.

Date:  Carle Place, New York
       August 7, 2025

SOKOLOFF STERN LLP
*Attorneys for Defendants*

By:   Leo Dorfman
      179 Westbury Avenue
      Carle Place, NY 11514
      (516) 334-4500
      Our File No. 240690LI

9

**WORD COUNT CERTIFICATION**

This Reply  Memorandum in further support of Defendants' Motion to Dismiss Plaintiffs'

Amended Complaint is 2,760 words, exclusive of the caption and signature block, and therefore

complies with the word count limit set forth in Local Rule 7.1(c) of the Joint Local Rules of

S.D.N.Y. and E.D.N.Y.

Dated:  August 7, 2025
          Carle Place, New York

                                   SOKOLOFF STERN LLP


                                   _____
                                        Leo Dorfman

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
YESHIVA OHR SHRAGA VERETZKY,

                                 Plaintiff,

       - against -

TOWN OF HIGHLAND ZONING BOARD OF
APPEALS and TOWN OF HIGHLAND,

                               Defendants.
-------------------------------------------------------------x

**OPINION & ORDER
ON MOTION TO DISMISS**

No. 24-CV-8477 (CS)

Appearances:

Steven Barshov
SBarshovLaw PLLC
Haverstraw, New York
*Counsel for Plaintiff*

Brian S. Sokoloff
Leo Dorfman
Sokoloff Stern LLP
Carle Place, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' motion to dismiss.  (ECF No. 22.)  For the foregoing

reasons, the motion is GRANTED.

## I.     BACKGROUND

      For the purposes of the motion, I accept as true the facts, but not the conclusions, set forth

in Plaintiff's Amended Complaint.  (ECF No. 12 ("AC").)[1]

---

[1] As noted below, for a motion under Federal Rule of Civil Procedure 12(b)(6), I accept the facts in the AC as true, and for a motion under Rule 12(b)(1), I accept the facts in the AC as true to the extent they are uncontroverted.

### A.    Facts

The parties to this dispute differ as to the application of the Town of Highland (the "Town") Zoning Code, under which a "place of worship" – a term the Code does not define – is a use that requires a special use permit in any zone, (*id.* ¶¶ 20-21), but a "children's camp" is not permitted anywhere in the Town, (*id.* ¶ 91).

Plaintiff Yeshiva Ohr Shraga Veretzky ("Plaintiff" or the "Yeshiva") is a New York religious corporation that provides Hasidic Orthodox Jewish religious education through its schools and facilities in Brooklyn, New York and Lakewood, New Jersey. (*Id.* ¶¶ 8, 14, 113.) Religious education is one of the most important elements of Orthodox Judaism, and there is no separation between religion and education for its adherents. (*Id.* ¶¶ 27-28.) As such, the Yeshiva leased facilities in Sullivan County to provide a place where its Rabbis and students could come together and continue their religious education in the summer. (*Id.* ¶ 14.) During the non-summer months, the Yeshiva rented property for religious retreats and other activities. (*Id.* ¶ 15.) At some point, the Yeshiva purchased property in the Town formerly owned by 211 Mail Road LLC (the "Property"), which had been operating in a Residential Agricultural R-2 Zoning District as a commercial hotel pursuant to a special use permit issued by the Town Planning Board (the "Planning Board"). (*Id.* ¶¶ 2, 17, 19.)

In February 2023, the Yeshiva filed an application with the Planning Board for a special use permit, seeking to use the Property's existing buildings and construct new buildings for religious education during the summer and religious retreats in the non-summer months. (*Id.* ¶¶ 18, 23.) Specifically, the application sought to construct four new single-story buildings containing: (1) a Shul (synagogue) area for prayer and conducting religious services for those at the Property; (2) a Mikva (ritual bath); (3) spaces for religious lectures and study, prayer, and

2

meetings and gatherings; and (4) sleeping accommodations for thirty-two students.  (*Id.* ¶ 24.)  In the summer, teenagers and young adults would reside at the Property and study Talmud, communicate and study with their Rabbis, deepen their religious faith, and connect on a religious level with others in the community.  (*Id.* ¶ 25.)  The same Rabbis who teach the students during the non-summer months would provide the religious education to them and the younger children of the Rabbis and the staff.  (*Id.* ¶ 26.)

At its meeting on March 22, 2023, the Planning Board acknowledged receipt of the Yeshiva's application.  (*Id.* ¶ 34.)  Before the meeting, the Yeshiva received a memorandum dated March 20, 2023 addressed to the Planning Board's counsel, Michael Davidoff, from Kevin Schwensfeier, Senior Planner at the Laberge Group, an environmental and planning consultant to the Planning Board.  (*Id.* ¶¶ 34-35.)  The memo stated that:  (1) religious retreat is not specifically listed in the Town Zoning Code's Schedule of Use Regulations and is therefore a prohibited use; (2) dormitory is not specifically listed in the Schedule of Use Regulations and is therefore a prohibited use; (3) Mikvah is not specifically listed in the Schedule of Use Regulations but is a common element of a "place of worship," which is listed as a Special Use Permit; and (4) multi-purpose building is not specifically listed but is a common element of a "place of worship," which is listed as a Special Use Permit.  (*Id.* ¶ 35.)  Counsel for the Yeshiva requested permission to respond to the memo and submitted its own Memorandum of Law to the Planning Board on April 27, 2023.  (*Id.* ¶¶ 36, 38.)  That memo explained that religious education is part of religious use under New York law; noted that the Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits units of local government from applying zoning and land use laws to unduly burden the exercise of religion; and provided case law, including *Yeshiva Talmud Torah Ohr Moshe v. Zoning Board of Appeals*, 97 N.Y.S.3d 737 (App.

Case 7:24-cv-08477-CS    Document 26    Filed 03/05/26    Page 4 of 29

Div. 3d Dep't 2019). (*Id.* ¶¶ 37, 39.)[2] The memo further explained why the Yeshiva's proposed uses amounted to religious uses authorized for a place of worship. (*Id.* ¶ 39.)

The matter was placed on the agenda for the Planning Board's June 28, 2023 meeting. (*Id.* ¶ 40.) Before the meeting, the Laberge Group and the Town Engineer submitted additional comments, in which they confirmed that religious education and religious retreat were encompassed within the special use permit for a place of worship. (*Id.* ¶¶ 40-41.) Specifically, the letter from the Town Engineer stated that "Hotel/Motel is listed as Special Use Permit and is required"; "Multi-Purpose building is not specifically listed in R2 but is part of Hotel/Motel and part of Special Use Permit"; and "Place of Worship is listed in R2 and require[s] a Special Use Permit from the Planning Board [which] would also include the Mikvah, Religious Retreat, and religious education." (ECF No. 12-6 at 4; *see* AC ¶ 41.1.) The Town Engineer explained that the project could be considered by the Planning Board as a combination of Special Use Permits. (AC ¶ 41.2.) The Laberge Group also submitted a comment, in which it acknowledged that "Religious Retreat may be included in the generic class of 'Place of Worship' with additional information for the Planning Board to determine." (ECF No. 12-6 at 8; *see* AC ¶ 42.)

