# 26-638

# United States Court of Appeals
# for the Second Circuit

YESHIVA OHR SHRAGA VERETZKY,

*Plaintiff-Appellant,*

-against-

TOWN OF HIGHLAND ZONING BOARD OF APPEALS,
TOWN OF HIGHLAND,

*Defendants-Appellees,*

TOWN OF HIGHLAND PLANNING BOARD,
TOWN BOARD OF THE TOWN OF HIGHLAND,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT
## AND SPECIAL APPENDIX

SBARSHOVLAW PLLC
*Attorneys for Plaintiff-Appellant*
20 Lagoon Lane
Haverstraw, New York 10927
(917) 886-4326
sb@sbarshovlaw.com

4908



# **TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF FACTS ....................................................................4

    A. The Yeshiva Provides Year-Round Religious Education ............................4

    B. The Yeshiva Purchased a Hotel for Religious Educational Use
       and Retreats ................................................................5

    C. The Yeshiva Submits a Memorandum of Law to the Planning
       Board Confirming that its Proposed Use of the Property is
       Religious in Nature............................................................6

    D. The Town's Consultants Agree That Religious Use is Proposed ..................7

    E. All Technical Questions were Addressed and the Yeshiva's
       Application was Ready for Public Hearing.......................................9

    F. The Planning Board's Counsel, Who had Never Objected to the
       Religious Use Memorandum of Law Submitted by the Yeshiva's
       Counsel, was Replaced........................................................10

    G. The January 2024 Planning Board Meetings and its Referral
       to the ZBA ..................................................................11

    H. The ZBA Receives Materials from the Yeshiva Further Confirming
       Religious Use, Including a Statement Published by the Dept. of Justice ....13

    I. The ZBA Issues an Interpretation of the Town Zoning Code that the
       Yeshiva's Proposed Use is Not Religious, But is a Summer Camp
       Prohibited by the Zoning....................................................15

    J. With a Final Binding Decision on Permitted Use Having Been Rendered
       by the ZBA and Binding Upon the Planning Board, the Yeshiva was
       Forced to Litigate ..........................................................16

i

POINT I

SINCE THE PLANNING BOARD IS REQUIRED TO FOLLOW THE ZBA INTERPRETATION AND DENY THE APPLICATION, ANY ADDITIONAL PLANNING BOARD PROCESS WOULD BE FUTILE, THUS CAUSING THIS LITIGATION TO BE RIPE........................................................................18

POINT II

THE YESHIVA CANNOT BE REQUIRED TO ABANDON ITS PROPERTY RIGHTS AS A PRECONDITION OF FEDERAL COURT JURISDICTION ......23

POINT III

SINCE A VARIANCE APPLICATION WOULD NOT GENERATE ANY ADDITIONAL RELEVANT FACTS, IT IS NOT REQUIRED FOR THIS CASE TO BE RIPE..............................................................................25

CONCLUSION ..................................................................................29

ii

# **TABLE OF AUTHORITIES**

*Page(s)*

**Cases:**

*Anshei Tallymawr, Inc. v. Township of Toms River, New Jersey*,
    2021 WL 5757404 (D.N.J. 2021) ............................................................ 27-28

*Bais Brucha Inc. v. Township of Toms River, New Jersey*,
    2024 WL 863698 (D.N.J. 2024) ..................................................................28

*Congregation Kollel, Inc. v. Township of Howell, N.J. ("Kollel")*,
    2017 WL 637689 (D.N.J. 2017) ......................................................26, 27, 28

*Gershowitz v. Planning Bd. of Town of Brookhaven*,
    52 N.Y.2d 763, 436 N.Y.S.2d 612 (1980).......................................................18

*Rehabilitation Support Services, Inc. v. Town of Esopus*,
    226 F.Supp.3d 113 (N.D.N.Y 2016) ............................................................28

*Swantz v. Planning Bd. of Village of Cobleskill*,
    34 A.D.3d 1159, 824 N.Y.S.2d 781 (3d Dept. 2006)....................................19

*Woodland Community Ass'n v. Planning Bd. of Town of Shandaken*,
    52 A.D.3d 991, 860 N.Y.S.2d 653 (3d Dept. 2008)......................................19

*Yeshiva Talmud Torah Ohr Moshe v. Zoning Board of Appeals*
    *("Yeshiva Talmud Torah")*,
    170 A.D.3d 1488, 97 N.Y.S.3d 737 (3d Dept. 2019)....................7, 21, 22, 24

**Rules, Laws & Statutes:**

42 U.S.C. § 1983 ...............................................................................................4

42 U.S.C. § 1988 ...............................................................................................4

42 U.S.C. § 2000cc ...........................................................................................4

iii

Highland Town Code § 190-65.................................................................20

Highland Town Code § 190-66.................................................................20

## PRELIMINARY STATEMENT

The Appellant, Yeshiva Ohr Shraga Veretzky (the "Yeshiva"), applied to the Town of Highland Planning Board (the "Planning Board") for a special permit to undertake religious educational use of its property. There is no dispute that a place of worship is a specially permitted use under the applicable Town of Highland Zoning Code (the "Zoning Code") and that such a use can be undertaken upon issuance of a special use permit. The Planning Board eventually referred the Yeshiva's special permit application to the Town of Highland Zoning Board of Appeals (the "ZBA") for an interpretation as to whether its proposed use is actually a specially permitted religious use. Despite clear prior decisional law in New York holding that the precise use proposed by the Yeshiva is a religious use falling within the scope of what is encompassed by a place of worship, the ZBA concluded that the Yeshiva's proposed use was not a religious use, but a summer camp, a use that is not allowed under the applicable zoning for the Yeshiva's property.

There is no dispute that the interpretation by the ZBA is final, is binding upon the Planning Board, and precludes the Planning Board from granting the Yeshiva's pending special permit application. Nevertheless, the District Court found that it lacked subject matter jurisdiction to hear the Yeshiva's challenge to the ZBA determination because the Yeshiva did not apply for a use variance. The District Court held that for the finality prerequisite of federal court jurisdiction to be

1

satisfied, the Yeshiva must first apply for the very use variance that the Yeshiva would be required to obtain only if its proposed religious use is prohibited.