At a Planning Board meeting on August 23, 2023, the Town Engineer again confirmed that religious education was a use included within "place of worship." (AC ¶ 43.) Neither the Planning Board nor its counsel contradicted or questioned this statement. (*Id.*) Fuller Engineering then prepared and submitted revised plans on behalf of the Yeshiva, which did not change the proposed religious educational use of the Property. (*Id.* ¶ 44.)

---

[2] *Yeshiva Talmud Torah*, which was brought under Article 78, involved a proposal for similar live-in summer religious studies for students, and the Court concluded that the proposed facilities fell within the definition of "place of worship." *See* 97 N.Y.S.3d at 739-40.

4

At the October 25, 2023 Planning Board meeting, the Town Engineer submitted another comment letter, repeating the same language regarding the proposed uses of the Property. (ECF No. 12-8 at 3-5; *see* AC ¶¶ 45- 46.) The minutes state that one Planning Board member received clarification that the application was looking to change the existing special use of hotel/motel/restaurant to a religious place of worship. (AC ¶ 47; ECF No. 12-8 at 2.) At that meeting, alternate Planning Board member and candidate for Town Board, Laura Burrell, sat in for an absent Planning Board member. (AC ¶ 45.) She was later elected to the Town Board, along with two other new members. (*Id.* ¶ 49.)

On November 17, 2023, the Yeshiva submitted revised documents to the Planning Board, including another memo explaining the proposed religious use of the Property during the summer and non-summer months. (*Id.* ¶ 50.) The memo provided details about how each of the buildings on the Property would be utilized and how each use would contribute to the religious use of the Property. (*Id.* ¶ 52.) It reiterated that groups would come to the Property in the summer for religious programs, remain on site along with staff, and sleep at accommodations on site. (*Id.*) The Yeshiva's engineer, Mr. Fuller, also submitted a Stormwater Pollution Prevention Plan and a letter responding to comments from the Town Engineer. (*Id.* ¶¶ 53-54.)

On November 29, 2023, the Planning Board held another meeting, at which it stated that it hoped to schedule a public hearing at its December meeting. (*Id.* ¶ 56.) Before the December meeting, Mr. Fuller successfully worked with the Town Engineer to address any open technical issues. (*Id.* ¶ 57.) At the December 20, 2023 meeting, Mr. Fuller confirmed that the technical issues had been resolved and requested that the Planning Board schedule a public hearing. (*Id.* ¶ 58.) At least one Planning Board member expressed hostility to Mr. Fuller about the Yeshiva,

5

including by accusing its Rabbi of being prejudiced, although this exchange is not included in the Planning Board minutes. (*Id.* ¶ 60.)

On January 2, 2024, the new members of the Town Board and the Town Supervisor were sworn in, and stated that they were interviewing candidates for Town Attorney. (*Id.* ¶ 61.) On January 4, 2024, the Town Board held a special meeting to appoint an attorney for the Town. (*Id.* ¶ 62.) The Town Board Supervisor stated that the Board was looking for an at-will attorney so that the Board members could change out the attorney if they "d[id] not like the way that it's going," including if they felt like the attorney did not have the skill set, was biased, or was not representing the Town the way the Board wanted. (*Id.* ¶ 64.) The Town Board voted to retain Steven Mogel, with whom members of the Town Board had previously worked, as counsel for the Town, including the Planning Board and the Zoning Board of Appeals ("ZBA"). (*Id.* ¶¶ 62-63, 65.)

On January 12, 2024, the Yeshiva's counsel wrote to the Planning Board in response to reports that Board members had questioned whether the application was for religious use. (*Id.* ¶ 66.) The Yeshiva's counsel reminded the Planning Board that these matters had been addressed in a memo from April 2023 and resubmitted that memo. (*Id.*) Counsel also responded to the allegations that the Yeshiva's Rabbi was prejudiced, warning the Planning Board that such negative comments suggested impermissible prejudgment of the application. (*Id.* ¶ 68.)

Another meeting was held on January 24, 2024, at which time Planning Board members asked the Yeshiva's counsel questions about the proposed religious use of the Property. (*Id.* ¶¶ 70, 72.) Counsel restated that the Property would be used for religious education of the Yeshiva's students and the children of the Yeshiva's staff during the summer and as a religious retreat during the rest of the year. (*Id.* ¶ 72.) Nevertheless, the minutes from this meeting

6

incorrectly state that the application had not specifically stated the use intended. (*Id.* ¶ 73.) The Town Attorney, Mr. Mogel, who was present at the meeting, suggested that the Planning Board refer the application to the ZBA for an interpretation as to whether the Yeshiva's proposed use was religious. (*Id.* ¶ 74.) Plaintiff alleges that this was prearranged because the Planning Board immediately voted to refer the matter to the ZBA without discussion. (*Id.*) The meeting minutes again incorrectly summarized this exchange, as they state that Mr. Mogel said that the applicant (that is, the Yeshiva) could apply to the ZBA for a hearing, when he actually said that the Planning Board could ask the ZBA for an interpretation (which it did). (*Id.* ¶ 75.)

In light of the error in the meeting minutes, on March 5, 2024 the Yeshiva's counsel wrote to the Planning Board and ZBA to explain that the Planning Board voted to refer the Yeshiva's special permit application to the ZBA for interpretation of the Town Code and that the ZBA was required to take up the referral without an application from the Yeshiva. (*Id.* ¶ 76.) Despite this letter, the ZBA Secretary refused to place the matter on the ZBA agenda without such an application. (*Id.* ¶ 77.) Counsel wrote again to the Planning Board and ZBA on March 20, 2024, stating that, "My client will not be forced to create an administrative record that it is seeking a use interpretation when its position has consistently been that there is no ambiguity about its proposed religious use." (*Id.* ¶ 78.) That same day, Mr. Mogel confirmed that the Planning Board referred the matter to the ZBA for a use interpretation. (*Id.* ¶ 79.) The ZBA then took up the referral. (*Id.*)

On April 16, 2024, the Yeshiva appeared before the ZBA and counsel reiterated what had been stated in its April and November 2023 memos: that the law was clear that the Yeshiva's proposed uses were religious uses. (*Id.* ¶ 80.) The ZBA also received a statement from the United States Department of Justice ("DOJ") that discussed the elements of religious use as it

7

relates to RLUIPA, and was informed (although it is not clear by whom) that the Yeshiva's proposed summer religious educational use met the DOJ's criteria for religious use. (*Id.*) The ZBA scheduled a public hearing for May. (*Id.*)