A use variance is sought only to obtain permission to undertake a use that is prohibited under the applicable zoning. It makes no sense whatsoever to force the Yeshiva to apply for a use variance as a mandatory "finality" prerequisite to the Yeshiva being able to litigate that no such use variance is required at all as a matter of law. The District Court's misconstruction of the "finality" requirement would preclude the Yeshiva from ever being able to litigate its claim that its use is permitted as of right and does not require any use variance.

Essentially, what the District Court required is that the Yeshiva abandon its legal claim to undertake its proposed religious use as one that is specially permitted. By forcing the Yeshiva to apply for a use variance, the District Court mandates that the Yeshiva admits and concedes that its proposed use is actually prohibited for that is the only way a use variance can possibly be obtained. Such a concession is very serious. A specially permitted use is one that is inherently consistent with the applicable zoning. A prohibited use is the opposite and is by definition repugnant to the applicable zoning. No property owner should be required based on jurisprudential finality to relinquish a property right as a precondition of obtaining judicial review. That is precisely what mandating a use variance application requires of the Yeshiva.

The final action, from which there is no further possible administrative appeal, is the ZBA's determination that the Yeshiva's proposed religious educational use is not permitted under the Zoning Code. Requiring an application for a use variance does not further "clarify" or elucidate the ZBA's position as to what is permitted. The use variance is what would be required only if the ZBA determination is given full effect and is lawful. If finality requires the Yeshiva to file a use variance application admitting its use is prohibited as a prerequisite to litigating that no such use variance is required, then effectively the Yeshiva is barred from any Federal Court review. Forced abandonment of a party's right to judicial review is not "finality" – it is a destruction of the opportunity for judicial review.

It cannot logically be a jurisdictional prerequisite that a party must apply for the very approval it contends as a matter of law it cannot be required to obtain as a precondition to litigating that very issue of law. The ZBA determination that the proposed religious educational use is not a permitted religious use is a final decision binding upon all boards and officials of the Town of Highland (the "Town"). Since it would be entirely impossible for the Planning Board to grant the Yeshiva's application because of the ZBA determination and since the ZBA determination is final and binding, the requisite finality has occurred.

Phrased as a rule of law, when a party claims that its use is one that is specially permitted under the applicable zoning, and when the ZBA has issued a final

3

determination that such use is prohibited, the requisite final decision has been issued and federal jurisdiction is established for review of the ZBA determination under: (a) the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") 42 U.S.C§ 2000cc, *et seq.*; (b) the First and Fourteenth Amendments to the United Sates Constitution as enforced by 42 U.S.C. §§ 1983 and 1988; and (c) Article 1, §§ 3, 9 and 11 of the New York Constitution.

## STATEMENT OF FACTS

The facts as pled in the Yeshivas First Amended Complaint (the "Complaint" or "Comp.") were accepted by the District Court as true. *See* Opinion and Order on Motion to Dismiss (the "Opinion" or "Op.") at 1; Joint Appendix ("JA.") 270). The District Court restated in detail many of the facts pled in the Complaint. *See* Opinion at pp. 2–9; JA. 271–278.) Accordingly, the facts stated *infra* are supported by citations to both the Complaint and the Opinion.

A. The Yeshiva Provides Year-Round Religious Education

The Yeshiva is a New York religious corporation that provides Hasidic Orthodox Jewish religious education through its schools and facilities in Brooklyn, New York and Lakewood, New Jersey. (Comp. ¶¶ 8, 14, 113; JA. 8, 9, 39; and Op. at 1; JA. 271.) Religious education is one of the most important elements of Orthodox Judaism, and there is no separation between religion and education for its adherents. (Comp. ¶¶ 27-28; JA. 16–17; and Op. at 1; JA. 271.) As such, the Yeshiva

4

leased facilities in Sullivan County to provide a place where its Rabbis and students could come together and continue their religious education in the summer. (Comp. ¶ 14; JA. 14; and Op. at 1; JA. 271.) During the non-summer months, the Yeshiva rented property for religious retreats and other activities. (Comp. ¶ 15; JA. 14; and Op. at 1; JA. 271.)

B. The Yeshiva Purchased a Hotel for Religious Educational Use and Retreats

The Yeshiva purchased property in the Town formerly owned by 211 Mail Road LLC (the "Property"), which had been operating in a Residential Agricultural R-2 Zoning District as a commercial hotel pursuant to a special use permit issued by the Planning Board. (Comp. ¶¶ 17, 19; JA. 14-15; and Op. at 1; JA. 271.) In February 2023, the Yeshiva applied to the Planning Board for a special use permit, seeking to use the Property's existing buildings and construct new buildings for religious education during the summer and religious retreats in the non-summer months. (Comp. ¶ 18, 23; JA. 14-15; and Op. at 2; JA. 271.)[1] In the summer, teenagers and young adults would reside at the Property and study Talmud, communicate and study with their Rabbis, deepen their religious faith, and connect on a religious level with others in the community. (Comp. ¶ 25; JA. 16; and Op. at 3; JA. 272.) The same

---

[1] Specifically, the application sought to construct four new single-story buildings containing: (1) a Shul (synagogue) area for prayer and conducting religious services for those at the Property; (2) a Mikva (ritual bath); (3) spaces for religious lectures and study, prayer, and meetings and gatherings; and (4) sleeping accommodations for thirty-two students. (Comp. ¶ 24; JA. 16; and Op. at 2-3; JA. 271 -272.)

Rabbis who teach the students during the non-summer months would provide the religious education to them and the younger children of the Rabbis and the staff. (Comp. ¶ 26; JA. 16; and Op. at 3; JA. 272.)

C. The Yeshiva Submits a Memorandum of Law to the Planning Board Confirming that its Proposed Use of the Property is Religious in Nature

At its meeting on March 22, 2023, the Planning Board acknowledged receipt of the Yeshiva's application. (Comp. ¶ 34; JA. 18; and Op. at 3; JA. 272.) Before the meeting, the Laberge Group, the Planning Board's environmental and planning consultant, issued a memorandum dated March 20, 2023, addressed to the Planning Board's counsel. (Comp. ¶¶ 34-35; JA. 18; and Op. at 3; JA. 272.) The memo stated that: (1) a religious retreat is not specifically listed in the Town Zoning Code's Schedule of Use Regulations and is therefore a prohibited use; (2) a dormitory is not specifically listed in the Schedule of Use Regulations and is therefore a prohibited use; (3) a Mikvah is not specifically listed in the Schedule of Use Regulations but is a common element of a "place of worship," which is listed as a Special Use Permit; and (4) a multi-purpose building is not specifically listed but is a common element of a "place of worship," which is listed as a Special Use Permit. (Comp. ¶ 35; JA. 18; and Op. at 3; JA. 272.)