At the May 21, 2024 ZBA meeting, the Yeshiva's counsel reiterated that its proposed uses were religious in nature and authorized as a place of worship. (*Id.* ¶ 81.) The minutes state that counsel defined "place of worship" as a place where religious uses are undertaken and as including "a full complex of religious uses," and Mr. Mogel confirmed that the cases that counsel cited defined "place of worship" in such broad terms. (*Id.* ¶ 82.) The minutes do not, however, accurately reflect the Yeshiva's counsel's answer regarding how the proposed use in the summer would be distinguished from a summer camp. (*Id.* ¶ 83.) The minutes state that counsel responded that the proposed uses "are not camps, retreats, or schools but are religious uses," (ECF No. 12-22 at 4), but Plaintiff alleges counsel had actually stated that the use would be religious education, and that is what defines the use rather than the fact that students reside there for the summer, (AC ¶ 83). The ZBA then opened the public hearing and instructed that comments should be confined to the issue of the proper interpretation of the use of the Property. (*Id.* ¶ 84.) Despite this instruction, the comments from the public did not address the interpretation issue and instead raised concerns regarding traffic and other similar matters. (*Id.*) Some members of the public also spoke out "forcefully" against the Yeshiva receiving the special use permit. (*Id.*) The Yeshiva's counsel argued that the concerns raised by the public would be addressed by the Planning Board and had nothing to do with the question of interpretation before the ZBA. (*Id.*) The ZBA did not engage in further discussion as to whether the proposed summer educational use would be a religious use that could be approved as a specially permitted place of worship. (*Id.* ¶ 85.)

8

Case 7:24-cv-08477-CS     Document 26     Filed 03/05/26     Page 9 of 29

At the June 20, 2024 meeting, the ZBA heard from the Yeshiva's Rabbi, who discussed in detail how the Property would be configured and used, including which groups of students would come to the Property, how many and what kind of staff would be present, and the physical arrangement of the Shul and other facilities. (*Id.* ¶¶ 86-87.) The ZBA tabled the matter of interpretation until its next meeting without making a motion directing the Town Attorney to prepare a resolution. (*Id.* ¶ 88.) On July 18, 2024, the ZBA's counsel handed the ZBA chair and members a previously prepared resolution, which was read aloud by the ZBA chair. (*Id.* ¶ 89.) The resolution stated that the proposed use of the Property in the summer was not religious, but was a children's camp, and therefore prohibited, under the Town Code. (*Id.* ¶ 91.) Immediately following the reading of the resolution, without giving the Yeshiva an opportunity to respond, the ZBA made a motion to adopt the resolution. (*Id.* ¶ 90.) Without discussion on the motion, the ZBA unanimously voted to adopt the resolution. (*Id.*) The ZBA interpretation was officially filed with the Town Clerk on August 9, 2024. (*Id.* ¶ 92.)

Plaintiff contends, without citation, that the Planning Board is required by law to follow the ZBA interpretation, and cannot issue a special use permit for a prohibited use. (*Id.* ¶ 93.) Thus, Plaintiff alleges that it is impossible for the Planning Board to grant the Yeshiva's application for a special use permit. (*Id.* ¶¶ 93-94.) Plaintiff also alleges that the ZBA's interpretation prevents the Yeshiva from providing religious education to its students at the Property during the summer. (*Id.* ¶ 104.) It has also forced the Yeshiva to expend funds to find an alternate location for religious educational facilities, pay carrying costs for the Property including real property taxes, and pay for expenses associated with the proceedings before the Planning Board and ZBA. (*Id.* ¶ 125.)

9

### B.    Procedural History

On November 7, 2024, Plaintiff filed its initial complaint, bringing claims for violations of RLUIPA, the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, the New York State Constitution, and 42 U.S.C. § 1985.  (ECF No. 1.)  Defendants filed their pre-motion letter in anticipation of their motion to dismiss on January 30, 2025.  (ECF No. 9.)  On February 27, 2025, the Court held a pre-motion conference, at which it granted Plaintiff leave to amend its complaint.  (*See* Minute Entry dated Feb. 27, 2025.)  On March 31, 2025, Plaintiff filed its AC, dropping the § 1985 claim.  (*See generally* AC.)  On July 29, 2025, the United States filed a statement of interest.  (ECF No. 19.)  The instant motion followed.

## II.    LEGAL STANDARDS

### A.    12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).[3]  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see Seljak v. Pervine Foods, LLC*, No. 21-CV-9561, 2023 WL 2354976, at *4 (S.D.N.Y. Mar. 3, 2023).  "The party invoking federal jurisdiction bears the burden of establishing" that it exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "In resolving a motion to dismiss under

---

[3] Unless otherwise noted, case quotations omit internal quotation marks, citations, alterations and footnotes.

Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," *Fountain v. Karim,* 838 F.3d 129, 134 (2d Cir. 2016), and "may refer to evidence outside the pleadings," *Makarova,* 201 F.3d at 113.

### B. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

11

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### III.    DISCUSSION

#### A.    Ripeness

Defendants argue the Court lacks subject matter jurisdiction over Plaintiff's claims because the claims are not ripe for adjudication, in that Plaintiff has not received a final decision on its special use permit application from the Planning Board and has not applied for a variance. (*See* ECF No. 23 ("Ds' Mem.") at 8-12.)  Plaintiff argues that going back to the Planning Board would be futile because the Planning Board cannot deviate from the ZBA interpretation, and that Plaintiff is not required to seek a variance in this case to have a final decision.  (*See* ECF No. 24 ("P's Opp.") at 9-12.)

Ripeness has both a constitutional and prudential dimension. *See 835 Hinesburg Rd., LLC v. City of S. Burlington*, No. 22-CV-58, 2023 WL 2169306, at *6 (D. Vt. Jan. 27, 2023), *aff'd*, No. 23-218, 2023 WL 7383146 (2d Cir. Nov. 8, 2023) (summary order), *cert denied*, 145 S. Ct. 138 (2024).  Thus, in the land-use context, some courts in this Circuit frame the ripeness inquiry as jurisdictional, *see Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293 (2d Cir. 2022) (reviewing whether court lacked subject matter jurisdiction on ripeness grounds); *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 121 (2d Cir. 2014) (describing ripeness as a jurisdictional inquiry and reviewing dismissal under 12(b)(1)); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) ("Ripeness is a jurisdictional inquiry."); *Londregan v. Town of E. Lyme*, 666 F. Supp. 3d 192, 198 (D. Conn. 2023) (reviewing for lack of subject matter jurisdiction and referring to ripeness as a jurisdictional inquiry), while

12

others frame it as prudential, *see BMG Monroe I, LLC v. Vill. of Monroe*, 93 F.4th 595, 600-01 (2d Cir. 2024) (describing question of ripeness of land-use claims as one of justiciability and noting that the prudential ripeness doctrine is "not, strictly speaking, jurisdictional"); *Martin v. Town of Simsbury*, 735 F. App'x 750, 751-52 (2d Cir. 2018) (summary order) (describing ripeness test set forth in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), *overruled in part on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019), as one of prudential ripeness); *Lubavitch of Old Westbury, Inc. v. Incorporated Vill. of Old Westbury*, No. 08-CV-5081, 2023 WL 9058143, at *6 (E.D.N.Y. Dec. 18, 2023) ("[T]he Court sees the ripeness issue as a prudential rather than a pure jurisdictional rule . . . ."), *report and recommendation adopted in part*, 2024 WL 656516 (E.D.N.Y. Feb. 16, 2024).