Counsel for the Yeshiva requested and received permission to respond to the LaBerge memo and submitted a Memorandum of Law to the Planning Board, its counsel and consultants on April 27, 2023. (Comp. ¶¶ 36, 38; JA. 19; and Op. at 3;

JA. 272.) The Memorandum of Law explained that religious education is part of religious use under New York law; explained that the Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits units of local government from applying zoning and land use laws to unduly burden the exercise of religion; and referenced apposite case law, especially *Yeshiva Talmud Torah Ohr Moshe v. Zoning Board of Appeals* ("*Yeshiva Talmud Torah*")*,* 170 A.D.3d 1488, 97 N.Y.S.3d 737 (3d Dept. 2019). (Comp. ¶¶ 37, 39; Op. at 3 - 4; JA. 272 -273.) The Memorandum of Law detailed why the Yeshiva's proposed uses constituted religious use as a place of worship. (Comp. ¶ 39; JA. 19; and Op. at 4; JA. 273.)

The reference to and discussion of *Yeshiva Talmud Torah* in the Memorandum of Law is significant because, as District Court Seibel herself stated:

> *Yeshiva Talmud Torah . . .* involved a proposal for similar live-in summer religious studies for students, and the Court concluded that the proposed facilities fell within the definition of "place of worship." *See* 97 N.Y.S.3d at 739-40.

Opinion at 4, note 2; JA. 273. Thus, Judge Seibel reconfirmed that the Planning Board, its counsel and consultants had been made aware in the Memorandum of Law of the existence and significance of the *Talmud Torah* case. (*Id.*)

D. The Town's Consultants Agree That Religious Use is Proposed

The Yeshiva's application was next considered at the Planning Board's June 28, 2023 meeting. (Comp. ¶ 40; JA. 20; and Op. at 4; JA. 273.) Before the meeting,

7

and following submission of the Yeshiva counsel's Memorandum of Law, the Laberge Group and the Town Engineer submitted additional and revised comments to the Planning Board, in which they explicitly confirmed that religious education and religious retreat were encompassed within the special use permit for a place of worship. (Comp. ¶¶ 40 - 41; JA. 20; and Op. at 4; JA. 273.)[2] At a Planning Board meeting on August 23, 2023, the Town Engineer again confirmed that religious education was a use included within "place of worship." (Comp. ¶ 43; JA. 21; and Op. at 4; JA. 273.) Neither the Planning Board nor its counsel contradicted or questioned this statement. (*Id.*)

Accordingly, and in reliance upon the understanding as to the proposed religious use of the Property by the Yeshiva, Fuller Engineering then prepared and submitted revised plans on behalf of the Yeshiva calling for religious educational use of the Property. (Comp. ¶ 44; JA. 21; and Op. at 4; JA. 273.)

---

[2] Specifically, the letter from the Town Engineer stated that "Place of Worship is listed in R2 and require[s] a Special Use Permit from the Planning Board [which] would also include the Mikvah, Religious Retreat, and religious education." (Comp. ¶ 41; JA. 20; and Op. at 4; JA. 273; *see also* ECF No. 12-6 at JA. 101.) The Town Engineer explained that the project could be considered by the Planning Board as a combination of Special Use Permits. (*Id.*) The Laberge Group also submitted a comment, in which it acknowledged that "Religious Retreat may be included in the generic class of 'Place of Worship' with additional information for the Planning Board to determine." (Comp. ¶ 42; JA. 21; and Op. at 4; JA. 273; *see also* ECF No. 12-6 at JA. 105.)

At the October 25, 2023 Planning Board meeting, the Town Engineer submitted another comment letter, repeating the same language regarding the proposed uses of the Property. (Comp. ¶¶ 45-46; JA. 21-22; and Op. at 5; JA. 274; *see also* ECF No. 12-8 at JA. 114-116.) The minutes state that one Planning Board member received clarification that the application was looking to change the existing special use of hotel/motel/restaurant to a religious place of worship. Comp. ¶ 47; JA. 22; and Op. at 5; JA. 274; *see also* ECF No. 12-8 at JA. 115.)

At that meeting, alternate Planning Board member and candidate for Town Board, Laura Burrell, sat in for an absent Planning Board member. (Comp. ¶ 45; JA. 21-22; and Op. at 5; JA. 274.) She was later elected to the Town Board, along with two other new members. (Comp. ¶ 49; JA. 22; and Op. at 5; JA. 274.)

E.  All Technical Questions were Addressed and the
    Yeshiva's Application was Ready for Public Hearing

On November 17, 2023, the Yeshiva submitted revised documents to the Planning Board, including another memo explaining the proposed religious use of the Property during the summer and non-summer months. (Comp. ¶ 50; JA. 21-22; and Op. at 5; JA. 274.) The memo provided details about how each of the buildings on the Property would be utilized and how each use would contribute to the religious use of the Property. (Comp. ¶ 52; JA. 23-24; and Op. at 5; JA. 274.) It reiterated that groups would come to the Property in the summer for religious programs, remain on site along with staff, and sleep at accommodations on site. (*Id.*) The Yeshiva's

9

engineer also submitted a Stormwater Pollution Prevention Plan and a letter responding to comments from the Town Engineer. (Comp. ¶¶ 53 - 54; JA. 24; and Op. at 5; JA. 274.)

On November 29, 2023, the Planning Board held another meeting, at which it stated that it hoped to schedule a public hearing at its December meeting. (Comp. ¶ 56; JA. 24; and Op. at 5; JA. 274.) Before the December meeting, the Yeshiva's and Town's engineers successfully addressed any open technical issues. (Comp. ¶ 57; JA. 25; and Op. at 5; JA. 274.) At the December 20, 2023 meeting, the Yeshiva's engineer confirmed that the technical issues had been resolved and requested that the Planning Board schedule a public hearing. (Comp. ¶ 58; JA. 25; and Op. at 5; JA. 274.) At least one Planning Board member expressed hostility to the Yeshiva's engineer about the Yeshiva, including by accusing its Rabbi of being prejudiced, although this exchange is not included in the Planning Board minutes. (Comp. ¶ 60; JA. 25; and Op. at 5–6; JA. 274 - 275.)