"'Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the judiciary. It prevents courts from declaring the meaning of law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003)). Prudential ripeness, on the other hand, asks whether "the case will be better decided later and [whether] the parties will . . . have constitutional rights undermined by the delay. It does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III." *Id.* But both doctrines are "concerned with whether a case has been brought prematurely," *id.* at 687, and prevent courts from entangling themselves in either abstract disagreements, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002), *abrogated on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019), or "'adjudications that may later

13

turn out to be unnecessary,'" *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 (quoting *Simmonds*, 326 F.3d at 357). Further, prudential ripeness is a justiciability doctrine, and thus, like questions of jurisdiction, may be addressed at the threshold. *See BMG Monroe I, LLC*, 93 F.4th at 600-01.

"Before any land-use dispute – whether brought as a takings, due process, [RLUIPA, free exercise,] or equal protection claim – is ripe for review, plaintiffs must satisfy a finality requirement." *Ferncliff Cemetery Ass'n v. Town of Greenburgh*, No. 18-CV-6411, 2019 WL 6878560, at *6 (S.D.N.Y. Dec. 17, 2019), *aff'd*, 834 F. App'x 665 (2d Cir. 2021) (summary order); *see Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 444 (2d Cir. 2008) (summary order); *Murphy*, 402 F.3d at 348. The finality requirement demands that the "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n*, 473 U.S. at 186. Although initially developed in the context of takings, the *Williamson County* finality requirement has been extended to First Amendment, equal protection, due process, RLUIPA, and discrimination claims in the land-use context. *See Vill. Green at Sayville, LLC*, 43 F.4th at 294 ("[T]he final-decision requirement not only remains good law but has been expanded . . . to zoning challenges based on substantive due process; First Amendment rights of assembly and free exercise; the Religious Land Use Institutionalized Persons Act of 2000; a state law analogue to RLUIPA, as well as to zoning challenges under the [ADA] based on allegations of intentional discrimination."); *Sunrise Detox V, LLC*, 769 F.3d at 123 (applying finality requirement to discrimination claims); *Dougherty*, 282 F.3d at 88-89 (applying requirement to equal protection and substantive due process); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013) ("[T]he Second Circuit has applied this test to as-applied challenges to land use laws under RLUIPA, the First Amendment, the

14

Equal Protection Clause, and the Due Process Clause."), *aff'd*, 945 F.3d 83 (2d Cir. 2019). This requirement applies "regardless of whether ripeness is described as jurisdictional or prudential." *835 Hinesburg Rd., LLC*, 2023 WL 2169306, at *6. Thus, I need not decide whether the issue here is one of jurisdictional or prudential ripeness. *Cf. Simmonds*, 326 F.3d at 357 ("Usually it does not matter . . . whether a case is dismissed for lack of constitutional or prudential ripeness.")

Plaintiff must satisfy a "high burden" of proving that the court can look to a "final, definitive position from a local authority to assess precisely how they can use their property." *Murphy*, 402 F.3d at 347. "'[F]ederal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions.'" *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 599 (quoting *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989)).

### 1.    Permit Application

The Planning Board never denied (or approved) Plaintiff's application for a special use permit. Nevertheless, Plaintiff argues it should be excused from having to wait for the Planning Board's final decision because it would be futile to do so, as the Planning Board is bound by the ZBA's interpretation of the Town Code and cannot issue a special permit for a prohibited use. (P's Opp. at 8-9.)

Although a Plaintiff typically must plausibly allege it has received a final decision on its application, "exceptions to the finality requirement include futility, *i.e.*, when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *61 E. Main St. Assocs., LLC v. Vill. of Washingtonville*, No. 24-CV-2647, 2025 WL 2709124, at *7 (S.D.N.Y. Sept. 23, 2025). This futility exception may also apply not just in the variance context but also when the relevant agency lacks discretion to

15

approve a plaintiff's application. *See Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 604 (explaining, in evaluating futility exception, that it was undisputed that agency lacked discretion to approve special permit); *Country View Ests. @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 151 (E.D.N.Y. 2006) (futility argument failed where planning board had power under town code to review application to reclassify property).

Here, Plaintiff alleges that the Planning Board lacks the authority to disregard the ZBA's interpretation of the Town Code or to issue a permit for a prohibited use. The Town Code vests the power to interpret the Code in the ZBA. *See* Town of Highland Town Code § 190-65(B) ("The [Zoning] Board shall, upon request, decide any questions involving the interpretation of any provision of this chapter."); *id.* § 190-66(A) (explaining procedure for applications for interpretations to ZBA); *id.* § 190-66(C) ("The Town Board, Code Enforcement Officer or Planning Board of the Town of Highland may request the Zoning Board of Appeals to decide any question involving the interpretation of any provision of this chapter . . . ."). Additionally, although Plaintiff did not cite, and the Court could not find, a specific provision in the Town Code that prevents the Planning Board from deviating from such an interpretation, Defendants have not argued that the Board has such discretion or that it may issue a permit when the ZBA has declared a proposed use to be prohibited. Indeed, Defendants seem to concede that the Planning Board may not do so, such that the only possible outcome would be denial of Plaintiff's application. (*See* ECF No. 25 ("Ds' Reply") at 3 ("[W]hile Plaintiff argues the only possible outcome is a denial by the Planning Board, it cannot allege that further review by Village agencies, including a use variance, would not potentially relieve any alleged injuries.").) This position is consistent with the case law in New York. *See Smith v. Town of Thompson Plan. Bd.*, 223 N.Y.S.3d 356, 359 (App. Div. 3d Dep't 2024) ("Planning boards are without power to

16

interpret the local zoning law, as that power is vested exclusively in local code enforcement officials and the zoning board of appeals."); *id.* ("A special use permit may only be granted when the applicant seeks to use the property in a manner that is expressly allowed in the zoning district.") (collecting cases). Thus, because the Planning Board lacks discretion to challenge the ZBA's interpretation that the proposed use is a prohibited use, and because it also lacks discretion to grant a permit where the proposed use is prohibited by the Town Code, Plaintiff has plausibly alleged that it would be futile to await the Planning Board's decision on the special use permit application, as that body's only option would be to deny it.