F. The Planning Board's Counsel, Who had Never Objected to the Religious Use Memorandum of Law Submitted by the Yeshiva's Counsel, was Replaced

On January 2, 2024, the new members of the Town Board and the Town Supervisor were sworn in and stated that they were interviewing candidates for Town Attorney. (Comp. ¶ 61; JA. 25-26; and Op. at 6; JA. 275.) On January 4, 2024, the Town Board held a special meeting to appoint an attorney for the Town. (Comp. ¶ 62; JA. 26; and Op. at 6; JA. 275.) The Town Board Supervisor stated that the Board

10

was looking for an at-will attorney so that the Board members could replace the attorney if they "d[id] not like the way that it's going," including if they felt like the attorney did not have the skill set, was biased, or was not representing the Town the way the Board wanted. (Comp. ¶ 64; JA. 26; and Op. at 6; JA. 275.) The Town Board voted to retain new counsel for the Town, and such new counsel also represented both the Planning Board and the ZBA. (Comp. ¶¶ 63, 65; JA. 26; and Op. at 6; JA. 275.)

G.  The January 2024 Planning Board Meetings and its Referral to the ZBA

On January 12, 2024, the Yeshiva's counsel wrote to the Planning Board in response to reports that Board members had questioned whether the application was for religious use. (Comp. ¶ 66; JA. 27; and Op. at 6; JA. 275.) The Yeshiva's counsel reminded the Planning Board that these matters had been addressed in the Memorandum of Law from April 2023 and resubmitted that Memorandum of Law. (*Id.*) Counsel also responded to the allegations that the Yeshiva's Rabbi was prejudiced, warning the Planning Board that such negative comments suggested impermissible prejudgment of the application. (Comp. ¶ 68; JA. 27-28; and Op. at 6; JA. 275.)

Another meeting was held on January 24, 2024, at which time Planning Board members asked the Yeshiva's counsel questions about the proposed religious use of the Property. (Comp. ¶¶ 70, 72; JA. 28-29; and Op. at 6; JA. 275.)  Counsel restated

that the Property would be used for religious education of the Yeshiva's students and the children of the Yeshiva's staff during the summer and as a religious retreat during the rest of the year. (Comp. ¶ 72; JA. 28-29; and Op. at 6; JA. 275.) Nevertheless, the minutes from this meeting incorrectly state that the application had not specifically stated the use intended. (Comp. ¶ 73; JA. 29; and Op. at 6 - 7; JA. 275 - 276.) The Town's new counsel, Mr. Mogel, who was present at the meeting, suggested that the Planning Board refer the Yeshiva's application to the ZBA for an interpretation as to whether the Yeshiva's proposed use was religious. (Comp. ¶ 74; JA. 29; and Op. at 7; JA. 276.) This was obviously prearranged because the Planning Board immediately voted to refer the matter to the ZBA without a word of discussion. (*Id.*) The meeting minutes again incorrectly summarized this exchange, as they state that Mr. Mogel said that the applicant (that is, the Yeshiva) could apply to the ZBA for a hearing, when he actually said that the Planning Board could ask the ZBA for an interpretation (which it did). (Comp. ¶ 75; JA. 29; and Op. at 7; JA. 276.)

In light of the error in the meeting minutes, on March 5, 2024 the Yeshiva's counsel wrote to the Planning Board and ZBA to explain that the Planning Board voted to refer the Yeshiva's special permit application to the ZBA for interpretation of the Town Code and that the ZBA was required to take up the referral without an application from the Yeshiva. (Comp. ¶ 76; JA. 30; and Op. at 7; JA. 276.) Despite

12

this letter, the ZBA Secretary refused to place the matter on the ZBA agenda without such an application. (Comp. ¶ 77; JA. 30; and Op. at 7; JA. 276.)

The Yeshiva's counsel wrote again to the Planning Board and ZBA on March 20, 2024, stating that:

> My client will not be forced to create an administrative record that it is seeking a use interpretation when its position has consistently been that there is no ambiguity about its proposed religious use.

Comp. ¶ 78; JA. 30; and Op. at 7; JA. 276.

That same day, Mr. Mogel confirmed that the Planning Board had in fact referred the matter to the ZBA for a use interpretation. (Comp. ¶ 79; JA. 30-31; and Op. at 7; JA. 276.) The ZBA then took up the referral. (*Id.*)

H.  The ZBA Receives Materials from the Yeshiva Further Confirming Religious Use, Including a Statement Published by the Dept. of Justice

On April 16, 2024, the Yeshiva appeared before the ZBA, and its counsel reiterated what had been stated in its April and November 2023 Memoranda of Law: that the law was clear that the Yeshiva's proposed uses were religious uses. (Comp. ¶ 80; JA. 31; and Op. at 7; JA. 276.) The ZBA also was also provided by the Yeshiva's counsel with a statement from the United States Department of Justice ("DOJ") that discussed the elements of religious use as it relates to RLUIPA and was informed by the Yeshiva's counsel that the Yeshiva's proposed summer religious

13

educational use met the DOJ's criteria for religious use. (Comp. ¶ 80; JA. 31; and Op. at 8; JA. 277.) The ZBA scheduled a public hearing for May. (*Id.*)

At the May 21, 2024 ZBA meeting, the Yeshiva's counsel reiterated that its proposed uses were religious in nature and authorized as a place of worship. (Comp. ¶ 81; JA. 31; and Op. at 8; JA. 277.) The minutes state that counsel defined "place of worship" as a place where religious uses are undertaken and as including "a full complex of religious uses," and Mr. Mogel confirmed that the cases that counsel cited defined "place of worship" in such broad terms. (Comp. ¶ 82; JA. 31-32; and Op. at 8; JA. 277.) The minutes do not, however, accurately reflect the Yeshiva's counsel's answer regarding how the proposed use in the summer would be distinguished from a summer camp. (Comp. ¶ 83; JA. 32; and Op. at 8; JA. 277.) The minutes state that counsel responded that the proposed uses "are not camps, retreats, or schools but are religious uses," (ECF 12-22 at JA. 173), but Plaintiff alleges counsel had actually stated that the use would be religious education, and that is what defines the use rather than the fact that students reside there for the summer, (Comp. ¶ 83; JA. 32; and Op. at 8; JA. 277.)