### 2.    Variance

But Defendants also argue that Plaintiff's claims are not ripe because Plaintiff has not applied for a variance. (Ds' Mem. at 11; Ds' Reply at 2-3.) In land-use claims, the finality requirement is generally only satisfied once a property owner has submitted "at least one meaningful application for a variance." *Murphy*, 402 F.3d at 348; *see Rivendell Winery, LLC v. Town of New Paltz*, 725 F. Supp. 2d 311, 318 (N.D.N.Y. 2010) ("Generally, a final decision of how property may be used has not been made unless the property owner requests a variance from the local zoning laws."); *Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*, No. 19-CV-443, 2021 WL 1226930, at *9 (S.D.N.Y. Mar. 31, 2021) ("A final decision exists when a development plan has been submitted, considered and rejected by the governmental entity with the power to implement zoning regulations," and "the property owner submits at least one meaningful application for a variance."), *on reconsideration*, 2021 WL 3605041 (S.D.N.Y. Aug. 13, 2021). For example, in *MacDonald, Sommer & Frates v. Yolo County*, Plaintiff's takings claim was not ripe for review where the plaintiff-developer had failed to apply for variances and there was still a "possibility that some development" might be permitted. 477 U.S. 340, 351-352

17

(1986); *see Hennelly v. Town of Middletown*, No. 10-CV-966, 2010 WL 4366917, at *3 (N.D.N.Y. Oct. 28, 2010) (dismissing Plaintiff's due process land-use challenge where he failed to apply for variances which could have allowed him to build on property).

But Plaintiff argues that it need not apply for a variance because the ZBA's interpretation was a final decision as to the interpretation of the Town Code. (P's Opp. at 9 ("The simple truth is that the ZBA interpretation is the final and definitive action . . . .").) In the Second Circuit, to determine when a decision is final, a court should consider: "(1) whether the [Plaintiff] experienced an immediate injury as a result of [Defendants'] actions and (2) whether requiring the [Plaintiff] to pursue additional administrative remedies would further define [its] alleged injuries." *Murphy*, 402 F.3d at 351; *see Congregation Kollel, Inc. v. Twp. of Howell*, No. 16-CV-2457, 2017 WL 637689, at *8 (D.N.J. Feb. 16, 2017) ("[T]he Second Circuit . . . employed a two-step inquiry to determine whether a land use decision is final. At the first step, the circuit court examined whether the town's action had inflicted an immediate injury on the plaintiffs. . . . In the next step, the court analyzed whether the existing record clearly defined the plaintiffs' injury. ").

Plaintiff argues that a variance application would not provide any additional factual information about whether the proposed religious educational use is permitted under the Town Code. (P's Opp. at 10-12.) Plaintiff relies on factually similar cases from the District of New Jersey in which the courts rejected the argument that a variance application was necessary for the ripeness of plaintiffs' claims that the ZBA's interpretation of the Code was erroneous and discriminatory. (*See id.* (first citing *Congregation Kollel, Inc.*, 2017 WL 637689, at *9-10; then citing *Khal Anshei Tallymawr, Inc. v. Twp. of Toms River*, No. 21-CV-2716, 2021 WL 5757404, at *7 (D.N.J. Dec. 3, 2021); and then citing *Bais Brucha Inc. v. Twp. of Toms River*, No. 21-CV-

18

3239, 2024 WL 863698, at *6 (D.N.J. Feb. 29, 2024)).) But these cases are not binding on this

Court. And, although the Third Circuit has indicated that "a variance application is [not] always

necessary to satisfy the finality requirement," *Bais Brucha Inc.*, 2024 WL 863698, at *6, the

Second Circuit has held that it is, *see BMG Monroe I, LLC*, 93 F.4th at 601 ("We have made

clear that appealing to the Zoning Board of Appeals *and* requesting variance relief are both

necessary prerequisites to ripeness.") (emphasis in original); *Lost Lake Holdings LLC v. Town of

Forestburgh*, No. 22-CV-10656, 2025 WL 1899026, at *6 (S.D.N.Y. July 9, 2025) (same);

*Bulson v. Town of Brunswick*, No. 24-CV-503, 2025 WL 743950, at *4 (N.D.N.Y. Mar. 7, 2025)

("The Second Circuit has held that *Williamson County*'s 'final decision' requirement conditions

federal review on a property owner submitting at least one meaningful application for a

variance."), *appeal withdrawn*, No. 25-734, 2025 WL 2319842 (2d Cir. June 23, 2025). [4]

And at least one court in this Circuit dealing with a similar issue found the plaintiff's

claim to be unripe because the plaintiff had not yet applied for a use variance. *See Rehabilitation

Support Servs., Inc.*, 226 F. Supp. 3d at 127. There, the plaintiff brought claims under the Fair

Housing Act, alleging that the defendants had deviated from the Town Code, their usual

practices, and the law when the ZBA determined that the plaintiff's proposed sober living

---

[4] The Government argues that cases dealing with area variances, rather than use
variances, are distinguishable, as only a use variance could permit Plaintiff's proposed use of the
property and the granting of a use variance here "would only permit the Yeshiva to operate a
type of facility that it does not intend to operate." (ECF No. 19 at 18.) But there are several
cases in this Circuit that – like those involving area variances – require a plaintiff to apply for a
use variance before the claim could be considered ripe. *See, e.g., Ferncliff Cemetery Ass'n*, 2019
WL 6878560, at *7 (claim not ripe where ZBA invited plaintiff to apply for use variance but
plaintiff failed to do so); *Rehabilitation Support Servs., Inc. v. Town of Esopus*, 226 F. Supp. 3d
113, 126-27 (N.D.N.Y. 2016) (claim was not ripe where plaintiff had not yet applied for a use
variance despite being able to do so). Further, the idea that "if a developer does not follow the
procedures for obtaining a variance from the appropriate government entity, the developer has
not yet obtained a final decision regarding how it will be allowed to develop its property," *Lost
Lake Holdings LLC*, 2025 WL 1899026, at *6, applies with equal force to use variance cases.

19

residence was not a single-family dwelling but rather a convalescent home, which was prohibited by the Code. *See id.* at 118-19. The Court explained that, although it was skeptical as to how the plaintiff's proposed use could be deemed to be a convalescent home, and although plaintiff could not apply for a special use permit because the ZBA's interpretation was that the use was not permitted, the ZBA's classification was not a final decision because plaintiff had not applied for a use variance or other forms of relief. *See id.* at 125-27. The instant case is therefore in line with Second Circuit precedent and suggests that Plaintiff's claims are similarly unripe in the absence of a variance application.[5]

Further, Plaintiff does not plausibly allege that the ZBA's interpretation inflicted an immediate injury. *See Donovan Realty, LLC v. Davis*, No. 07-CV-905, 2009 WL 1473479, at *3 (N.D.N.Y. May 27, 2009) ("A final decision is a definitive position on the issue that inflicts an actual, concrete injury."). Plaintiff does not even address any alleged injuries in its opposition. In the AC, however, Plaintiff alleged that the ZBA's interpretation prevents the Yeshiva from providing religious education to its students at the Property during the summer and has forced the Yeshiva to expend funds to find an alternate location for religious educational facilities. (*Id.* ¶¶ 104, 125.) But these injuries are speculative, because Plaintiff would not have to find and pay for an alternate location if the ZBA were to grant a use variance. *See Ferncliff Cemetery Ass'n*, 2019 WL 6878560, at *7 (because plaintiff could use property as it wished if granted a variance, there was a "potential for administrative solutions" which "confirm[ed] the conclusion that the issues [were] not yet ripe and plaintiff's injuries [were] speculative"); *St. Vincent De Paul Place,*

---

[5] Just as the court in *Rehabilitation Support Services, Inc.* was skeptical of the ZBA's determination, I am skeptical of the ZBA decision here, in light of *Yeshiva Talmud Torah*, 97 N.Y.S.3d 737. I therefore hope that the parties, through the variance process or otherwise, will be able to come to a mutually acceptable accommodation, a path to which they have suggested they are open. (*See* P's Opp. at 2; Ds' Reply at 1 n.1.)