The ZBA opened the public hearing and instructed that comments should be confined to the issue of the proper interpretation of the use of the Property. (Comp. ¶ 84; JA. 32; and Op. at 8; JA. 277.) Despite this instruction, the comments from the public did not address the interpretation issue and instead raised concerns

14

regarding traffic and other similar matters. (*Id.*) Some members of the public also spoke out "forcefully" against the Yeshiva receiving the special use permit. (*Id.*)

The Yeshiva's counsel argued that the concerns raised by the public would be addressed by the Planning Board and had nothing to do with the question of interpretation before the ZBA. (*Id.*) The ZBA did not engage in further discussion as to whether the proposed summer educational use would be a religious use that could be approved as a specially permitted place of worship. (Comp. ¶ 85; JA. 32; and Op. at 8; JA. 277.)

I.  The ZBA Issues an Interpretation of the Town Zoning Code that the Yeshiva's Proposed Use is Not Religious, But is a Summer Camp Prohibited by the Zoning

At the June 20, 2024 meeting, the ZBA heard from the Yeshiva's Rabbi, who discussed in detail how the Property would be configured and used, including which groups of students would come to the Property, how many and what kind of staff would be present, and the physical arrangement of the Shul and other facilities. (Comp. ¶¶ 86 - 87; JA. 33; and Op. at 9; JA. 278.) The ZBA tabled the matter of interpretation until its next meeting without making a motion directing the Town Attorney to prepare a resolution. (Comp. ¶ 88; JA. 33; and Op. at 9; JA. 278.)

At the ZBA's July 18, 2024 meeting, the ZBA's counsel handed the ZBA Chair and Members a previously drafted written resolution, which was then read aloud by the ZBA chair. (Comp. ¶ 89; JA. 33; and Op. at 9; JA. 278.) The resolution stated that the proposed use of the Property in the summer was not religious, but was a

children's camp, and therefore prohibited, under the Town Code. (Comp. ¶ 91; JA. 34; and Op. at 9; JA. 278.) Immediately following the reading of the resolution, without giving the Yeshiva or its counsel an opportunity to respond, a ZBA member made a motion to adopt the resolution. (Comp. ¶ 90; JA. 33; and Op. at 9; JA. 278.) Without discussion on the motion, the ZBA unanimously voted to adopt the resolution. (*Id.*) The ZBA interpretation was officially filed with the Town Clerk on August 9, 2024. (Comp. ¶ 92; JA. 34; and Op. at 9; JA. 278.)

It is obvious this was all planned in private. The "referral" motion by the Planning Board was voted on without discussion after being "suggested" by the newly appointed Town Attorney. The ZBA never authorized or requested any written resolution to be prepared by the ZBA's counsel. ZBA counsel appears with a pre-drafted detailed written resolution which is adopted without a single word of discussion, no less any debate. In no public meeting at any time did any ZBA member ever state anything about the matter having been referred to it. They voted on a pre-drafted resolution they never requested without uttering a single word other than to vote "aye."

J.  With a Final Binding Decision on Permitted Use Having Been Rendered by the ZBA and Binding Upon the Planning Board, the Yeshiva was Forced to Litigate

As discussed in greater detail, *infra*, the ZBA is the sole body vested with authority to interpret the Town Zoning Code, and its interpretation is binding upon the Planning Board. Having determined that the Yeshiva's proposed religious

16

educational use was not really religious, but a prohibited summer camp, the Planning Board had no jurisdictional basis or power to issue a special permit. (Comp. ¶ 93-94; JA. 34. Thus, the ZBA interpretation prevents the Yeshiva from providing religious education to its students at the Property during the summer. (Comp. ¶ 104; JA. 36.) With no further administrative remedy available to establish that the proposed religious educational use is a permitted use allowed under the Town Zoning Code as a place of worship as specifically held in the *Yeshiva Talmud Torah* case, the Yeshiva had no choice but to commence this litigation alleging that the ZBA's interpretation violated the Yeshiva's rights under RLUIPA; was a denial of its "free exercise" rights; was a denial of equal protection, a violation of its rights under the New York State Constitution, and an unlawful conspiracy to deprive the Yeshiva of its constitutional rights.

## POINT I

### SINCE THE PLANNING BOARD IS REQUIRED TO FOLLOW THE ZBA INTERPRETATION AND DENY THE APPLICATION, ANY ADDITIONAL PLANNING BOARD PROCESS WOULD BE FUTILE, THUS CAUSING THIS LITIGATION TO BE RIPE

A property owner who receives an interpretation from a zoning board of appeals that the proposed use is not permitted under the applicable zoning is not required to go through the remainder of the planning board permit application process before having a ripe claim in federal court that is justiciable. The interpretation issued by the zoning board of appeals is binding upon the planning board and the planning board lacks any power to supersede or modify the interpretation issued by the zoning board of appeals.

The leading case so holding is *Gershowitz v. Planning Bd. of Town of Brookhaven*, 52 N.Y.2d 763, 436 N.Y.S.2d 612 (1980). There, the Brookhaven zoning board of appeals issued a special use permit for an automobile shredding plant which was predicated upon its determination that the proposed use was allowed under the applicable zoning. The Brookhaven planning board denied site plan approval on the basis that the proposed use was not allowed. That planning board determination was annulled with the Court of Appeals ruling that once the zoning board of appeals had approved the use, the "Brookhaven Planning Board was without power to disapprove petitioners' site plan on the ground that petitioner's use violated the Brookhaven Town Code." *Id.* at 765.

18

Stating the rule explicitly is *Swantz v. Planning Bd. of Village of Cobleskill*, 34 A.D.3d 1159, 1160, 824 N.Y.S.2d 781, 782 (3d Dept. 2006): "Planning boards are without power to interpret the local zoning law, as <u>that power is vested exclusively</u> in local code enforcement officials and the <u>zoning board of appeals</u>..." (emphasis added; citations omitted).

Similarly, in *Woodland Community Ass'n v. Planning Bd. of Town of Shandaken*, 52 A.D.3d 991, 860 N.Y.S.2d 653 (3d Dept. 2008), the Court held that a planning board lacked authority to issue a special use permit without having first sought a zoning board of appeals interpretation of an ambiguous code provision and that granting such a special use permit without obtaining a prior zoning board of appeals interpretation was beyond its lawful authority.