20

*Norwich, Inc. v. City of Norwich*, No. 13-CV-17, 2013 WL 997076, at *3 (D. Conn. Mar. 13, 2013) ("[A] variance application is necessary to determine whether a plaintiff will be granted an administrative exception to the normal land use requirements. Absent such determination, plaintiffs' injury is merely speculative and may never occur."), *vacated on other grounds*, 535 F. App'x 57 (2d Cir. 2013) (summary order).

For the same reason, the variance application process would also further develop the factual record on the scope of Plaintiff's injuries, as a decision on such application would determine "how [Plaintiff] will be allowed to [use] its property," *Lost Lake Holdings LLC*, 2025 WL 1899026, at *6, and whether the interpretation was the product of a discriminatory motivation, *see Sunrise Detox V, LLC*, 769 F.3d at 123. Thus, it cannot be said that "there is no practical or logical reason to require [the] plaintiff to apply for a variance." *Bulson v. Town of Brunswick*, No. 24-CV-503, 2025 WL 743950, at *4 (N.D.N.Y. Mar. 7, 2025), *appeal withdrawn*, No. 25-734, 2025 WL 2319842 (2d Cir. June 23, 2025).[6] Accordingly, the ZBA's interpretation was not a final decision in the absence of a meaningful application for a use variance. *See Sunrise Detox V, LLC*, 769 F.3d at 124 (Second Circuit "condition[s] federal

---

[6] Plaintiff argues that "a variance application does not provide any additional factual information about whether the proposed religious educational use is permitted under the Highland Zoning Code." (P's Opp. at 10.) But it would provide factual information as to, for example, whether or not Plaintiff was allowed to open its institution, and if not, whether that decision resulted from discrimination. If all Plaintiff wanted was to challenge the ZBA's determination as to the meaning of the Town Code, it could have done so via an Article 78 proceeding in state court, as was done in *Yeshiva Talmud Torah,* 97 N.Y.S.3d 737, which Plaintiff cites. (*See* P's Opp. at 8.) Having eschewed that route in favor of RLUIPA and constitutional claims, it cannot recast this litigation as simply about the correctness, or not, of the ZBA's interpretation of the Code. While *Yeshiva Talmud Torah*, which granted a synagogue's Article 78 petition overruling a ZBA's determination on a similar proposed summer religious educational use, is helpful to Plaintiff on the issue of the proper interpretation of the Code, it does little to support its position on finality. That a ZBA decision is final enough to be reviewed via Article 78 does not necessarily mean it is final enough to be reviewed in federal court.

review on a property owner submitting at least one meaningful application for a variance"); *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 602 (final decision rule conditions federal review on property owner submitting "one meaningful application for a variance").[7]

Nevertheless, as discussed, a plaintiff may be excused from the final decision requirement if applying for a variance would be futile. *See Murphy*, 402 F.3d at 349. As explained, to demonstrate futility, a plaintiff must show either that the zoning agency lacks discretion to grant a variance, or "that Defendants have dug in their heels and made clear that all applications will be denied." *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *6 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 414 F. App'x 350 (2d Cir. 2011) (summary order); *see 61 E. Main St. Assocs., LLC*, 2025 WL 2709124, at *8. "[M]ere doubt" that variance applications will be granted, however, is insufficient to invoke the futility exception. *Rivendell Winery*, 725 F. Supp. 2d at 319. Futility is "quite narrowly" construed, *Tri-State Video Corp. v. Town of Stephentown*, No. 97-CV-965, 1998 WL 72331, at *4 (N.D.N.Y. Feb. 13, 1998), and "does not exist merely because of hostility to the developer's plans," *S&R Dev. Ests., LLC v. Bass*, 588 F. Supp. 2d 452, 463 (S.D.N.Y. 2008).

First, the ZBA has discretion to grant variances pursuant to Town Code § 190-66(B). *See E. End Eruv Ass'n, Inc. v. Vill. of Westhampton Beach*, 828 F. Supp. 2d 526, 537 (E.D.N.Y.

---

[7] Plaintiff contends that "[b]y definition, a variance cannot yield what the Yeshiva sought and is entitled to, to wit: the right to undertake its summer religious educational use as a permitted use." (P's Opp. at 3.) But what the Yeshiva sought was authorization to run its summer religious educational program at the Property. It did not seek a finding of religious use for its own sake, but in order to be able to use the property as it wanted. While Plaintiff states that it seeks "validation and confirmation that its religious summer educational use is a fully permitted use, not one that requires a variance," (*id.* at 4), the Court sees no reason why, if the result is the same, it should "entangl[e itself] in [an] abstract disagreement[]." *Murphy*, 402 F.3d at 347.

2011) (action not ripe where ZBA had authority to grant variances and decide appeals under town code and New York State Town Law); *Missere v. Gross*, 826 F. Supp. 2d 542, 555 (S.D.N.Y. 2011) (futility exception inapplicable where ZBA had discretion to grant variances under village code). Second, Plaintiff has not plausibly alleged that Defendants have dug in their heels and made clear that all applications will be denied. Plaintiff's mild allegations of hostility and bad faith by the Planning Board and the public, (*see* AC ¶¶ 60, 84), do not excuse its failure to obtain a final decision, *see Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 408 (E.D.N.Y. 2008) (collecting cases). "Evidence of hostility by local officials is . . . not alone enough to satisfy the futility exception, especially where a plaintiff fails to connect that evidence to the body charged with deciding variance applications." *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *12 (S.D.N.Y. Mar. 26, 2019); *see S&R Dev. Ests.*, 588 F. Supp. 2d at 463 ("Although [plaintiff] has faced opposition to its development plan from Town officials and influential Town groups, it has not shown that the prospect of refusal from the ZBA would be certain."); *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 160-61 (S.D.N.Y. 2000) (allegations of open hostility by or conspiracy among defendants insufficient to show that refusal was certain). Here, Plaintiff alleged some unidentified member of the Planning Board made negative remarks about the Yeshiva's Rabbi, (AC ¶ 60), and that members of the public spoke out forcefully against the Yeshiva at the ZBA public hearing, (*id.* ¶ 84). But Plaintiff does not allege that anyone on the ZBA, the body charged with deciding a variance application, made any similar remarks. Plaintiff also has not alleged that the ZBA made

23

Case 7:24-cv-08477-CS    Document 26    Filed 03/05/26    Page 24 of 29

any other comments or decisions that indicated that it would not grant a variance. Thus, Plaintiff

has not plausibly alleged the ZBA had made clear that all applications would be denied.[8]

Third, a Plaintiff may also demonstrate futility "where local authorities are manipulating

a zoning process out of discriminatory animus to avoid a final decision." *61 E. Main St. Assocs.,*

*LLC,* 2025 WL 2709124, at *8. "While there is no precise cut-off, cases in this Circuit have

found that delays as long as eight years are insufficient to surmount the finality requirement." *Id.*

Here, Plaintiff submitted its special use permit application in February 2023, (AC ¶ 23), and filed

this action in November 2024, (ECF No. 1), after receiving the ZBA's interpretation. Thus, to

the extent that Plaintiff might argue the Town manipulated or delayed the process out of

discriminatory animus, that argument is not plausible, as not even two years passed before

Plaintiff filed its complaint.