No contrary authority could be located, and no case could be found holding that a planning board is empowered to disregard an interpretation of the applicable zoning by a zoning board of appeals. Having sought the interpretation of the ZBA as to whether the Yeshiva's proposed use is or is not a permitted use, the Planning Board is required by law to follow that interpretation. Since the Planning Board cannot issue a special permit for a use that is prohibited, the ZBA interpretation precludes any possible review or action by the Planning Board on the Yeshiva's pending special permit application.

The Opinion below is in accord with the foregoing principles of law and holds that "finality" has been established to the extent that the Yeshiva is not required to obtain a denial of its pending special permit application in order litigate the legality and constitutionality of the ZBA's interpretation. *See* Opinion at 16-17; JA. 285-286.

There is a very important reason to focus on this undeniable rule of law. Issuance of the ZBA interpretation is the one and only determination possible when the question is whether a proposed use of land is a specially permitted or prohibited use under the applicable zoning. As confirmed in the case law cited above, when the zoning board of appeals issues an interpretation as to whether a proposed use of land is or is not prohibited, that is the final administrative determination. The planning board is bound by the zoning board's determination, as is the property owner. There is no administrative appeal to another body. *See* Highland Town Code § 190-65(B) stating that the ZBA "shall, upon request, decide any questions involving the interpretation of any provision of this chapter." *See also* Highland Town Code § 190-66(C) authorizing the Planning Board to request such an interpretation. *See also* Opinion at 16-17; JA. 285-286.

As discussed in greater detail, *infra*, an application for a use variance is not the same as an interpretation as to whether a proposed use is or is not prohibited. Whether or not a proposed use is prohibited is an entirely different and antecedent

20

question to whether a use variance can or should be granted. Since a use variance is obtaining permission to undertake a use that is otherwise prohibited, any application for a use variance is based upon the necessary conclusion that the proposed use is prohibited. If a property owner believes its use is allowed and the planning board refers the matter to the zoning board of appeals, the remedy of a property owner who believes that the zoning board has issued an incorrect decision on whether the proposed use is prohibited is to challenge that determination in court. By contrast, applying for a use variance is not a review of such a use interpretation -- rather, it is inherently an acceptance that the proposed use is in fact prohibited and that the property owner cannot lawfully undertake it as a permitted or specially permitted use. Forcing the Yeshiva to apply for a use variance as a precondition to federal judicial review of whether the ZBA's interpretation was lawful, requires the Yeshiva to accept the very ZBA interpretation it contends is illegal. That makes no sense and cannot logically be the law.

Indeed, it is the ZBA interpretation itself that should be the focus of this Court's review. That is the final determination as to whether the Yeshiva's proposed use is or is not prohibited under the applicable zoning. Moreover, District Court Judge Seibel strongly indicated that she thought that the ZBA was wrong on the merits. She stated that "I am skeptical of the ZBA decision here, in light of ZBA decision here, in light of *Yeshiva Talmud* Torah, 97 N.Y.S.3d 737." Op. at 20, note

21

3; JA. 289 (emphasis added). The reason Judge Seibel so stated and the reason that the Memorandum of Law submitted to the Planning Board (more than once) focused on *Yeshiva Talmud Torah*, is because it is on point.

In *Yeshiva Talmud Torah*, *supra*, the identical legal question as to permitted or prohibited use as presented in this litigation was before the Court. Yeshiva Talmud Torah Ohr Moshe applied for site plan approval for the identical summer religious educational use as is proposed by Yeshiva Ohr Shraga Veretzky. No determination was made on the site plan application because the ZBA issued an interpretation that the proposed use did not fall within the definition of "place of worship" but was "akin to a school or a camp" which were not permitted uses in the applicable zoning district." *Yeshiva Talmud Torah*, 170 A.D.3d at 1489. The ZBA interpretation was challenged and reversed on appeal on the merits. *Id.* at 1490 to 1491. After discussing the nature of religious use and its historically broad and expansive meaning under New York law, the Appellate Division confirmed that the proposed religious educational use was allowed under the overall "place of worship" permitted use and ordered that: "[T]he ZBA's determination is annulled and the matter is remitted for <u>respondents to consider petitioner's site plan application</u>. *Id.* at 1491 (emphasis added).

The relief granted confirms that a ZBA interpretation was final and that the aggrieved party need not go through the futile process of obtaining a permit denial

22

as a prerequisite to appealing the interpretation, nor is any use variance application required to present the question. Since the Planning Board must follow the ZBA interpretation, once the ZBA has issued a determination the question of whether the use is or is not permitted under the applicable zoning has been <u>finally</u> answered. Accordingly, when the sole question presented is whether a proposed use is or is not allowed under the applicable zoning, the ZBA interpretation is final action fully satisfying the "finality" prerequisite for federal court jurisdiction.

## POINT II

### THE YESHIVA CANNOT BE REQUIRED TO ABANDON ITS PROPERTY RIGHTS AS A PRECONDITION OF FEDERAL COURT JURISDICTION

In its most basic sense, a use variance is permission to violate the Town's zoning by obtaining permission to use property in a manner that is not allowed in the applicable zoning district. By requiring an application for a use variance as a precondition to challenging whether a religious use is or is not a specially permitted use, the District Court requires the Yeshiva to vacate the very right that it seeks to vindicate in this litigation. Simply by applying for a use variance, the Yeshiva is required to concede in the application itself that its proposed use is not permitted under the applicable zoning. By definition, the Yeshiva cannot obtain a use variance for a use that is permitted under the applicable zoning. So, the District Court has held the Yeshiva must file a use variance application in which it admits that its

23

proposed religious use is prohibited in order to obtain the right to come to the federal courts to determine whether, as a matter of law, its religious use is or is not a specially permitted use under the Town Zoning Code.

While the Federal Courts have made clear that they do not sit as a "super" planning or zoning board, requiring a religious organization to abandon its rights as a precondition of obtaining judicial review is not what the "finality" rules governing federal court jurisdiction require. And lest there be any doubt -- abandonment is precisely what would be required. This is so because if a use variance is granted, the Yeshiva would be required to accept it. And being forced to apply for and accept a use variance that the Yeshiva contends it is not legally required to obtain is a forced abandonment of its property and constitutional rights under the guise of finality. That is not the law, nor actual or genuine finality.