---

[8] The Government contends that seeking a variance would be futile because Plaintiff could not meet the necessary criteria. (ECF No. 19 at 16-17.) Plaintiff makes no such argument. In any event, "without applying for a variance even once, the Plaintiff [is] estopped from arguing that there was no possibility that a variance would be granted." *Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester,* No. 11-CV-5608, 2013 WL 135216, at *9 (S.D.N.Y. Jan. 10, 2013) (citing *Westhab, Inc. v. City of New Rochelle,* No. 03-CV-8377, 2004 WL 1171400, at *11 (S.D.N.Y. May 3, 2004)); *DLX, Inc. v. Kentucky,* 381 F.3d 511, 525 (6th Cir. 2004) ("[Although] a plaintiff need not seek a variance from a regulation where it would be an idle and futile act[,] the exception only applies where a landowner has submitted at least one meaningful application for a variance."), *overruled on other grounds by San Remo Hotel, L.P. v. City & County of San Fransico,* 545 U.S. 323 (2005); *see also Smalis v. City of Pittsburgh,* No. 19-CV-1609, 2024 WL 1076108, at *2 (W.D. Pa. Mar. 12, 2024) ("[Plaintiff] has not pled finality for Count 2 against the City because he has not alleged any facts showing that he applied for and was denied a variance."), *reconsideration denied,* 2024 WL 2319508 (W.D. Pa. May 22, 2024), *appeal dismissed,* No. 24-2144, 2024 WL 5261488 (3d Cir. Oct. 3, 2024); *cf. Bikur Cholim, Inc. v. Vill. of Suffern,* 664 F. Supp. 2d 267, 286 (S.D.N.Y. 2009) (where variance denied for not meeting criteria, property owner not required to appeal). "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." *MacDonald, Sommer & Frates,* 477 U.S. at 350.

24

Case 7:24-cv-08477-CS    Document 26    Filed 03/05/26    Page 25 of 29

Finally, there is another exception to the final decision rule that applies to discrimination claims. *See Lost Lake Holdings LLC*, 2025 WL 1899026, at *11. "[A] plaintiff alleging discrimination in the context of a land-use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision." *Sunrise Detox V, LLC*, 769 F.3d at 123. Plaintiff cannot make such a showing here. As discussed, Plaintiff alleges its rights were violated when the ZBA interpreted Plaintiff's proposed use as a children's camp rather than a place of worship under the Town Code. This decision, Plaintiff argues, caused financial damages, including the carrying costs of the Property and the expenses Plaintiff incurred in finding another property for its religious activities. But those injuries "derive from defendants' allegedly discriminatory efforts," including the ZBA interpretation. *Lost Lake Holdings LLC*, 2025 WL 1899026, at *11 (plaintiffs failed to allege injury independent of building inspector's permit denial where plaintiffs alleged denial prevented plaintiffs from building homes for religious community members, caused financial damages including the loss of home sales, and prohibited plaintiffs from taking further action because such injuries were derivative of defendants' alleged discrimination); *see Sunrise Detox V, LLC*, 769 F.3d at 124 (commissioner's determination that facility did not qualify as a "community residence" did not cause injury independent of city's ultimate land-use decision "in light of administrative avenues for relief").[9] Thus, this exception does not apply either.

---

[9] *Sunrise Detox V* added that "a plaintiff need not await a final decision to challenge a zoning policy that is discriminatory on its face, or the manipulation of a zoning process out of discriminatory animus to avoid a final decision," 769 F.3d at 123, neither of which is alleged here. Because Plaintiff in that case sought only an injunction, the court did not need to reach

> whether a property owner who claimed that a local official vetoed his or her development project out of hostility based on the owner's race, gender, disability, or the like, in violation of federal statutory or constitutional law, could seek immediate recompense in federal court from that official for the dignitary or

25

Case 7:24-cv-08477-CS     Document 26     Filed 03/05/26     Page 26 of 29

Accordingly, Plaintiff has failed to show that a variance application would be futile, and thus Plaintiff's claims are not ripe. This analysis applies to all of Plaintiff's federal land-use claims – RLUIPA, free exercise, and equal protection. *See Lost Trail*, 289 F. App'x at 444 ("Land use challenges, whether pursued as a takings claim under the Fifth Amendment or as violations of equal protection or due process, are subject to the ripeness requirement articulated in [*Williamson County*]."); *Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78 (E.D.N.Y. 2016) (applying same ripeness test to as-applied takings, due process, and equal protection claims because they all arose out of same facts including applications for permit); *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 596-607 (applying same ripeness analysis to claims under Equal Protection Clause, Free Exercise Clause, and RLUIPA); *Grossi v. City of N.Y.*, No. 08-CV-1083, 2009 WL 4456307, at *5 (E.D.N.Y. Nov. 30, 2009) ("[W]hen takings, due process and equal protection claims arise out of the same factual events, the Court will apply the same ripeness inquiry to plaintiff's takings, due process, and equal protection claims."). Accordingly, all of Plaintiff's federal claims are unripe and therefore dismissed without prejudice. *See Murphy*, 402 F.3d at 347 (ripeness is a question of timing and controversy may later become ready for adjudication); *see also Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 122 (2d Cir. 1999) ("[W]here federal subject matter jurisdiction does not exist, federal courts do not have the power to dismiss with prejudice, even as a procedural sanction."); *Mtume v. Sony Music Ent.*, No. 18-CV-11747, 2020 WL 832814, at *6 (S.D.N.Y. Feb. 20, 2020) (dismissing

emotional harm inflicted by the official even in the absence of a final decision on the development proposal or without pursuing an administrative appeal of that action.

*Id.* Here Plaintiff seeks compensatory damages in addition to an injunction, but only for financial damages, not emotional or dignitary harm, and only against the municipality, not any officer of it.

26

case without prejudice where case was ripe for purposes of Article III but was not prudentially ripe); *Johnson v. Warden*, No. 08-CV-1377, 2009 WL 1625711, at *3 (D. Conn. June 9, 2009) (dismissing petition without prejudice because it was not prudentially ripe).