The reason that the Yeshiva did not apply for a use variance is because its proposed use is specially permitted under the precise holding and reasoning of *Yeshiva Talmud Torah*. Under RLUIPA and the applicable constitutional provisions pursuant to which this litigation was commenced, the Yeshiva has the right to a determination on the merits as to whether its proposed use is or is not specially permitted. That judicial review cannot be made contingent upon abandonment of that very right under the guise of finality.

24

## POINT III

### SINCE A VARIANCE APPLICATION WOULD NOT GENERATE ANY ADDITIONAL RELEVANT FACTS, IT IS NOT REQUIRED FOR THIS CASE TO BE RIPE

The District Court focuses much of the Opinion below on the fact that there is no evidence of futility, independent damage inflicted upon the Yeshiva, and other matters that are sometimes invoked by parties claiming that they ought to be relieved of filing a variance application of one sort or another. *See* Opinion at 22-27; JA. 291-296. The Yeshiva did not plead such claims in its Complaint and did not assert them in its Memorandum of Law below. So, the entire discussion by the Court below at the cited pages is to establish that the Yeshiva had not met its burden to prove items it never alleged in its Complaint or attempted to prove.

This is not a futility case in the sense that the argument being presented is that a use variance application ought not to be required because it would be futile. This case is about no use variance application being required for finality when the sole issue presented is whether the ZBA correctly decided whether the proposed religious educational use is a prohibited use or one that is specially permitted.

The decisional law that is germane is the decisional law that on identical facts and issues confirms that the ZBA interpretation is final and federal court jurisdiction exists. Admittedly, that decisional law is from the Third Circuit and the Yeshiva

25

hopes that this Court will seriously consider the rules of law and reasoning adopted in the Third Circuit cases and apply them in this Circuit.

A use variance application does not provide any additional factual information about whether the proposed religious educational use is permitted under the Town Zoning Code. An application for permission to violate the zoning by obtaining a use variance provides no additional factual information about the claim that no variance is needed because the religious educational use is specially permitted. Thus, both logic and common-sense dictate that a variance application is entirety unnecessary and irrelevant when the claim is that the proposed religious educational use is not prohibited under the applicable zoning and that no variance of any kind is needed. Under such circumstances, by definition, a variance application is unnecessary for the claim to be ripe because it is entirely irrelevant to whether the zoning interpretation was properly or illegally issued. In every case that could be located arising from the factual circumstances in this case, no use variance application was required as a prerequisite to federal litigation attacking the determination that the proposed use was not allowed at all.

In *Congregation Kollel, Inc. v. Township of Howell, N.J.* ("*Kollel*"), 2017 WL 637689 (D.N.J. 2017), the Congregation "sought a land use permit. . . to build and operate a Jewish education facility [and] Defendants denied Plaintiffs' application, allegedly on the grounds that the type of facility which Plaintiffs seek to erect is not

26

permitted under the Township's Zoning Ordinance." *Id* at *1. The Township moved to dismiss claiming that the Congregation's RLUIPA and related claims would not be ripe until a variance application was filed and denied. In denying the motion, the Court held as follows:

> The Board rendered a definitive decision that Plaintiffs' proposed use of an "Educational Facility" is not a permitted use. On that issue, no further development of the factual record is necessary, since the Board considered substantial evidence and came to its conclusion that Plaintiffs' proposed use of the Ford Property is inconsistent with the Zoning Ordinance. . . Indeed, in asking Plaintiffs to apply for a variance, the Board would not be developing additional factual record on that already-decided issue. Instead, the variance process, in this case, would only seek to determine whether Plaintiffs' proposed use could be permitted by the Board to depart from the Ordinance's requirements. . . . Accordingly, I find that no further record is necessary.

*Id.* at *10 (emphasis added).

The *Kollel* Court properly held that the ZBA interpretation was final as to what was permitted under the applicable zoning and that a variance application would not provide any additional information because it would be limited to establishing whether there could be a ***departure*** from the applicable zoning, and would develop no further factual information as to whether the proposed use was allowed.

The identical fact pattern and motion to dismiss was adjudicated in *Khal Anshei Tallymawr, Inc. v. Township of Toms River, New Jersey*, 2021 WL 5757404

27

(D.N.J. 2021) in which an interpretation was made by the ZBA that the proposed use was not a permitted use under the applicable zoning. The Court denied the motion to dismiss on ripeness and finality grounds:

> Because the Board already found the proposed use was prohibited in the proposed zone, this is not a case where a variance application would have clarified the record. . . Rather, a variance application would serve to determine whether the Board would permit Plaintiff's application to "depart from the [Regulations'] requirements." *See Congregation Kollel,* 2017 WL 637689 at *10. Thus, Plaintiff's as-applied claims seeking damages are ripe for review.

*Id.* at *7 (emphasis added).

The identical set of circumstances was presented in *Bais Brucha Inc. v. Township of Toms River, New Jersey*, 2024 WL 863698 (D.N.J. 2024) where the ZBA held that a house of worship was not a permitted use in a particular zone and that such decision was ripe for review in an as-applied challenge without the necessity of a variance application. *Id.* at *6.

The District Court did not analyze these authorities in any detail or attempt to refute their reasoning. *See* Op. at 18-19; JA. 287-288. Indeed, the only response to these three cases that are directly on point is that they do not appear to be consistent with a ruling from the Northern District of New York: *Rehabilitation Support Services, Inc. v. Town of Esopus*, 226 F.Supp.3d 113, 126-127 (N.D.N.Y 2016). *See* Op. at 19; JA. 288.) However, that case was litigated on the basis of whether such

28

a use variance would be futile. The precise questions raised in this case and in the cases from the Third Circuit relied upon herein were not before the Northern District.

No case could be found, nor is one cited in the Opinion, addressing whether a religious organization must abandon its legal rights as a prerequisite to finality. That is the undeniable effect of the District Court's ruling below and it is both an inappropriate jurisdictional requirement and contrary to a religious organization's rights under RLUIPA and the Constitution. The appropriate rule of finality is to confirm that the ZBA determination satisfies the finality requirement when, as here, the only question presented is whether a proposed religious use is or is not prohibited. For these reasons, the District Court ruling dismissing this litigation for lack of subject matter jurisdiction should be overturned and the case reinstated on the docket of the Southern District.