Plaintiff's claim under the New York State Constitution is also unripe. In the land-use context, courts apply to state law claims the same ripeness analysis applied to federal claims. *See Islamic Cmty. Ctr. v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 416 (S.D.N.Y. 2017) ("The first prong of the *Williamson County* analysis applies to land use challenges under RLUIPA, the United States Constitution, and state law."), *aff'd*, 742 F. App'x 521 (2d Cir. 2018) (summary order); *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 596-607 (applying same ripeness analysis to claim under New York Constitution as to federal land-use claims). Accordingly, for the reasons set forth above, Plaintiff's state law claim is also dismissed without prejudice.

## IV.    LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended its complaint once, (ECF No. 12), after having the benefit of Defendants' pre-motion letter, (ECF No. 9), and the discussion at the pre-motion conference, (*see* Minute Entry dated Feb. 27, 2025). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave

27

to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty (NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion in denying leave to amend where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 n.2 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that it is in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave

28

to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendants'] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 22), and close the case.

**SO ORDERED.**

Dated: March 5, 2026
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J

Case 7:24-cv-08477-CS     Document 27     Filed 03/07/26     Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
YESHIVA OHR SHRAGA VERETZKY,

                                        Plaintiff,

            -against-                                                    24 **CIVIL** 8477 (CS)

                                                                         **JUDGMENT**

TOWN OF HIGHLAND ZONING BOARD OF
APPEALS and TOWN OF HIGHLAND,

                                        Defendants.
-------------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion & Order dated March 5, 2026, Defendants' motion to dismiss is

GRANTED and Plaintiff's claims are dismissed without prejudice; accordingly, the case is

closed.

**Dated:** New York, New York

        March 7, 2026

                                                    **TAMMI M. HELLWIG**

                                            _____

                                                    **Clerk of Court**

                                BY:                 K. mango

                                            _____

                                                    **Deputy Clerk**



**United States District Court**
**Southern District of New York**

Tammi M. Hellwig
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $605 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted.* Please see District Court fee schedule at https://www.nysd.uscourts.gov/programs/fees. If you are unable to pay the $605 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/**.

<table>
<tr><td>THE DANIEL PATRICK MOYNIHAN<br>UNITED STATES COURTHOUSE<br>500 PEARL STREET<br>NEW YORK, NY 10007-1312</td><td>THE CHARLES L. BRIEANT, JR.<br>UNITED STATES COURTHOUSE<br>300 QUARROPAS STREET<br>WHITE PLAINS, NY 10601-4150</td></tr>
</table>

Rev. 12/4/24

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (     )(     )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties: _____

_____
(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the    ☐ judgment    ☐ order    entered on: _____

that:                                                    (date that judgment or order was entered on docket)

_____

_____
(If the appeal is from an order, provide a brief description above of the decision in the order.)

_____        _____
Dated                                         Signature*

_____
Name (Last, First, MI)

_____ | City | State | Zip Code
Address

_____        _____
Telephone Number                         E-mail Address (if available)

_____

* Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case. Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (      )(      )

**MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL**

I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time

to file a notice of appeal in this action. I would like to appeal the judgment

entered in this action on _____ but did not file a notice of appeal within the required
                              date

time period because:

_____

_____

_____
(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)

_____        _____
Dated:                           Signature

_____
Name (Last, First, MI)

_____
Address                  City        State            Zip Code

_____        _____
Telephone Number                 E-mail Address (if available)

Rev. 3/27/15

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____          _____CV_____ (       )(       )
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-          **MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma pauperis* on appeal. This motion is supported by the attached affidavit.

_____          _____
Dated                            Signature

_____
Name (Last, First, MI)

_____
Address                City          State          Zip Code

_____          _____
Telephone Number          E-mail Address (if available)

Rev. 12/23/13

Case 7:24-cv-08477-CS     Document 27-1     Filed 03/07/26     Page 5 of 10

## Application to Appeal In Forma Pauperis

_____ **v.** _____          Appeal No. _____

District Court or Agency No. _____

| **Affidavit in Support of Motion** | **Instructions** |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.)<br><br>Signed: _____ | Complete all questions in this application and then sign it.  Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.<br><br>Date: _____ |

My issues on appeal are: (<u>required</u>):

1.      *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | <u>Spouse</u> | You | <u>Spouse</u> |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

12/01/2013 SCC

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | $ 0 | $ 0 | $ 0 | $ 0 |

2. *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3. *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

- 2 -

4.     *How much cash do you and your spouse have? $_____*

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5.     *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
|  |  | Make and year: |
|  |  | Model: |
|  |  | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: |  |  |
| Model: |  |  |
| Registration #: |  |  |

Case 7:24-cv-08477-CS    Document 27-1    Filed 03/07/26    Page 8 of 10

6.    *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |

7.    *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

8.    *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

|  | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>    Are real estate taxes included?  ☐ Yes ☐ No<br>    Is property insurance included?  ☐ Yes ☐ No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

- 4 -

| | | |
|---|---|---|
| Transportation (not including motor vehicle payments) | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | |
|     Homeowner's or renter's: | $ | $ |
|     Life: | $ | $ |
|     Health: | $ | $ |
|     Motor vehicle: | $ | $ |
|     Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $ | $ |
| Installment payments | | |
|     Motor Vehicle: | $ | $ |
|     Credit card (name): | $ | $ |
|     Department store (name): | $ | $ |
|     Other: | $ | $ |
| Alimony, maintenance, and support paid to others | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ | $ |
| Other (specify): | $ | $ |
| **Total monthly expenses:** | **$ 0** | **$ 0** |

9.    *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

☐ Yes    ☐ No    If yes, describe on an attached sheet.

10.    *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* ☐ Yes ☐ No

*If yes, how much?* $ _____

11.    *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12.    *Identify the city and state of your legal residence.*

City _____     State _____

Your daytime phone number: _____

Your age: _____     Your years of schooling: _____

Last four digits of your social-security number: _____

- 6 -

**[JA-310]**

Case 7:24-cv-08477-CS    Document 28    Filed 03/11/26    Page 1 of 1

---

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

YESHIVA OHR SHRAGA VERETZKY

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

TOWN OF HIGHLAND ZONING BOARD OF

APPEALS and TOWN OF HIGHLAND

(List the full name(s) of the defendant(s)/respondent(s).)

7:24-CV-08477 (CS)

**NOTICE OF APPEAL**

Notice is hereby given that the following parties:   YESHIVA OHR SHRAGA VERETZKY

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the   ☒ judgment   ☒ order   entered on:   March 7, 2026

(date that judgment or order was entered on docket)

that:   granted motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)1

(If the appeal is from an order, provide a brief description above of the decision in the order.)

March 11, 2026

Dated

Signature

Barshov, Steven, as Attorney for Yeshiva Ohr Shraga Veretzky

Name (Last, First, MI)

| 20 Lagoon Lane | Haverstraw | New York | 10927 |
|---|---|---|---|
| Address | City | State | Zip Code |

| 917-886-4328 | sb@sbarshovlaw.com |
|---|---|
| Telephone Number | E-mail Address (if available) |

* Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case. Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13