## CONCLUSION

For all the foregoing reasons, the Opinion and Order dismissing this litigation should be reversed.

Dated:     Haverstraw, New York
            May 5, 2026

                                 SBarshovLaw PLLC

                                 */s/Steven Barshov*
                                 Steven Barshov
                                 20 Lagoon Lane
                                 Haverstraw, New York 10927
                                 917-886-4328
                                 sb@sbarshovlaw.com

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements and Type-Style Requirements.

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 7,408 words.

2. This document complies with the typeface requirements of Fed. S. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word (2019/Office) in 14-point font, Times New Roman.

Dated:      Haverstraw, New York
May 5, 2026

SBarshovLaw PLLC

*/s/ Steven Barshov*
Steven Barshov
20 Lagoon Lane
Haverstraw, New York 10927
917-886-4328
sb@sbarshovlaw.com

# 26-638

# United States Court of Appeals
# for the Second Circuit

YESHIVA OHR SHRAGA VERETZKY,

*Plaintiff-Appellant,*

-against-

TOWN OF HIGHLAND ZONING BOARD OF APPEALS,
TOWN OF HIGHLAND,

*Defendants-Appellees,*

TOWN OF HIGHLAND PLANNING BOARD,
TOWN BOARD OF THE TOWN OF HIGHLAND,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SPECIAL APPENDIX

SBARSHOVLAW PLLC
*Attorneys for Plaintiff-Appellant*
20 Lagoon Lane
Haverstraw, New York 10927
(917) 886-4326
sb@sbarshovlaw.com

**4908**



i

# TABLE OF CONTENTS

Judgment of United States District Court Southern District of
New York, Dated March 7, 2026, Appealed From (ECF No. 27) .............. SPA-1

**[SPA-1]**

Case 7:24-cv-08477-CS     Document 27     Filed 03/07/26     Page 1 of 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
  YESHIVA OHR SHRAGA VERETZKY,

                                Plaintiff,

      -against-                                        24 **CIVIL** 8477 (CS)

                                           **JUDGMENT**

TOWN OF HIGHLAND ZONING BOARD OF
APPEALS and TOWN OF HIGHLAND,

                             Defendants.
--------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion & Order dated March 5, 2026, Defendants' motion to dismiss is

GRANTED and Plaintiff's claims are dismissed without prejudice; accordingly, the case is

closed.

**Dated:** New York, New York

      March 7, 2026

                                   **TAMMI M. HELLWIG**
                                     **Clerk of Court**

                  **BY:**          K. mango

                                     **Deputy Clerk**



**United States District Court**
**Southern District of New York**

Tammi M. Hellwig
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $605 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted.* Please see District Court fee schedule at https://www.nysd.uscourts.gov/programs/fees. If you are unable to pay the $605 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/**.

THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150

Rev. 12/4/24

**[SPA-3]**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (    )(    )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties: _____

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the     ☐ judgment     ☐ order     entered on: _____

(date that judgment or order was entered on docket)

that:

_____

(If the appeal is from an order, provide a brief description above of the decision in the order.)

_____          _____
Dated                                                  Signature*

_____
Name (Last, First, MI)

_____
Address                          City                State                Zip Code

_____          _____
Telephone Number                            E-mail Address (if available)

_____

* Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

**[SPA-4]**

Case 7:24-cv-08477-CS    Document 27-1    Filed 03/07/26    Page 3 of 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____                    _____CV_____ (        )(        )
(List the full name(s) of the plaintiff(s)/petitioner(s).)

                -against-                    **MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL**

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)


I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time to file a notice of appeal in this action. I would like to appeal the judgment entered in this action on _____ but did not file a notice of appeal within the required
                                    date
time period because:

_____

_____

_____
(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)


_____        _____
Dated:                               Signature

_____
Name (Last, First, MI)

_____
Address               City         State           Zip Code

_____        _____
Telephone Number                  E-mail Address (if available)


Rev. 3/27/15

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (      )(      )

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed _in forma pauperis_ on appeal. This motion is supported by the attached affidavit.

_____
Dated

_____
Signature

_____
Name (Last, First, MI)

_____
Address                    City                    State                    Zip Code

_____
Telephone Number

_____
E-mail Address (if available)

Rev. 12/23/13

## [SPA-6]

### Application to Appeal In Forma Pauperis

_____**v.** _____      Appeal No. _____

District Court or Agency No. _____

| **Affidavit in Support of Motion** | **Instructions** |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.) | Complete all questions in this application and then sign it.  Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number. |
| Signed: _____ | Date: _____ |

My issues on appeal are: (<u>required</u>):

1.      *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | <u>Spouse</u> | You | <u>Spouse</u> |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | $ 0 | $ 0 | $ 0 | $ 0 |

2.    *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3.    *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

# [SPA-8]

Case 7:24-cv-08477-CS    Document 27-1    Filed 03/07/26    Page 7 of 10

4.    *How much cash do you and your spouse have? $_____*

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5.    *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| | | Make and year: |
| | | Model: |
| | | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: | | |
| Model: | | |
| Registration #: | | |

- 3 -

6.     *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

7.     *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
| | | |
| | | |
| | | |

8.     *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>     Are real estate taxes included? ☐ Yes ☐ No<br>     Is property insurance included? ☐ Yes ☐ No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

- 4 -

| | | |
|---|---|---|
| Transportation (not including motor vehicle payments) | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | |
|     Homeowner's or renter's: | $ | $ |
|     Life: | $ | $ |
|     Health: | $ | $ |
|     Motor vehicle: | $ | $ |
|     Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $ | $ |
| Installment payments | | |
|     Motor Vehicle: | $ | $ |
|     Credit card (name): | $ | $ |
|     Department store (name): | $ | $ |
|     Other: | $ | $ |
| Alimony, maintenance, and support paid to others | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ | $ |
| Other (specify): | $ | $ |
| **Total monthly expenses:** | $ 0 | $ 0 |

9. *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

   ☐ Yes      ☐ No      If yes, describe on an attached sheet.

10. *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* ☐ Yes ☐ No

   *If yes, how much?* $ _____

11.     *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12.     *Identify the city and state of your legal residence.*

City _____     State _____

Your daytime phone number: _____

Your age: _____     Your years of schooling: _____

Last four digits of your social-security number: _____